# EXHIBIT B
### (Defendants' Motion to Dismiss)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| MICHAEL FLYNN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 8:21-cv-2956-MSS-SPF |
| | ) | |
| NANCY PELOSI, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................ 1

BACKGROUND......................................................................... 3

    A.    The January 6 Attack................................................ 3

    B.    The Formation of the Select Committee ............................ 3

    C.    The Select Committee's Subpoena to Mr. Flynn ................. 4

STANDARD OF REVIEW ........................................................... 5

ARGUMENT.............................................................................. 5

I.    This Court Lacks Subject Matter Jurisdiction. ........................... 5

    A.    The Speech or Debate Clause and Sovereign Immunity Preclude the Relief Mr. Flynn Seeks. ..................................... 5

    B.    Sovereign Immunity Independently Requires Dismissal. ................. 10

II.    Plaintiff Fails to State a Claim for Which Relief Can be Granted................. 11

    A.    The Select Committee Has a Valid Legislative Purpose. ................... 11

    B.    The Select Committee is Validly Constituted. .................................. 12

        1.    The Rulemaking Clause Bars Federal Courts from Considering Claims About the Select Committee's Internal Operations.......................................................... 12

        2.    The Select Committee is Properly Composed.......................... 14

    C.    The Select Committee's Subpoena Is Valid and Enforceable.............. 18

    D.    Mr. Flynn Fails to State a Proper Constitutional Challenge to the Subpoena. .................................................................. 20

        1.    The Subpoena Does Not Violate Mr. Flynn's Fourth Amendment Rights............................................................. 20

        2.    The Subpoena Does Not Violate Mr. Flynn's Fifth Amendment Rights............................................................. 21

3.      The Subpoena Does Not Violate Mr. Flynn's First
        Amendment Rights. ............................................................... 24

CONCLUSION ............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................. 5

*Baker v. Carr,*
  369 U.S. 186 (1962) ................................................................................ 12

*Barenblatt v. United States,*
  360 U.S. 109 (1959) ................................................................................ 24

*Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO,*
  860 F.2d 346 (9th Cir. 1988) .................................................................. 25

*Brown & Williamson Tobacco Corp. v. Williams,*
  62 F.3d 408 (D.C. Cir. 1995)..................................................................... 8

*Bryant v. Jones,*
  575 F.3d 1281 (11th Cir. 2009).................................................................. 6

*Buckley v. Valeo,*
  424 U.S. 1 (1976)................................................................................24, 25

*Budowich v. Pelosi,*
  No. 21-cv-3366 (JEB) (D.D.C., Boasberg, J.)........................................ 12, 13, 14

*Chapman v. Space Qualified Sys. Corp.,*
  647 F. Supp. 551 (N.D. Fla. 1986) ..........................................................8, 9

*Eastland v. U.S. Servicemen's Fund,*
  421 U.S. 491 (1975) .........................................................................*passim*

*Eastman v. Thompson,*
  No. 8:22-cv-00099-DOC-DFM (C.D. Cal., Carter, J.), ECF 43 (Jan.
  25, 2022) .......................................................................... 12, 14, 17

*In re Grand Jury Investigation of Ven-Fuel,*
  441 F. Supp. 1299 (M.D. Fla. 1977) ........................................................6, 9

*In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011,*
  670 F.3d 1335 (11th Cir. 2012)................................................................. 23

*Gravel v. United States,*
    408 U.S. 606 (1972) ................................................................................... 6

*Gutierrez de Martinez v. Lamagno,*
    515 U.S. 417 (1995) ................................................................................. 14

*Howard v. Off. of Chief Admin. Officer,*
    720 F.3d 939 (D.C. Cir. 2013) ................................................................. 7

*INS v. Chadha,*
    462 U.S. 919 (1983) ................................................................................. 13

*Kastigar v. United States,*
    406 U.S. 441 (1972) ................................................................................. 22

*Keener v. Congress,*
    467 F.2d 952 (5th Cir. 1972) ................................................................. 10

*Kilbourn v. Thompson,*
    103 U.S. 168 (1880) .............................................................................6, 10

*Lane v. Peña,*
    518 U.S. 187 (1996) ................................................................................. 10

*Lawrence v. Dunbar,*
    919 F.2d 1525 (11th Cir. 1990) ................................................................ 5

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................... 5

*McGrain v. Daugherty,*
    273 U.S. 135 (1927) ................................................................................. 10

*McLean v. United States,*
    566 F.3d 391 (4th Cir. 2009) ................................................................. 10

*McPhaul v. United States,*
    364 U.S. 372 (1960) ............................................................................ 19, 21

*Metzenbaum v. FERC,*
    675 F.2d 1282 (D.C. Cir. 1982) ............................................................. 13

*Nat'l Physicians Holding Co. v. Middlebury Equity Partners, LLC,*
    No. 7:09-CV-21, 2018 WL 1053538 (M.D. Ga. Feb. 26, 2018) ......................... 22

*Rangel v. Boehner,*
    20 F. Supp. 3d 148 (D.D.C. 2013) .................................................................... 12

*Rangel v. Boehner,*
    785 F.3d 19 (D.C. Cir. 2015) ............................................................................. 9

*In re Request for Access to Grand Jury Materials Grand Jury No. 81-1, Miami,*
    833 F.2d 1438 (11th Cir. 1987) ........................................................................ 7

*Rockefeller v. Bingaman,*
    234 F. App'x 852 (10th Cir. 2007) ................................................................. 10

*Sallah v. Worldwide Clearing LLC,*
    855 F. Supp. 2d 1364 (S.D. Fla. 2012) .......................................................... 22

*Senate Permanent Subcommittee on Investigation v. Ferrer,*
    856 F.3d 1080 (D.C. Cir. 2017) ....................................................................... 8

*Trump v. Mazars USA, LLP,*
    140 S. Ct. 2019 (2020) ...................................................................................... 8

*Trump v. Thompson,*
    20 F.4th 10 (D.C. Cir. 2021), *injunction denied,* 142 S. Ct. 680 (2022),
    *cert. denied,* No. 21-932 (Feb. 22, 2022) ......................................................*passim*

*United Keetoowah Band of Cherokee Indians in Okla. v. FCC,*
    933 F.3d 728 (D.C. Cir. 2019) ....................................................................... 16

*United States v. Argomaniz,*
    925 F.2d 1349 (11th Cir. 1991) ...................................................................... 22

*United States v. Brewster,*
    408 U.S. 501 (1972) .......................................................................................... 6

*United States v. Durenberger,*
    48 F.3d 1239 (D.C. Cir. 1995) ....................................................................... 13

*United States. v. Mitchell,*
    463 U.S. 206 (1983) ........................................................................................ 10

*United States v. Ponds,*
    454 F.3d 313 (D.C. Cir. 2006) ....................................................................... 23

*United States v. Rostenkowski,*
    59 F.3d 1291 (D.C. Cir. 1995) ....................................................................... 13

*Vander Jagt v. O'Neil*,
    699 F.2d 1166 (D.C. Cir. 1982) .................................................................. 14, 17

*Yeldell v. Cooper Green Hosp., Inc.*,
    956 F.2d 1056 (11th Cir. 1992) ...................................................................... 6

*Zicarelli v. N.J. State Comm'n of Investigation*,
    406 U.S. 472 (1972) ...................................................................................... 22

## Other Authorities

167 Cong. Rec. H37, 117th Cong. (daily ed. Jan. 4, 2021) ..................................... 16

167 Cong. Rec. H5748-69, 117th Cong. (daily ed., Oct. 21, 2021) ......................... 15

167 Cong. Rec., H7667-76, 117th Cong. (daily ed., Dec. 14, 2021) ........................ 15

Black's Law Dictionary (11th ed. 2019) ................................................................. 16

8 *Cannon's Precedents of the U.S. House of Representatives*, § 2172 ............................. 16

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 5

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 5

H. Rep. No. 109-377, 109th Cong. (2006) ............................................................. 15

H. Res. 6, 116th Cong. (2019) ............................................................................... 16

H. Res. 437, 109th Cong. (2005) ........................................................................... 15

H. Res 503, 117th Cong. (2021) .................................................................... *passim*

H. Res. 567, 113th Cong. (2014) ........................................................................... 17

H. Res. 730, 117th Cong. (2021) ........................................................................... 15

H. Res. 851, 117th Cong. (2021) ........................................................................... 15

H. Rule XI ....................................................................................................... 17, 18

Statement on Republican Recommendations to Serve on the Select
    Comm. to Investigate the Jan. 6 Attack on the U.S. Capitol (July 21,
    2021), https://www.speaker.gov/newsroom/72121-2 ....................................... 4

U.S. Const. art. I, 6, cl. 1 ........................................................................................ 6

U.S. Const., art. I, § 5, cl. 2 ................................................................................. 12

## INTRODUCTION

This lawsuit is yet another in a stream of attempts to prevent a lawfully constituted Congressional committee from "investigating the single most deadly attack on the Capitol by domestic forces" in order to determine the need for legislation to "ensur[e] the safe and uninterrupted conduct of [Congress's] constitutionally assigned business." *Trump v. Thompson*, 20 F.4th 10, 41-42 (D.C. Cir. 2021), *injunction denied*, 142 S. Ct. 680 (2022), *cert. denied*, No. 21-932 (Feb. 22, 2022). Plaintiff Michael Flynn claims that he can disregard the Select Committee's subpoena, and he argues that this Court should enjoin the Select Committee from sanctioning him for doing so. ECF 1 ("Compl."), Prayer for Relief. In addition, he seeks an order prohibiting the Select Committee from "inspecting, using, maintaining, or disclosing any information obtained as a result of" its subpoena. *Id.* ¶ i. Supreme Court and Circuit precedent, as well as long-established constitutional principles, compel rejection of these claims.

*First*, the Speech or Debate Clause, as well as sovereign immunity, requires dismissal of Mr. Flynn's Complaint for lack of jurisdiction. In particular, the Supreme Court held in *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975), that the Speech or Debate Clause prohibits a private party from bringing a civil action to challenge the validity of a Congressional subpoena. Yet that is precisely the focus of Mr. Flynn's complaint. Indeed, Mr. Flynn simply ignores *Eastland*.

Further, this Court lacks jurisdiction because the Defendants all have sovereign immunity, which has not been waived.

*Second*, Mr. Flynn is wrong that the Select Committee lacks a legitimate legislative purpose. Every court that has considered this argument has rejected it. *See, e.g., Trump v. Thompson*, 20 F.4th at 35-42.

*Third*, Mr. Flynn's claim that the Select Committee is invalidly constituted fails because the Constitution's Rulemaking Clause gives the House of Representatives the exclusive right to make and interpret its own rules regarding the composition and operation of its committees. And the text of the House's governing resolution, the applicable House Rules, and the indisputable facts surrounding the appointments of the Select Committee's Members all belie Mr. Flynn's specific contentions—that the Speaker did not appoint the authorized number of Members or consult sufficiently with the Minority Leader.

*Finally*, Mr. Flynn has not demonstrated that he suffered any constitutionally cognizable harm as a result of the Select Committee's subpoena.

In short, the Complaint conjures a variety of flawed legal claims to thwart the Select Committee's legitimate and compelling efforts to understand fully, and to prevent a recurrence of, the events of January 6. The Court should dismiss the Complaint in its entirety.

## BACKGROUND

### A.    The January 6 Attack

On January 6, 2021, domestic terrorists seeking to stop the peaceful transfer of power following the 2020 Presidential election launched a violent assault on the United States Capitol.  H. Res. 503, 117th Cong. (2021), Preamble.  As Mr. Flynn himself describes the event, a large group "entered the U.S. Capitol, breached security, and disrupted the counting of Electoral College votes until order was restored."  Compl. ¶ 24.

### B.    The Formation of the Select Committee

In response to that unprecedented attack, the House of Representatives adopted House Resolution 503, "establish[ing] the Select Committee to Investigate the January 6th Attack on the United States Capitol."  That resolution authorizes the Select Committee to: (1) "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol"; (2) "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures … as it may deem necessary."  H. Res. 503, § 4(a)(1)-(3).

To carry out those functions, House Resolution 503 authorizes the Speaker of the House to appoint up to thirteen Members to the Select Committee, five of whom "shall be appointed after consultation with the minority leader."  H. Res. 503, § 2(a). Consistent with the Resolution, the Speaker initially appointed seven Democrats and

one Republican and then consulted with the House Minority Leader, who recommended five additional Republicans. Compl. ¶¶ 32, 33. The Speaker then spoke with the Minority Leader, advised that she would appoint three of those he had recommended, and asked the Minority Leader to recommend two other Republicans.[1] After the Minority Leader declined and, instead, withdrew all five of his recommendations, the Speaker named an additional Republican to the Select Committee. *Id.* ¶ 35. Since then, the Select Committee has functioned with seven Democrats and two Republicans.

### C.   The Select Committee's Subpoena to Mr. Flynn

In furtherance of its responsibility to "investigate the facts, circumstances, and causes" of the January 6 attack, the Select Committee served Mr. Flynn with a subpoena on November 9, 2021, to produce documents and testify at a deposition. *Id.* ¶¶ 4, 53. The subpoena topics all relate to (1) efforts to challenge the results of the 2020 Presidential election; (2) rallies that occurred in Washington, D.C. leading up to the January 6 rally, and (3) the violent attack on the Capitol that followed. *Id.* ¶ 54. Although Mr. Flynn asserts that he retained counsel to engage with the Select Committee, and a vendor to collect responsive documents, *id.* ¶¶ 58-59, he acknowledges that he never produced a single document and that he refused to

---

[1] Press Release, Nancy Pelosi, Speaker, House of Representatives, Pelosi Statement on Republican Recommendations to Serve on the Select Comm. to Investigate the Jan. 6 Attack on the U.S. Capitol (July 21, 2021), https://www.speaker.gov/newsroom/72121-2 ("Pelosi Press Release").

appear for a deposition. *Id.* ¶¶ 8, 58-59.[2] Instead, on December 21, 2021, he filed this lawsuit.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Mr. Flynn has the burden of establishing this Court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether it has jurisdiction, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case … no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (11th Cir. 1990)).

To survive a motion to dismiss under Rule 12(b)(6), Mr. Flynn must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

I.    **This Court Lacks Subject Matter Jurisdiction**

    A.    **The Speech or Debate Clause and Sovereign Immunity Preclude the Relief Mr. Flynn Seeks**

---

[2] Mr. Flynn's deposition is now scheduled for early March; he is legally required to appear.

The Speech or Debate Clause completely bars Mr. Flynn's Complaint. *See* U.S. Const. art. I, 6, cl. 1. The Supreme Court has consistently recognized that this provision was not included in the Constitution "simply for the personal or private benefit of Members of Congress." *United States v. Brewster*, 408 U.S. 501, 507 (1972). Rather, interpreting the Clause "broadly to effectuate its purposes," *Eastland*, 421 U.S. at 501, the Court has held that the Clause is intended "to protect the integrity of the legislative process by insuring the independence of individual legislators." *Brewster*, 408 U.S. at 507; *see also Gravel v. United States*, 408 U.S. 606, 618 (1972). To that end, the Clause prohibits lawsuits that challenge all acts "generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880).

The Clause achieves these goals by providing "both an absolute immunity from being questioned about legislative activities, and the inherent, implied power to conduct legislative activity." *In re Grand Jury Investigation of Ven-Fuel*, 441 F. Supp. 1299, 1304-05 (M.D. Fla. 1977) (citing *Eastland*, 421 U.S. at 504-05). As the Eleventh Circuit has recognized, "[t]he Clause is designed to reinforce the independence of the legislative branch and ensure that it will be able to perform the whole of the legislative function ceded to it by the Constitution free of undue interference." *Bryant v. Jones*, 575 F.3d 1281, 1304 (11th Cir. 2009).

Among its many protections, the Clause prohibits challenges to legislative acts via civil actions against Members of Congress, Congressional committees, and Congressional aides. *See*, *e.g.*, *Eastland*, 421 U.S. at 503; *Yeldell v. Cooper Green Hosp.,*

6

*Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992) (the Clause "protect[s] its national legislators from suit for acts done within the realm of their legislative duties"). This is because "a private civil action, whether for an injunction or damages, creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Eastland*, 421 U.S. at 503. Such actions may delay and disrupt the legislative function and imperil legislative independence by bringing judicial power to bear on Congress. *Id.* Accordingly, "once it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." *Id.*; *see also In re Request for Access to Grand Jury Materials Grand Jury No. 81-1, Miami*, 833 F.2d 1438, 1446 (11th Cir. 1987) (the Clause forbids a court to place limitations on a Congressional committee's use of subpoenaed materials). In other words, when a plaintiff seeks to challenge "legislative acts," the "Speech or Debate Clause operates as a jurisdictional bar." *Howard v. Off. of Chief Admin. Officer*, 720 F.3d 939, 941 (D.C. Cir. 2013) (citations omitted).

The Speech or Debate Clause bars this action: the Select Committee's issuance of a subpoena is legitimate legislative activity for which the Clause "provides complete immunity for … Members [of Congress]." *Eastland*, 421 U.S. at 507. As *Eastland* held, "the power to investigate is inherent in the power to make laws" and the power to issue subpoenas "has long been held to be a legitimate use by Congress of its power to investigate." *Id.* at 504. Investigations and subpoenas are "indispensable ingredient[s] of lawmaking." *Id.* at 505. "Without information,

7

Congress would be shooting in the dark, unable to legislate 'wisely or effectively.'" *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)).

Federal courts have repeatedly dismissed lawsuits against Members of Congress challenging Congressional subpoenas. *E.g.*, *Eastland*, 421 U.S. at 504 ("Issuance of subpoenas … has long been held to be a legitimate use by Congress of its power to investigate."); *Chapman v. Space Qualified Sys. Corp.*, 647 F. Supp. 551, 553 (N.D. Fla. 1986) (subpoena issued by General Accounting Office as part of investigation that Member of Congress requested could not be challenged in civil action).

The immunity afforded by the Speech or Debate clause is so broad that federal courts have applied it to lawsuits or actions that merely threaten to interfere with Congress's ability to gather information. *E.g.*, *Senate Permanent Subcommittee on Investigation v. Ferrer*, 856 F.3d 1080 (D.C. Cir. 2017) (the Speech or Debate Clause "bars this court from ordering a congressional committee to return, destroy, or refrain from publishing … subpoenaed documents"); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C. Cir. 1995) (Speech or Debate Clause prohibited subpoena to Congressman by company for its own privileged, possibly stolen documents because it could "provide clues as to what Congress is doing, or might be about to do"). Courts in this Circuit have likewise recognized that, under the Speech or Debate Clause, they cannot interfere with Congress's "inherent and implied power to obtain information needed in order to enact legislation."

*Ven-Fuel*, 441 F. Supp. at 1305-06; *see also Chapman*, 647 F. Supp. at 553-54.

This doctrine applies fully against Mr. Flynn's arguments that the subpoena and the Select Committee are illegitimate and unconstitutional. That "argument—made in almost every Speech or Debate Clause case—has been rejected time and again." *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015); *see also Ven-Fuel*, 441 F. Supp. at 1305 ("[N]either the motives behind the legislative activity, nor the final product resulting from legislative activity may be questioned by the courts or the executive branch."). This broad protection stems from the fact that the Clause provides for "absolute" protection. *Id.* at 1305.

Indeed, the Supreme Court held in *Eastland* that Members of Congress cannot be subject to constitutional claims in relation to the issuance of Congressional subpoenas as part of an authorized Congressional investigation. 421 U.S. at 509-11. Rejecting an organization's argument that a Congressional subpoena violated its First Amendment rights and that the subpoena's purpose was to "'harass, chill, punish, and deter' them in the exercise of their First Amendment rights," the Court explained that the argument "ignored the absolute nature of the speech or debate protection," which "provides an absolute immunity from judicial interference." *Id*. at 510 n.16.

The same logic compels dismissal here. As in *Eastland* and the cases interpreting and applying it, this Court lacks jurisdiction to adjudicate challenges to the validity of a Congressional subpoena.[3]

## B.     Sovereign Immunity Independently Requires Dismissal

Mr. Flynn's suit is separately barred by the doctrine of sovereign immunity because "the United States may not be sued without its consent and … the existence of consent is a prerequisite for jurisdiction." *United States. v. Mitchell*, 463 U.S. 206, 212 (1983). That protection applies to Congress as well. *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972); *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009). Accordingly, sovereign immunity "forecloses … claims against the House of Representatives and Senate as institutions, and Representative[s] and Senator[s] as individuals acting in their official capacities." *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007).

A plaintiff seeking to sue the Federal Government bears the burden of identifying an applicable waiver of sovereign immunity that is "unequivocally expressed in statutory text." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (waiver "will not

---

[3] The cases cited in the Complaint for the proposition that a Congressional subpoena "may still be invalid if the contemplated legislation would be unconstitutional," Compl. ¶ 79, do not hold that a court may entertain a lawsuit against Members of Congress to enjoin an investigation or invalidate its process. To the contrary, the cited cases *support* the contrary rulings of the Supreme Court and Courts of Appeals discussed above. *Kilbourn*, 103 U.S. at 204-05 (because of the broad immunity afforded by the Speech or Debate Clause, habeas petition from a witness who had been imprisoned for refusing to comply with a Congressional subpoena cannot validly name Members of Congress); *McGrain*, 273 U.S. at 174 (warrant issued to compel a witness to provide testimony and documents during a Congressional investigation of his brother, then the Attorney General, upheld because "the power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function").

10

be implied"). Mr. Flynn does not and cannot point to any such waiver. Nor can the Select Committee's actions be considered *ultra vires*; after all, the Select Committee's investigation, and the subpoenas issued in connection with it, were clearly and expressly authorized by the full House and are consistent with its standing rules. *See* H. Res 503. Because no waiver of sovereign immunity applies, the Complaint must be dismissed.

## II. Plaintiff Fails to State a Claim for Which Relief Can be Granted

Even if Mr. Flynn could overcome these jurisdictional bars, his Complaint does not state a claim.

### A. The Select Committee Has a Valid Legislative Purpose

Mr. Flynn alleges that the Select Committee and its investigation are not pursuing legitimate legislative goals, Compl. ¶¶ 75-88, an argument that federal courts have uniformly rejected.

In *Trump v. Thompson*, a challenge brought by former President Trump to the Select Committee's ability to investigate the January 6 attack, the D.C. Circuit recognized:

> The very essence of the Article I power is legislating, and so there would seem to be few, if any, more imperative interests squarely within Congress's wheelhouse than ensuring the safe and uninterrupted conduct of its constitutionally assigned business. Here, the House of Representatives is investigating the single most deadly attack on the Capitol by domestic forces in the history of the United States.

20 F.4th at 35.

Accordingly, the D.C. Circuit concluded that "the January 6th Committee plainly has a valid legislative purpose and its inquiry concern[s] a subject on which

11

legislation could be had." *Id.* at 41 (internal quotation marks omitted). The Supreme Court summarily denied Mr. Trump's request for an injunction pending review of the D.C. Circuit's decision and denied *certiorari* as well. *See* 142 S. Ct. 680 (2022); No. 21-932 (Feb. 22, 2022).

Recently, additional courts have ruled that the Committee is pursuing legitimate legislative purposes. *See Budowich v. Pelosi*, No. 21-cv-3366 (JEB) (D.D.C., Boasberg, J.), Jan. 20, 2022 Oral Arg. Tr. at 34; *Eastman v. Thompson*, No. 8:22-cv-00099-DOC-DFM (C.D. Cal., Carter, J.), ECF 43 at 9-12 (Jan. 25, 2022). No court has ruled or suggested otherwise and Mr. Flynn offers no reason to depart from these holdings.

## B.    The Select Committee is Validly Constituted

Mr. Flynn also alleges that the Select Committee is not validly formed or authorized. Compl. ¶¶ 65-74. Under the Constitution's Rulemaking Clause, federal courts have no jurisdiction to review such claims. Regardless, Mr. Flynn is incorrect.

### 1.    The Rulemaking Clause Bars Federal Courts from Considering Claims About the Select Committee's Internal Operations

Mr. Flynn's contention that Members of the Committee were improperly selected is not cognizable. Under the Rulemaking Clause, "[e]ach House may determine the Rules of its Proceedings." U.S. Const., art. I, § 5, cl. 2; *see Baker v. Carr*, 369 U.S. 186, 217 (1962). That provision is a critical aspect of the Legislative Branch's constitutional design as it "grants the House the power to make its own Rules about its internal proceedings," *Rangel v. Boehner*, 20 F. Supp. 3d 148, 167

(D.D.C. 2013), which "only empowers Congress to bind itself," *INS v. Chadha*, 462 U.S. 919, 955 n.21 (1983).

Courts have long emphasized the deference owed to Congress in determining its own rules. "[J]udicial interpretation of an ambiguous House Rule runs the risk of the court intruding into the sphere of influence reserved to the legislative branch under the Constitution." *United States v. Rostenkowski*, 59 F.3d 1291, 1306 (D.C. Cir. 1995). Thus, a court's jurisdiction to interpret internal rules of a House of Congress is limited to situations where such interpretation "requires no resolution of ambiguities." *United States v. Durenberger*, 48 F.3d 1239, 1244 (D.C. Cir. 1995). "Where, however, a court cannot be confident that its interpretation is correct, there is too great a chance that it will interpret the Rule differently than would the Congress itself; in that circumstance, the court would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone." *Rostenkowski*, 59 F.3d at 1306-07; *accord Metzenbaum v. FERC*, 675 F.2d 1282, 1287 (D.C. Cir. 1982) ("To decide otherwise would subject Congressional enactments to the threat of judicial invalidation on each occasion of dispute over the content or effect of a House or Senate rule.").

Another court recently recognized the judiciary's limited role in reviewing Congressional rules in the context of the Select Committee's composition. In *Budowich, supra,* the court explained that it would reject arguments similar to those Mr. Flynn makes here: the court would "have to defer to Congress in the manner of interpreting its rules," and would be "usurping Congressional authority" were it to

13

hold that the Select Committee was not validly composed. Jan. 20, 2022 Oral Arg. Tr. 34:1-5, 8-10, *Budowich v. Pelosi*, No. 21-cv-3366 (JEB) (D.D.C. Jan. 20, 2022); s*ee also Eastman*, ECF 43 at 9 & n. 12; *Vander Jagt v. O'Neil*, 699 F.2d 1166, 1175-77 (D.C. Cir. 1982) (affirming dismissal of relief sought by 14 House Republican members claiming discrimination regarding committee assignments and rejecting the "startlingly unattractive idea, given our respect for a coequal branch of government, for us to tell the Speaker" whom to appoint to committees). For the same reasons, Mr. Flynn's challenges to the Select Committee's composition rest on arguments not subject to judicial review.

### 2. The Select Committee is Properly Composed

Mr. Flynn's challenges to the Committee's composition are, in any event, incorrect.

*First*, Mr. Flynn complains that the Speaker has appointed only nine Members to the Select Committee, rather than the thirteen House Resolution 503 allows. Compl. ¶ 66, 69; H.Res. 503 § 2(a) ("The Speaker shall appoint 13 Members . . . ."). But the Resolution does not require that *all* thirteen Members be appointed at once for the Select Committee to function, nor does the authorization to appoint thirteen Members require the appointment of that precise number. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995) (recognizing that "shall" sometimes means "may"). Indeed, there is House precedent for such a select committee having fewer than its full allotment of Members. In the 109th Congress, for instance, the House created the Select Committee to Investigate the Preparation for and Response to

14

Hurricane Katrina, which allowed for twenty Members, using similar language.  *See*
H. Res. 437, § 2(a), 109th Cong. (2005) ("The select committee shall be composed of
20 members appointed by the Speaker ….").  House Speaker Dennis Hastert
appointed only eleven Members, all of whom were from the Republican majority
party.  *See* H. Rep. No. 109-377, ii, 109th Cong. (2006) (listing Members appointed
by Speaker Hastert).  In fact, the Resolution even contemplates the possibility of
"vacancies" but does not provide a specific timeline for filling them.  H. Res. 503,
§ 2(c).  Nor does the Resolution provide that the Select Committee becomes invalid
or that it must suspend all action when vacancies arise.  *Id.*

　　The fact that the full House has affirmatively ratified actions of the Select
Committee confirms that the Select Committee is duly constituted.  The full House
approved the Select Committee's referrals of Steven Bannon and Mark Meadows for
contempt of Congress.  *See* H. Res. 730, 117th Cong. (2021) (Bannon); H. Res. 851,
117th Cong. (2021) (Meadows).  Both resolutions were reported by the Select
Committee and approved by the full House.  *See* 167 Cong. Rec. H5748-69, 117th
Cong. (daily ed., Oct. 21, 2021); *id.* at H7667-76 (daily ed., Dec. 14, 2021).  The full
House's ratification of the referrals shows that Mr. Flynn's objections to its
composition are meritless.

　　*Second*, Mr. Flynn complains that the Minority Leader did not recommend the
Republican Members of the Select Committee.  Compl. ¶¶ 33-35, 66, 70.  But the
power to appoint House Members to select committees rests exclusively with the
Speaker of the House.  *See* House Rule I.11 ("The Speaker shall appoint all select,

joint, and conference committees ordered by the House."); 167 Cong. Rec. H37, 117th Cong. (daily ed. Jan. 4, 2021) (authorizing Speaker to "accept resignations and to make appointments authorized by law or by the House"). This is consistent with longstanding House precedent. *See* 8 *Cannon's Precedents of the U.S. House of Representatives*, § 2172 (citing "instances in which the majority declined to recognize minority recommendations for committee assignments").

House Resolution 503 is not to the contrary. Had the House intended a binding role for the Minority Leader, it could have legislated one, as it has in the past. *See* H. Res. 6, § 104(f)(1)(B), 116th Cong. (2019) (Select Committee on the Climate Crisis); *id.* at § 201(b)(3) (Select Committee on the Modernization of Congress).

In contrast, when creating the Select Committee, the House only required that Members be chosen "after *consultation* with the Minority Leader," H. Res. 503, § 2(a) (emphasis added), which allows the Speaker greater authority regarding the appointment of minority party Members. "Consultation" means to "seek[] advice or information of.'" *United Keetoowah Band of Cherokee Indians in Okla. v. FCC*, 933 F.3d 728, 750 (D.C. Cir. 2019) (internal quotation marks omitted); *see* Black's Law Dictionary (11th ed. 2019) (defining "consultation" as "[t]he act of asking the advice or opinion of someone"). This language is consistent with House practice and precedent: The same language was used in the resolutions that created both the Select Bipartisan Committee to Investigate the Preparation for and Response to

16

Hurricane Katrina, *see supra*, and the Select Committee on the Events Surrounding the 2012 Terrorist Attack in Benghazi, *see* H. Res. 567, § 2(a), 113th Cong. (2014).

Here, House Resolution 503 was followed: the Minority Leader *was* consulted. Compl. ¶¶ 33-34 & *supra* nn. 1 & 2. Indeed, as Mr. Flynn admits, the Minority Leader made several suggestions to the Speaker regarding minority party Members to serve on the Select Committee, Compl. ¶ 33, and as the news articles referenced in the Complaint note, the Speaker announced her intention to appoint three of the five minority party Members recommended by the Minority Leader. *See* Compl. n.5. The fact that the Speaker—using her authority under House Rules; the January 4, 2021 Order of the House; and House Resolution 503—made different selections as to two Members, and that the Minority Leader subsequently withdrew his recommendations, does not make the Select Committee improperly constituted, nor does it invalidate any of its actions. There is no basis for a court to substitute its interpretation of the terms "shall" and "consultation" for the House's view. *See* *Barker*, 921 F.3d at 1130; *Eastman* ECF 43 at 9 & n. 12; *Vander Jagt*, 699 F.2d at 1175.

*Third*, Mr. Flynn complains that the subpoena is invalid because the Select Committee lacks a "ranking minority Member," who must be consulted before any committee subpoena can issue. *See* Compl. ¶¶ 72-73. That argument is wrong. House Resolution 503 does not require consultation with the ranking minority Member before issuing a subpoena for documents; instead, it provides that the "chair of the Select Committee may authorize and issue subpoenas pursuant to clause 2(m) of [House] rule XI." *See* H. Res. 503, § 5(c)(4). In turn, House Rule XI.2(m) permits

17

issuance of subpoenas for documents when the power to authorize and issue

subpoenas has been "delegated to the chair of the committee under such rules and

under such limitations as the committee may prescribe." *Id.* Because House

Resolution 503 specifically delegates to the Chairman of the Select Committee the

power to authorize and issue subpoenas, it is consistent with House Rule

XI.2(m)(3)(A)(i). Finally, to the extent House Resolution 503 requires consultation

with the "ranking minority member" prior to the issuance of a deposition subpoena,

the Chairman satisfied that requirement by consulting Vice Chair Liz Cheney, who,

by virtue of the date of her appointment is the most senior Republican Member of

the Select Committee. That is sufficient for purposes of House Resolution 503. *See*

*supra* at 15 (noting that the full House has ratified actions of the Select

Committee). Here, the Chairman has determined that House Resolution 503 has

been complied with by consultation with Vice Chair Cheney. As previously

discussed, *see supra* at B.1, the Rulemaking Clause of the Constitution requires that

the judiciary defer to the House regarding the interpretation and application of the

House's own rules and procedures.

### C. The Select Committee's Subpoena Is Valid and Enforceable

Mr. Flynn challenges the validity of the Select Committee and its authority to

issue the subpoena to him by arguing that it does not further any valid legislative

purpose or, alternatively, that this subpoena is not relevant to that purpose. Compl.

¶¶ 75-88. These claims are wrong. In determining the proper scope of a legislative

subpoena, this Court may only inquire as to whether the documents sought by the

18

subpoena are "plainly incompetent or irrelevant to any lawful purpose [of the Select Committee] in the discharge of [its] duties." *McPhaul v. United States*, 364 U.S. 372, 381 (1960) (internal quotation marks omitted).

The relevance of the records sought from Mr. Flynn is plain. As discussed above, House Resolution 503 explicitly authorizes the Select Committee to investigate "influencing factors that contributed to the domestic terrorist attack on the Capitol." H. Res. 503, § 4(a)(1)(B). One such potential influencing factor is the desire of the January 6 protestors to overturn the results of the 2020 Presidential election and their apparent belief (championed by Mr. Flynn) that the election was invalid. The Select Committee must therefore obtain testimony and any evidence, including communications, that Mr. Flynn—who was openly challenging the validity of the election—possesses relating either to efforts to overturn or to discredit the election or to Flynn's involvement in the election. The subpoena seeks such information. *See* Compl. ¶ 54 (noting subpoena requests for "[c]ommunications referring or relating in any way to plans, efforts, or discussions regarding challenging, decertifying, overturning, or contesting the results of the 2020 Presidential election").

The remainder of the documents requested from Mr. Flynn concern his role in events leading up to, on, and immediately after January 6, 2021. *See id.* (requesting, *inter alia*, "[a]ll documents or communications relating to the January 6, 2021 attack"; "[a]ll documents and communications relating to protests, marches, public assemblies, rallies, and speeches in Washington, DC on November 4, 2020, December 12, 2020, January 5, 2021, and January 6, 2021"; and "[d]ocuments or

19

other materials referring to or relating to the financing or fundraising associated with the [rallies]").  Again, these requests are easily within the scope of the Select Committee's legislative purpose.

### D.  Mr. Flynn Fails to State a Proper Constitutional Challenge to the Subpoena

The Court should reject Mr. Flynn's constitutional challenges to the subpoena as foreclosed by *Eastland*.  *See supra* I.A.  Members of Congress are absolutely immune from such challenges.  Regardless, Mr. Flynn's constitutional arguments fail for the following additional reasons.

### 1.  The Subpoena Does Not Violate Mr. Flynn's Fourth Amendment Rights

The D.C. Circuit recently held in *Trump v. Thompson*, 20 F.4th at 24, that "Congress's power to obtain information is broad and indispensable ... and encompasses inquiries into the administration of existing laws, studies of proposed laws, and surveys of defects in our social, economic or political system for the purpose of enabling the Congress to remedy them." (internal punctuation omitted). "[T]he January 6th Committee plainly has a valid legislative purpose and its inquiry concern[s] a subject on which legislation could be had."  *Id.* at 41 (internal quotation marks omitted).

In light of this holding, Mr. Flynn's argument that the subpoena violates the Fourth Amendment because it "is so broad and indefinite as to exceed the lawfully authorized purpose of the Select Committee," Compl. ¶¶ 97-100, is mistaken.  A subpoena is not impermissibly overbroad if its call for documents or testimony is

within the scope of the Congressional inquiry at issue.  *See McPhaul*, 364 U.S. at 382. As described above, the Select Committee's inquiry includes examining the January 6 attack as well as its "circumstances" and "causes," to inform consideration of "changes in law, policy, procedures, rules, or regulations."  H. Res. 503 § (3)(1), 4(c). Given that scope, the subpoena is appropriately tailored to meet the Select Committee's mandate and is not impermissibly broad.  *See Eastland*, 421 U.S. at 509.

Specifically, Mr. Flynn objects to the subpoena's request for documents and communications relating to election security, political strategy regarding campaign messages, and communications involving the 2020 election.  Compl. ¶ 101.  Each of these topics involves facts relating to the motivations behind the January 6 attack and the peaceful transfer of power.  Given that an express purpose of the Select Committee is to "investigate and report upon the facts, circumstances, and causes ... relating to the interference with the peaceful transfer of power," documents relating to discussions about unsubstantiated allegations of voter fraud and overturning the 2020 Presidential election are clearly within the ambit of its inquiry.  *See McPhaul*, 364 U.S. at 382.  Thus, the Subpoena is not overbroad and does not violate Mr. Flynn's Fourth Amendment rights.

### 2. The Subpoena Does Not Violate Mr. Flynn's Fifth Amendment Rights

The Complaint alleges that the subpoena violates Mr. Flynn's Fifth Amendment privilege against compelled self-incrimination.  Compl. ¶ 105.  For several reasons, that claim fails as a matter of law.

21

*First*, Mr. Flynn's blanket Fifth Amendment objection is improper. "It is well established that a person may not make a blanket objection to testifying or producing records based on Fifth Amendment privilege, but instead, must invoke the privilege question by question or request by request." *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1371 (S.D. Fla. 2012) (citing *United States v. Roundtree*, 420 F. 2d 845, 852 (5th Cir. 1969)). "The ban on blanket Fifth Amendment objections prevents a person from wholesale refusing to answer any questions or to produce any documents without specifically considering whether the information sought may actually raise a 'substantial and real hazard of self-incrimination.'" *Nat'l Physicians Holding Co. v. Middlebury Equity Partners, LLC*, No. 7:09-CV-21, 2018 WL 1053538, at *2 (M.D. Ga. Feb. 26, 2018) (quoting *United States v. Argomaniz*, 925 F.2d 1349, 1353 (11th Cir. 1991)). Here, Mr. Flynn has refused to comply with the subpoena without invoking the privilege on a question-by-question or document-by-document basis. For this reason alone, his Fifth Amendment claim fails.

*Second,* Mr. Flynn has not pointed to any substantial, nonspeculative possibility of self-incrimination. The Fifth Amendment privilege protects disclosures that a witness "reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972) (emphasis added). The threat of self-incrimination must be a "real danger[], not remote and speculative possibilities." *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972); *see also Argomaniz*, 925 F.2d at 1353. Mr. Flynn's Fifth Amendment claim appears to rest on a "current and active criminal

22

investigation into a nonprofit General Flynn briefly served as a director." Compl. ¶ 54; *see also id.* ¶¶ 10, 57, 106, 108. But he points to no real, nonspeculative possibility that *he* will be prosecuted.

*Third*, Mr. Flynn has not plausibly alleged that the act of producing documents will convey some statement of facts that could be used against him in a criminal prosecution. Courts have recognized a narrow Fifth Amendment protection for "the act of producing documents in response to a subpoena" where it "may implicitly communicate statements of fact." *United States v. Ponds*, 454 F.3d 313, 319 (D.C. Cir. 2006) (internal quotation marks omitted). Mr. Flynn alleges that his act of producing documents could reveal "the persons with whom he communicated, the times of those communications in relation to other events, and the frequency of any such communications." Compl. ¶ 106. But the relevant question is not whether the "contents" of the documents are incriminating; it "is whether the *act of production* may have some testimonial quality." *In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011*, 670 F.3d 1335, 1342 (11th Cir. 2012) (emphasis in original). Mr. Flynn alleges his producing documents would violate the Fifth Amendment "to the extent that admissions that certain records exist, that they are in his possession, and that they are authentic may be used as evidence against him" in a criminal investigation (Compl. ¶ 108), but that conclusory allegation fails to explain *how* the production of *these requested documents* would convey such admissions in a way that could be used against him. Mr. Flynn's Fifth Amendment assertion fails.

### 3. The Subpoena Does Not Violate Mr. Flynn's First Amendment Rights

Mr. Flynn also argues that the subpoena violates his First Amendment rights, but this argument is squarely foreclosed by *Eastland*. There, the Supreme Court rejected an organization's argument that a Congressional subpoena's purpose was to "'harass, chill, punish, and deter' [it] in the exercise of [] First Amendment rights," explaining that the typical First Amendment balancing test "plays no part" when a Congressional subpoena is involved, and the Speech or Debate Clause "provides an absolute immunity from judicial interference." *Id.* at 510 n.16. Mr. Flynn's First Amendment arguments against enforcement of the Select Committee's subpoena accordingly must be dismissed.

Even if Mr. Flynn's claim were subject to a balancing test, it would still fail: the balancing of "the competing private and public interests at stake" here plainly favors the Select Committee. *Barenblatt v. United States*, 360 U.S. 109, 126 (1959). The Supreme Court has made clear that the public interest is extremely high when the focus is on ensuring "the free functioning of our national institutions." *Buckley v. Valeo*, 424 U.S. 1, 66 (1976) (internal quotation marks omitted). The Select Committee is doing precisely that by seeking testimony and records from Mr. Flynn.

Mr. Flynn, by contrast, fails to assert any First Amendment interest that could outweigh the very grave public interest here. His conclusory assertions that "[t]he Subpoena is also a clear effort to chill the speech of the Committee Member's political adversaries," Compl. ¶ 91, and is a "massive infringement and chilling of his

1st Amendment rights," Compl. ¶ 94, are too amorphous to be actionable. Courts require far more specificity, which is simply lacking here.[4]

Even if Mr. Flynn were able to substantiate a legitimate interest implicated by the subpoena, the Select Committee's interest far outweighs his interest. The Select Committee's subpoena seeks records relevant to determining the root causes of the January 6 insurrection that aimed to prevent Congress from carrying out its constitutional responsibility to officially count the state electoral votes. This is a paradigmatic example of the governmental interest in the "free functioning of our national institutions." *Buckley*, 424 U.S. at 66. Accordingly, the Complaint fails to state a First Amendment claim on which relief may be granted.

## **CONCLUSION**

For the reasons stated above, this Court should dismiss the Complaint in its entirety.

---

[4] *See Buckley*, 424 U.S. at 66 (stating that showing an associational injury requires demonstrating a "reasonable probability that the compelled disclosure" "will subject them to threats, harassment, or reprisals from either Government officials or private parties"); *see also Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988) (stating that courts have "emphasized in each of those decisions … the need for objective and articulable facts, which go beyond broad allegations or subjective fears.…[A] merely subjective fear of future reprisals is an insufficient showing of infringement of associational rights.").

Respectfully submitted,

/s/  Douglas N. Letter
DOUGLAS N. LETTER
   *General Counsel*
TODD B. TATELMAN
   *Principal Deputy General Counsel*
ERIC R. COLUMBUS
   *Special Litigation Counsel*
STACIE M. FAHSEL
   *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C.  20515
(202) 225-9700
Douglas.Letter@mail.house.gov

John A. Freedman[*]
Paul Fishman[*]
Amy Jeffress[*]
David J. Weiner[*]
John M. Hindley[*]
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com
David.Weiner@arnoldporter.com
John.Hindley@arnoldporter.com

SHER TREMONTE LLP
Justin M. Sher[*]
Michael Tremonte[*]
Noam Biale[*]
Maya Brodziak[*]
Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600

26

JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

* Appearing pursuant to 2 U.S.C. § 5571(a).