## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REPUBLICAN NATIONAL COMMITTEE,

        Plaintiff,

   v.

NANCY PELOSI, *et al*.,

        Defendants.

Case No. 1:22-cv-00659-TJK

## CONGRESSIONAL DEFENDANTS' SUPPLEMENTAL BRIEF

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004

ARNOLD & PORTER
601 Massachusetts Ave, NW
Washington, D.C. 20001

*Counsel for the Congressional Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ................................................................................................ 1

A.      Federal Rule of Civil Procedure 19 requires this suit to be dismissed. ............................. 3

B.      Compliance with a House subpoena would not make Salesforce a state actor ............... 10

C.      To the extent this Court considers the merits of the RNC's claims (which it should),
        it should do so with appropriate deference to Congress .................................................. 13

CONCLUSION.................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Ali v. Carnegie Inst. of Wash.*,
  306 F.R.D. 20 (D.D.C. 2014) ......................................................................................6

*Brown & Williamson Tobacco Corp. v. Wigand*,
  913 F. Supp. 530 (W.D. Ky. 1996) ...........................................................................12

*Coolidge v. New Hampshire*,
  403 U.S. 443 (1971) ...................................................................................................11

*Davis v. United States*,
  192 F.3d 951 (10th Cir. 1999) .....................................................................................8

*Doe v. McMillan*,
  412 U.S. 306 (1973) .....................................................................................................8

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) ................................................................................................9, 10

*Exxon Corp. v. FTC*,
  589 F.2d 582 (D.C. Cir. 1978) ...................................................................................14

*Fields v. Off. of Eddie Bernice Johnson*,
  459 F.3d 1 (D.C. Cir. 2006) .........................................................................................8

*Fluent v. Salamanca Indian Lease Auth.*,
  928 F.2d 542 (2d Cir. 1991) .........................................................................................6

*Hearst v. Black*,
  87 F.2d 68 (D.C. Cir. 1936) .......................................................................................14

*In re Chapman*,
  166 U.S. 661 (1897) ...................................................................................................16

*In re Grand Jury Subpoenas*,
  571 F.3d 1200 (D.C. Cir. 2009) .................................................................................16

*Kickapoo Tribe of Indians of Kickapoo Rsrv. in Kan. v. Babbitt*,
  43 F.3d 1491 (D.C. Cir. 1995) .........................................................................3, 5, 6, 7

*Manybeads v. United States*,
  209 F.3d 1164 (9th Cir. 2000) .....................................................................................8

*Marshall Field & Co. v. Clark*,
   143 U.S. 649 (1892).................................................................................16

*McGrain v. Daugherty*,
   273 U.S. 135 (1927).................................................................................13

*MINPECO, S.A. v. Conticommodity Services, Inc.*,
   844 F.2d 856 (D.C. Cir. 1988)...................................................................8

*Republic of Philippines v. Pimentel*,
   553 U.S. 851 (2008)......................................................................6, 8, 9, 10

*Springer v. Philippine Islands*,
   277 U.S. 189 (1928).................................................................................15

*Stand Up for California! v. U.S. Dep't of the Interior*,
   204 F. Supp. 3d 212 (D.D.C. 2016)...........................................................6

*Trump v. Mazars USA LLP*,
   140 S. Ct. 2019 (2020).......................................................................10, 13

*United States v. Am. Tel. & Tel. Co.*,
   567 F.2d 121 (D.C. Cir. 1977)...................................................................9

*United States v. Ballin*,
   144 U.S. 1 (1892)...................................................................................16

*United States v. Bebris*,
   4 F.4th 551 (7th Cir. 2021) ....................................................................12

*United States v. Brewster*,
   408 U.S. 501 (1972).........................................................................14, 16

*United States v. Durenberger*,
   48 F.3d 1239 (D.C. Cir. 1995)...............................................................15

*United States v. Helstoski*,
   442 U.S. 477 (1979).................................................................................14

*United States v. Jacobsen*,
   466 U.S. 109 (1984).................................................................................12

*United States v. Johnson*,
   383 U.S. 169 (1966)..................................................................................7

*United States v. Raheja*,
   No. 1:19-CR-559, 2020 WL 7769725 (N.D. Ohio Dec. 30, 2020) ........................11

*United States v. Ringland*,
    966 F.3d 731 (8th Cir. 2020) ................................................................. 12

*United States v. Rostenkowski*,
    59 F.3d 1291 (D.C. Cir. 1995) .............................................................. 15

*United States v. Shkreli*,
    No. 15-CR-637, 2017 WL 3608252 (E.D.N.Y. May 16, 2017) ............... 12

*Vander Jagt v. O'Neill*,
    699 F.2d 1166 (D.C. Cir. 1982) ............................................................ 15

*Vann v. Kempthorne*,
    534 F.3d 741 (D.C. Cir. 2008) ................................................................ 8

*Wichita & Affiliated Tribes of Okla. v. Hodel*,
    788 F.2d 765 (D.C. Cir. 1986) ................................................................ 5

## **Constitutional Provisions**

U.S. Const., Art. I, § 5, cl. 2 ........................................................................ 15

U.S. Const., Art. I, § 5, cl. 3 ........................................................................ 16

U.S. Const., Amend. I .......................................................................... 11, 13

U.S. Const., Amend. IV ......................................................................... 11, 13

## **Rules**

Fed. R. Civ. P. 19 ..................................................................... 3, 4, 5, 6, 7, 8

## INTRODUCTION

This Court ordered the parties to file supplemental briefs addressing how Congressional immunity under the Speech or Debate Clause bears on the Court's adjudication of the request by the Republican National Committee (RNC) for an injunction against Salesforce.  Under Federal Rule of Civil Procedure 19, as well as under the state action doctrine, this entire suit must be dismissed, which will allow Salesforce to comply with the Select Committee's subpoena.

For the reasons discussed in detail below, the Congressional Defendants answer the Court's questions as follows:

**1. If the Speech or Debate Clause requires the Court to dismiss the claims against House Defendants, can the RNC's claims against Salesforce proceed or must they be dismissed for some reason?**

The claims must be dismissed for the reasons discussed in response to the Court's subsequent questions.

**2.  If the Speech or Debate Clause requires the Court to dismiss the claims against House Defendants, does the Speech or Debate Clause operate to bar the RNC's claims against Salesforce in some way?  Does Federal Rule of Civil Procedure 19 play a role in that analysis, similar to the way it generally favors dismissing an entire lawsuit when a "required party" has sovereign immunity and so "cannot be joined" in the action?  *See, e.g.*, *Kickapoo Tribe of Indians of Kickapoo Rsrv. in Kan. v. Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995); *Ali v. Carnegie Inst. of Wash.*, 306 F.R.D. 20 (D.D.C. 2014).**

For the reasons stated in the Congressional Defendants' initial brief (pp. 18-24), the Speech or Debate Clause requires the Court to dismiss the claims against them.  Federal Rule of Civil Procedure 19 will then bar the RNC's claims against Salesforce, because the Select Committee is a "required party" that "cannot be joined" due to Speech or Debate Clause immunity.

**3.  If the Speech or Debate Clause requires the Court to dismiss the claims against House Defendants, does the RNC have standing to assert its claims against Salesforce?**

As to its Stored Communications Act claim against Salesforce, the RNC has standing. As to the remaining claims, whether because of lack of standing or (as discussed below) absence of a state actor, the claims cannot proceed against Salesforce.

**4. If the Speech or Debate Clause requires the Court to dismiss the claims against House Defendants, and the RNC's claims against Salesforce are not subject to dismissal, on what basis may the Court grant summary judgment against Salesforce, given that Salesforce is a private party—effectively a third party in this litigation—and it is not alleged to have played any role in issuing the subpoena?**

Salesforce's compliance with the subpoena does not constitute state action and therefore the RNC does not state any Constitutional claims against Salesforce. The sole remaining claim is the RNC's Stored Communications Act claim. For the reasons stated in the Congressional Defendants' initial brief (pp. 38-39),[1] that claim fails on the merits.

*       *       *

The Congressional Defendants urge the Court to dismiss the RNC's claims on the merits as an alternative ground in addition to ruling on the grounds identified in this supplemental brief. The questions regarding Rule 19 and the state action doctrine in this context are at once important and novel. Any prolonged litigation on appeal involving these questions could significantly delay the Select Committee's ability to obtain the documents to which it is entitled. By reaching the merits as well, this Court would help ensure a prompt final resolution of this dispute and allow the Committee's urgent investigation to proceed without interruption.

In addition, as explained below, Speech or Debate Clause immunity is an integral part of a broader separation of powers principle that is fundamental to the Constitution and protects the Legislative Branch from encroachment into its internal affairs by either the Executive or Judicial

---

[1] As counsel for the Congressional Defendants noted at the April 1 hearing, page 38 of the Congressional Defendants' initial brief incorrectly stated that the subpoena seeks subject lines of emails. (Tr. 87:12-23.)

Branches.  Thus, as this Court considers the reach of the Speech or Debate Clause, it should

recognize how that provision ties in with other Constitutional provisions and doctrines that

compel the rejection of the various attacks that the RNC makes against the subpoena at issue

here.

### A.   Federal Rule of Civil Procedure 19 requires this suit to be dismissed

In its April 5 Order, this Court asked whether, if the Congressional Defendants are

dismissed from this case due to the Speech or Debate Clause immunity, the RNC's claims

against Salesforce should also be dismissed in light of Federal Rule of Civil Procedure 19.  *See*

ECF No. 23 at 2.  The text of that rule and caselaw applying it indicate that those claims should

indeed be dismissed.

Rule 19 establishes a three-part test for making these determinations.  *See Kickapoo Tribe

of Indians of Kickapoo Rsrv. in Kan. v. Babbitt*, 43 F.3d 1491, 1494 (D.C. Cir. 1995).  *First*, the

court determines whether, as set forth in Rule 19(a)(1), the party is necessary for a just

adjudication.  *See id.  Second*, the court evaluates whether joinder of that party is feasible.  *See

id.  Third*, if the party cannot be joined, the court determines "whether the lawsuit can

nevertheless proceed 'in equity and good conscience.'"  *Id.* (quoting Fed. R. Civ. P. 19(b)).

Rule 19's three-part test requires full dismissal here.  This case is a dispute over *the

Select Committee's* investigation and its subpoena to Salesforce—the Select Committee is,

therefore, a necessary party.  Inclusion of the Select Committee (or any of its Members) is

improper because the Speech or Debate Clause entitles the Select Committee to full immunity

from this suit.  Because both equity and good conscience weigh decisively against this action

proceeding between the RNC and Salesforce alone, the case should be dismissed in its entirety.

### i.     The Select Committee is a required party

Rule 19(a) describes a party as "required" if that party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).

Under these criteria, the Select Committee is obviously a required party.  Granting the relief sought by the RNC will plainly impede the Select Committee's investigation.  The RNC asks in its amended complaint for a declaratory judgment that "the Select Committee lacks necessary congressional authorization," or for "[a]n injunction quashing the Salesforce Subpoena and prohibiting its enforcement by Defendants."  Am. Compl. at 30, ECF No. 6.  Without any doubt, such relief would undermine the Select Committee's investigation.

In other words, this case is about the RNC's challenge to a Select Committee subpoena and to the validity of the Select Committee's work—nothing else.  Indeed, the RNC's original complaint did not even include Salesforce as a defendant.  *See* Compl. at 1-2, 5-7, ECF No. 1.

Because the case against Salesforce puts the Select Committee's subpoena in jeopardy, the Select Committee's absence from the case would impair its ability to protect its interests, which are not identical to those of Salesforce.  The Select Committee is, therefore, a required party to this litigation.

### ii.     Joinder of the Congressional Defendants is not feasible because they enjoy and have asserted their immunity from suit

As argued in our initial brief (pp. 18-24), the Congressional Defendants are immune from this suit under the Speech or Debate Clause and must be dismissed.  Joinder of the Congressional Defendants is therefore not feasible under Rule 19.

4

### iii.    The case cannot proceed in equity and good conscience without the Select Committee as a party

The factors set forth in Rule 19(b) require dismissal of the entire suit.  Rule 19(b)

provides that, if a party "who is required to be joined if feasible cannot be joined, the court must

determine whether, in equity and good conscience, the action should proceed among the existing

parties or should be dismissed."  The factors to consider include:

> (1) the extent to which a judgment rendered in the [party's] absence might prejudice that [party] or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the [party's] absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*  The prejudice inquiry under 19(b)(1) is the same as the inquiry for determining whether a

party is "required" under Rule 19(a)(1)(B)(i).  *See Kickapoo Tribe of Indians of Kickapoo Rsrv.*,

43 F.3d at 1497 n.9.

All four factors point to dismissal here—but the first is dispositive.  Although "Rule

19(b) sets forth four non-exclusive factors for the court to consider," the D.C. Circuit "has

observed that 'there is very little room for balancing of other factors' set out in Rule 19(b) where

a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one

of those interests 'compelling by themselves.'"  *Id.* at 1496 (quoting *Wichita & Affiliated Tribes

of Okla. v. Hodel*, 788 F.2d 765, 777 n.13 (D.C. Cir. 1986)).

In *Kickapoo Tribe*, the D.C. Circuit explained that, "notwithstanding the discretion

generally accorded to the district court to consider which factors to weigh and how heavily to

emphasize certain considerations, the district court [i]s confronted with a more circumscribed

inquiry when it assesse[s]" whether an action could "in equity and good conscience" proceed in the absence of a party that is both necessary to and immune from the lawsuit. *Id.* at 1497 (internal quotation marks and citation omitted).

Thus, "[b]ecause the district court concluded that Kansas would be prejudiced by a judgment rendered in its absence, and that, in view of the relief sought by the Tribe, there is no way the court can avoid the prejudice, the district court had grounds to dismiss the complaint for failing to join an indispensable party without consideration of any additional factors." *Id.* at 1498 (internal quotation marks and citation omitted); *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) ("[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action [under Rule 19] must be ordered where there is a potential for injury to the interests of the absent sovereign."); *Stand Up for California! v. U.S. Dep't of the Interior*, 204 F. Supp. 3d 212, 253-54 (D.D.C. 2016) (applying *Kickapoo Tribe* and dismissing suit under Rule 19).

"[T]he central inquiry is immunity generally—and it is less meaningful whether that immunity stems from a party's status as a foreign sovereign, state sovereign, or tribe"—or, as here, from the Speech or Debate Clause. *Ali v. Carnegie Inst. of Wash.*, 306 F.R.D. 20, 29 n.6 (D.D.C. 2014), *aff'd*, 684 F. App'x 985 (Fed. Cir. 2017), and *aff'd*, 684 F. App'x 985 (Fed. Cir. 2017) (noting that the Supreme Court in *Pimentel* cited a variety of governmental immunity cases in support of its holding). Immunity can be dispositive "in the weighing of [R]ule 19(b) factors" because, in such situations, the inability to join the absent party does not stem from "some procedural defect such as venue," but rather from the substantive choice "to shield [the absent party] from suit." *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (internal quotation marks and citation omitted).

In this instance, that substantive choice was made by the Framers of the Constitution, who—mindful of English parliamentary history—determined to enshrine in the Speech or Debate Clause protection for Congress against encroachment from the other branches.  *See United States v. Johnson*, 383 U.S. 169, 177-79 (1966) (discussing the origins of the Clause).

As to the second Rule 19(b) factor, any prejudice to the Select Committee cannot be "lessened or avoided."  The RNC seeks to enjoin Salesforce from complying with the Select Committee's subpoena.  There is simply no way to mitigate that impact of such an injunction.

Regarding the third factor—whether a judgment rendered in the Select Committee's absence would be adequate—the RNC's claims and requests for relief (with the exception of the Stored Communications Act claim) run directly against the Committee, not Salesforce.  This Court could therefore at most only partially proceed with the case.  It is true that a judgment prohibiting Salesforce from producing the requested records due to the Stored Communications Act might give the RNC the relief it seeks, but it would also put Salesforce in the untenable position of violating either a valid Congressional subpoena—thereby potentially subjecting itself to contempt of Congress proceedings—or this Court's order.

Finally, the fourth Rule 19(b) factor—whether a plaintiff would have an adequate remedy if the action were dismissed for nonjoinder—also points to dismissal.  The RNC did have another forum before which it could seek relief:  Congress.  To the extent the RNC had particularized concerns with certain aspects of the subpoena, it could have raised them with the Select Committee.  Moreover, even if this were not an adequate remedy, as in *Kickapoo Tribe*, "while the absence of an alternative forum is properly weighed heavily against dismissal, the [Committee's] immunity counters against proceeding; even if the [RNC] lack[s] an adequate remedy by which to vindicate its statutory rights, absence of an alternative remedy alone does

not dictate retention of jurisdiction under Rule 19." 43 F.3d at 1499.  That the RNC also raises

Constitutional claims does not change the analysis.  Even claims arising under the Bill of Rights,

although involving provisions "fundamental in our structure of government … cannot be asserted

when a sovereign, not a party to the case, will suffer substantially from its vindication."

*Manybeads v. United States*, 209 F.3d 1164, 1166 (9th Cir. 2000) (dismissing suit, including

Free Exercise claim, because the Hopi Tribe could not be joined); *see also Vann v. Kempthorne*,

534 F.3d 741 (D.C. Cir. 2008) (holding district court erred in concluding tribe was amenable to

suit and remanding for district court to determine whether "in equity and good conscience"

case—which involved Thirteenth and Fifteenth Amendment claims—could proceed without

tribe).

  The case should therefore be dismissed under Rule 19.

*     *     *

  Courts regularly dismiss cases under Rule 19 when a party is immune from suit.  Indeed,

other courts have emphasized the "strong policy" that favors dismissal when a court cannot join

a party due to sovereign immunity.  *See Davis v. United States*, 192 F.3d 951, 960 (10th Cir.

1999); *see also Pimentel*, 553 U.S. at 867.  The same is plainly true of Speech or Debate

immunity, which the D.C. Circuit has emphasized "operates as a jurisdictional bar when 'the

actions upon which [a plaintiff] sought to predicate liability were legislative acts.'"  *Fields v.

Off. of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006) (quoting *Doe v. McMillan*, 412

U.S. 306, 312 (1973)).  And like sovereign immunity, Speech or Debate immunity is also an

immunity from suit, not just from liability.  *See MINPECO, S.A. v. Conticommodity Services,

Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988) ("One of [the] purposes [of the Speech or Debate

Clause] is to shield legislators from private civil actions that 'create [ ] a distraction and force[ ]

8

Members to divert their time, energy, and attention from their legislative tasks to defend the litigation.'" (quoting *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503 (1975)).

There is no reason that Speech or Debate immunity should function differently from sovereign immunity for Rule 19 purposes.  Because Speech or Debate "immunity is asserted, and the claims of the [Congressional Defendants] are not frivolous, dismissal of the action must be ordered" because "there is a potential for injury to the interests of the [Congressional Defendants]." *Pimentel*, 553 U.S. at 867.

We acknowledge that the Supreme Court and the D.C. Circuit have suggested that, when a Congressional subpoena is issued to a third party, the interested party should have an avenue for judicial review of the subpoena.  In a footnote in *Eastland v. U.S. Servicemen's Fund*, the Supreme Court stated that the D.C. Circuit "correctly held that the District Court properly entertained this action initially" because, where a Congressional subpoena seeks information from a third person, "unless a court may inquire to determine whether a legitimate legislative purpose is present, compliance by the third person could frustrate any judicial inquiry."  421 U.S. at 501 n.14 (citations omitted).

Likewise, in *United States v. Am. Tel. & Tel. Co.,* the D.C. Circuit rejected the argument—made by the subcommittee Chairman who had intervened in the case—that judicial interference with the subpoena at issue was barred by the Speech or Debate Clause.  567 F.2d 121, 129-30 (D.C. Cir. 1977).  The court explained that where Members of Congress "are not harassed by personal suit against them, the clause cannot be invoked to immunize the congressional subpoena from judicial scrutiny."  *Id.*

But neither *Eastland* nor *AT&T* governs the Rule 19 issue in this case.  The parties in those cases did not address Rule 19, and thus the courts had no occasion to consider the

interaction between Speech or Debate Clause immunity and the indispensable-party doctrine. *See Eastland*, 421 U.S. at 517 (Marshall, J., concurring) ("This case does not present the questions of what would be the proper procedure, and who might be the proper parties defendant, in an effort to get before a court a constitutional challenge to a subpoena duces tecum issued to a third party.").[2]

The instant case squarely presents the question whether Speech or Debate dismissal of the Congressional Defendants requires dismissal of the entire case pursuant to Rule 19, and the answer is yes.

The Supreme Court has acknowledged that "[d]ismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims." *Pimentel*, 553 U.S. at 872. But here, the RNC can press its arguments directly to Congress. In any event, that result, if it occurs, is a natural and appropriate consequence of the immunity doctrine the Framers placed in the Constitution. In expressly granting Speech or Debate immunity in the text of the Constitution, the Framers concluded that the separation of powers interests underlying that provision outweighed litigants' interests in a judicial forum for definitive resolution of their claims. *Accord Eastland*, 421 U.S. at 501 ("Without exception, our cases have read the Speech or Debate Clause broadly to effectuate its purposes.").

**B. Compliance with a House subpoena would not make Salesforce a state actor**

If this Court dismisses the Congressional Defendants from this suit as required under the Speech or Debate Clause, the RNC cannot obtain the relief it seeks against Salesforce (with the exception of the Stored Communications Act claim) because Salesforce is not a state actor.

---

[2] Although the Supreme Court recently considered challenges to third-party Congressional subpoenas in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020), the Congressional parties had intervened in that case and did not raise Speech or Debate Clause immunity, and thus the Court had no cause to address the issue presented here.

Whether understood as lack of redressability (and thus standing) or failure to state a claim against Salesforce, the claims must be dismissed for that reason, save for the Stored Communications Act Claim, which should be dismissed on the merits for the reasons stated in our initial brief.

At the April 1 hearing before this Court, the RNC argued that, by complying with the Select Committee's subpoena, Salesforce would somehow become a state actor.  (Tr. 128:10-21.) According to the RNC, this Court could enjoin Salesforce from compliance because the company would be subject to Constitutional limitations on government action.  This argument is incorrect.

Compliance by Salesforce with a Congressional subpoena does not convert it into an entity capable of violating the RNC's Constitutional rights.  For the RNC to state a Fourth Amendment claim, it must show that compliance with the subpoena would transform Salesforce into an "instrument or agent" of the government.  *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971).  The RNC has not made and cannot make such a showing.  The Congressional Defendants have found no case holding that mere compliance with a governmental subpoena converts otherwise private action into state action.

District courts that have faced this question in the Fourth Amendment context have held that simply because an entity "must respond to the government's inquiries and requests for information does not transform it into an agent of the government, acting on the government's behalf and with the government's interests in mind."  *United States v. Raheja*, No. 1:19-CR-559, 2020 WL 7769725, at *3 (N.D. Ohio Dec. 30, 2020).[3]  Indeed, "[t]he production of files in a corporation's possession and control in response to a valid government subpoena … is not corporate conduct governed … by the Fourth Amendment … Nor does corporate compliance

---

[3] The Congressional Defendants have not located any court decisions addressing this doctrine in the First Amendment context.

with a government subpoena transform the complying entity into a government agent." *United States v. Shkreli*, No. 15-CR-637, 2017 WL 3608252, at *6 (E.D.N.Y. May 16, 2017).

Courts have reached this conclusion for good reason.  The RNC's position would mean that any subpoena recipient in any governmental investigation is automatically converted into a state actor.  At least one district court has expressly rejected that argument, finding that "it would pervert the … investigatory process to hold that any person compelled to appear before it as a witness by virtue of a subpoena thereby becomes an officer or agent of the United States." *Brown & Williamson Tobacco Corp. v. Wigand*, 913 F. Supp. 530, 533 (W.D. Ky. 1996).

To place entities such as Salesforce in the position of either becoming a state actor and risking violating Constitutional rights or facing contempt of Congress (or contempt of court) proceedings, would be unfair not only to the subpoena recipients, who would be forced at great risk to predict a future judicial ruling, but also to government investigators seeking reasonable and timely subpoena compliance.

Furthermore, this is not a case where the government has coopted a private party to conduct an intrusive data collection on the government's behalf.  As conceded in the RNC's Complaint, the data sought by the Select Committee already existed.  The subpoena thus did not require any new analysis from Salesforce.  Indeed, Salesforce's original collection of this data was a key part of the services provided to the RNC.  *See* ECF No. 1, ¶ 65.  When independent policies or motivations have driven the collection of information, the government's subsequent request for that information cannot retroactively apply the Constitution's protections to the original collection.  *See, e.g.*, *United States v. Bebris*, 4 F.4th 551, 562 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 489 (2021); *United States v. Ringland*, 966 F.3d 731, 736 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2797 (2021); *see also United States v. Jacobsen*, 466 U.S. 109, 120 (1984)

(when a government search does not exceed the scope of a previous private search, no protected search has occurred).

Accordingly, there is no basis to conclude that Salesforce's compliance with the Select Committee's subpoena constitutes state action.  Thus, Salesforce cannot violate the RNC's rights under either the First or Fourth Amendments because those amendments are limitations on governmental, not private, power.  For the same reason, the RNC's claims that the Select Committee and the subpoena lack a valid legislative purpose, and that the Select Committee is improperly composed, similarly must be dismissed.  Those claims, like the First and Fourth Amendment claims, are generally meaningless without the presence of a state actor.[4]  The RNC's Stored Communications Act claim, by contrast, does not require a state actor.  But as argued in the Congressional Defendants' initial brief (pp. 38-39), that claim is wrong.

**C. To the extent this Court considers the merits of the RNC's claims (which it should), it should do so with appropriate deference to Congress**

When considering the merits in cases involving the legitimate actions of Congress, the Supreme Court has cautioned that courts must assume "that the action of the legislative body was with a legitimate object, if it is capable of being so construed, and [the court] ha[s] no right to assume that the contrary was intended."  *McGrain v. Daugherty,* 273 U.S. 135, 178 (1927) (citation omitted).  As is the case here, when Congressional committees are investigating in aid of legislating, "the presumption should be indulged that this was the real object."  *Id.* Furthermore, as the D.C. Circuit has instructed, "courts must presume that the committees of

---

[4] The Supreme Court entertained a valid legislative purpose claim in *Mazars* because a subpoena for the President's information raised separation of powers concerns.  "Congressional demands for the President's information present an interbranch conflict no matter where the information is held" due to the "unique position of the President."  *Trump v. Mazars USA LLP*, 140 S. Ct. 2019, 2035 (2020) (internal quotation marks omitted). No such separation of powers concern is at issue here.

Congress will exercise their powers responsibly and with due regard for the rights of affected parties." *Exxon Corp. v. FTC*, 589 F.2d 582, 589 (D.C. Cir. 1978).

These fundamental principles governing how the courts are to approach attacks on the operations of Congress are related to the Speech or Debate Clause in that they all function to preserve the separation of powers central to the Constitution.  Indeed, the Speech or Debate Clause exists not "simply for the personal or private benefit of Members of Congress, but to protect the integrity of the legislative process," *United States v. Brewster*, 408 U.S. 501, 507 (1972)—which includes subpoenas, an "indispensable ingredient of lawmaking," *Eastland*, 421 U.S. at 505.  By doing so, the Clause "preserve[s] the constitutional structure of separate, coequal, and independent branches of government."  *United States v. Helstoski*, 442 U.S. 477, 491 (1979).  The Clause is one of several Constitutional provisions that, along with multiple judicial doctrines, accomplish this goal.

Therefore, if this Court considers the merits of the RNC's claims (as it should do in ruling in the alternative), it should do so with appropriate deference to Congress, consistent with the standards set forth in the Congressional Defendants' initial brief (pp. 18-39), and with the deferential standards embedded in the Constitution, as set forth below, to avoid improper judicial interference with the Legislative Branch.

As the D.C. Circuit held in *Hearst v. Black*, in refusing to order a Congressional committee to return or not use documents that had allegedly been obtained improperly, "[n]othing is better settled than that each of the three great departments of government shall be independent and not subject to be controlled directly or indirectly by either of the others. 'This separation and the consequent exclusive character of the powers conferred upon each of the three

departments is basic and vital—not merely a matter of governmental mechanism.'"  87 F.2d 68,

72 (D.C. Cir. 1936) (quoting *Springer v. Philippine Islands*, 277 U.S. 189, 201 (1928)).

 The concept of judicial deference to the independent functioning of Congress has been

articulated though several Constitutional provisions and judicial doctrines.  For example, the

D.C. Circuit has withheld relief "where prudential and separation-of-powers concerns counsel us

not to exercise our judicial power."  *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1168 (D.C. Cir.

1982).  Accordingly, the D.C. Circuit denied a challenge to the partisan apportionment of seats

on House committees brought by Members of the House minority.  "It is not that we think a

remedy could not be fashioned," wrote the court, but rather that it would be "a startlingly

unattractive idea, given our respect for a coequal branch of government, for us to tell the

Speaker" whom to appoint to committees.  *Id.* at 1176 (internal quotation marks omitted).

 In addition, as noted in the Congressional Defendants' initial brief (pp. 33-34), the

Rulemaking Clause is essential to preserving Congressional independence.  *See* U.S. Const., Art.

I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings.").  Courts have held that

this Clause allows courts to interpret internal rules of a House of Congress only where to do so

"requires no resolution of ambiguities." *United States v. Durenberger*, 48 F.3d 1239, 1244 (D.C.

Cir. 1995).  By contrast, "[w]here … a court cannot be confident that its interpretation is correct,

there is too great a chance that it will interpret the Rule differently than would the Congress

itself; in that circumstance, the court would effectively be making the Rules—a power that the

Rulemaking Clause reserves to each House alone."  *United States v. Rostenkowski*, 59 F.3d 1291,

1306-07 (D.C. Cir. 1995).

 Likewise, the Supreme Court has noted that each chamber's discretion in disciplining its

Members pursuant to the Discipline Clause, U.S. Const., Art. I, § 5, cl. 2 ("Each House may …

punish its Members for disorderly Behaviour ….”), is “almost unbridled” and “there is no established right to review” of such discipline.  *Brewster*, 408 U.S. at 519.  The Discipline Clause’s “right to expel extends to all cases where the offense is such as in the judgment of the [House or S]enate is inconsistent with the trust and duty of a member.”  *In re Chapman*, 166 U.S. 661, 669 (1897); *see also In re Grand Jury Subpoenas*, 571 F.3d 1200, 1204 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (noting that the Discipline Clause “grants expansive authority for each House to discipline and sanction its Members for improper behavior”).

Similarly, the Supreme Court has relied on the Journal Clause, U.S. Const., Art. I, § 5, cl. 3 (“Each House shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such Parts as may in their Judgment require Secrecy; and the Yeas and Nays of the Members of either House on any question shall, at the Desire of one fifth of those Present, be entered on the Journal.”), to hold that the vote tallies as listed in the House’s Journal “must be assumed to speak the truth” and are “beyond challenge” by resort to external evidence.  *United States v. Ballin*, 144 U.S. 1, 4, 9 (1892).

Finally, the Supreme Court has adopted the “enrolled bill doctrine” as a ground to decline looking behind the signatures of the Speaker of the House and President of the Senate to determine whether an “enrolled bill” has been properly and constitutionally enacted.  *See Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892) (finding those signatures to be “complete and unimpeachable” evidence of proper enactment).  According to *Field*, no external evidence may be brought to bear on the question, and there is no role for courts to play.  *Id.* at 672-73.

Accordingly, should this Court consider the merits of the claims against the Select Committee here (as the Congressional Defendants urge), it should do so with the strong

presumption not only that the actions taken by the Select Committee are appropriate, but also that the separation of powers requires a limited and deferential review of those actions.

## **<u>CONCLUSION</u>**

For the reasons stated above and in the Congressional Defendants' initial brief, the Court should dismiss the Congressional Defendants pursuant to their immunity under the Speech or Debate Clause.  In addition, the Court should dismiss the remainder of the case because the Congressional Defendants are indispensable parties under Rule 19.  Finally, the Court should, in the alternative, rule that the RNC's claims against Salesforce fail on the merits.

Respectfully submitted,

/s/  *Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*
MICHELLE S. KALLEN
  *Special Litigation Counsel*
STACIE M. FAHSEL
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

-and-

SHER TREMONTE LLP
Justin M. Sher
Michael Tremonte[*]
Noam Biale
Maya Brodziak[*]

17

Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

-and-

ARNOLD & PORTER
John A. Freedman
Paul Fishman
Amy Jeffress
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com

[*] Appearing pursuant to 2 U.S.C. § 5571(a).

Dated:  April 8, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2022, I caused the foregoing document to be filed via the

CM/ECF system for the U.S. District Court for the District of Columbia, which I understand

caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter