**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

REPUBLICAN NATIONAL COMMITTEE,

*Plaintiff*,

v.

NANCY PELOSI, et al.,

*Defendants*.

**Case No. 1:22-cv-00659-TJK**

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Christopher O. Murray
STATECRAFT PLLC
1263 Washington Street
Denver, CO 80203
Tel: 602.362.0034
Email: chris@statecraftlaw.com

*Attorney for Plaintiff Republican National Committee*

## TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ........ iii

**INTRODUCTION** ........ 1

**RESPONSES TO THE COURT'S QUESTIONS** ........ 2

I. **[Question 1]** The RNC's Claims Against Salesforce May Proceed ........ 2

II. **[Question 2]** Rule 19 Does Not Operate to Immunize Salesforce. ........ 4

A. Legislative immunity does not present the concerns animating decisions on sovereign immunity. ........ 5

B. The Congressional Defendants are not required parties. ........ 6

C. The Congressional Defendants are not indispensable parties. ........ 7

*1. The Congressional Defendants will not be prejudiced by judgment in their absence.* ........ 8

*2. Any prejudice to the Congressional Defendants can be minimized.* ........ 10

*3. Judgment rendered in the Congressional Defendants' absence would be adequate.* ........ 11

*4. The RNC will have no adequate remedy if the action is dismissed.* ........ 12

D. The public-rights exception to Rule 19 applies to this case because it presents a matter of transcending public importance. ........ 12

III. **[Question 3]** The RNC Has Standing to Assert Its Claims Against Salesforce. ........ 14

A. The RNC has standing to assert its First Amendment claim ........ 15

B. The RNC has standing to assert its Fourth Amendment claim ........ 16

C. The Court may only apply legilative immunity to the claims against the Congressional Defendants if it has ruled against the RNC on the merits of the RNC's valid legislative purpose and H. Res. 503 claims, rendering the issue of the RNC's standing for its H. Res. 503 claims against Salesforce moot. ........ 18

D. The RNC has standing to assert its Stored Communications Act claim ........ 19

IV. **[Question 4]** The Court May Enjoin Salesforce's Compelled Disclosure of the RNC's Constitutionally and Statutorily Protected Information. ........ 20

**CONCLUSION** ........ 26

**CERTIFICATE OF SERVICE** ........ 27

## TABLE OF AUTHORITIES

**Page(s)**

***Cases***

*Ali v. Carnegie Inst. of Wash.*,
306 F.R.D. 20 (D.D.C. 2014)....5, 8

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. FEC*,
333 F.3d 168 (D.C. Cir. 2003)....15

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999)....24

*Bean LLC v. John Doe Bank*,
291 F. Supp. 3d 34 (D.D.C. 2018)....3, 21, 22

*Bergman v. Senate Special Comm. on Aging*,
389 F. Supp. 1127 (S.D.N.Y. 1975)....3, 4, 16, 17, 21, 23, 24

*Blum v. Yaretsky*,
457 U.S. 991 (1982)....24

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001)....24

*Buckley v. Valeo*,
424 U.S. 1 (1976)....23

*Camreta v. Greene*,
563 U.S. 692 (2011)....10

*Carpenter v. United States*,
138 S. Ct. 2206 (2018)....17, 18

*Cousineau v. Microsoft Corp.*,
992 F. Supp. 2d 1116 (W.D. Wash. 2012)....20

*de Csepel v. Republic of Hungary*,
27 F.4th 736 (D.C. Cir. 2022)....9

*de Csepel v. Republic of Hungary*,
859 F.3d 1094 (D.C. Cir. 2017)....9

*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975)....4, 16, 23

*In re First Nat'l Bank, Englewood, Colo.*,
701 F.2d 115 (10th Cir. 1983)....16, 22

*Fisher v. United States*,
425 U.S. 391 (1976)....22, 23

**TABLE OF AUTHORITIES (con't)**

*Fla. Audubon Soc'y v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) ....................14

*Gaos v. Google, Inc.*,
No. 5:10-CV-4809-EJD, 2012 WL 1094646 (N.D. Cal. Mar. 29, 2012) ....................20

*Gardner v. V.I. Water & Power Auth.*,
145 F.3d 635 (3d Cir. 1998) ....................10

*In re Grand Jury Proc.*,
842 F.2d 1229 (11th Cir. 1988) ....................22

*Gravel v. United States*,
408 U.S. 606 (1972) ....................4

*Hearst v. Black*,
87 F.2d 68 (D.C. Cir. 1936) ....................23

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977) ....................11

*Jeffries v. Ga. Residential Fin. Auth.*,
678 F.2d 919 (11th Cir. 1982) ....................13

*Jibril v. Mayorkas*,
20 F.4th 804 (D.C. Cir. 2021) ....................14, 15, 16

*Kickapoo Tribe of Indians of Kickapoo Rsrv. in Kan. v. Babbitt*,
43 F.3d 1491 (D.C. Cir. 1995) ....................5, 8, 13

*Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*,
667 F.2d 267 (2d Cir. 1981) ....................16, 22

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................14, 15, 16

*Makah Indian Tribe v. Verity*,
910 F.2d 555 (9th Cir. 1990) ....................14

*Moore v. Ashland Oil, Inc.*,
901 F.2d 1445 (7th Cir. 1990) ....................4

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
641 F.3d 470 (10th Cir. 2011) ....................23

*Mowrer v. U.S. Dept. of Transp.*,
14 F.4th 723 (D.C. Cir. 2021) ....................5

**TABLE OF AUTHORITIES (con't)**


*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958)....................15, 22

*NB ex rel. Peacock v. Dist. of Columbia*,
794 F.3d 31 (D.C. Cir. 2015)....................24, 25

*Nat'l Licorice Co. v. NLRB*,
309 U.S. 350 (1940)....................13

*Nat'l Wildlife Fed'n v. Burford*,
676 F. Supp. 271 (D.D.C. 1985)....................13, 14

*Perry v. Schwarzenegger*,
591 F.3d 1126 (9th Cir. 2009)....................23

*Picuris Pueblo v. Oglebay Norton Co.*,
228 F.R.D. 665 (D.N.M. 2005)....................10

*Pollard v. Roberts*,
393 U.S. 14 (1968)....................16, 21

*Pollard v. Roberts*,
283 F. Supp. 248 (E.D. Ark. 1968)....................16, 21, 22

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
390 U.S. 102 (1968)....................11

*Reynolds v. City of Mount Vernon*,
No. 14-CV-1481 (JMF), 2015 WL 1514894 (S.D.N.Y. Apr. 1, 2015)....................5

*Schwimmer v. United States*,
232 F.2d 855 (8th Cir. 1956)....................18

*Sen. Permanent Subcomm. on Investigations v. Ferrer*,
856 F.3d 1080 (D.C. Cir. 2017)....................12

*Skinner v. Ry. Lab. Execs.' Ass'n*,
489 U.S. 602 (1989)....................25

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................13, 21

*State Emps. Bargaining Agent Coal. v. Rowland*,
494 F.3d 71 (2d Cir. 2007)....................5

*Staten Island Rapid Transit Ry. Co. v. S.T.G. Constr. Co.*,
421 F.2d 53 (2d Cir. 1970)....................10

*Swomley v. Watt*,
526 F. Supp. 1271 (D.D.C. 1981)....................13

**TABLE OF AUTHORITIES (con't)**

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .....15

*Trump v. Comm. on Ways & Means*,
415 F. Supp. 3d 38 (D.D.C. 2019) .....15

*Trump v. Mazars USA, LLP*,
140 S. Ct. 2019 (2020) .....3, 15

*Trump v. Thompson*,
20 F.4th 10 (D.C. Cir. 2021) .....19

*United States v. AT&T*,
567 F.2d 121 (D.C. Cir. 1977) .....3, 4, 12, 14, 21

*United States v. Miller*,
425 U.S. 435 (1976) .....23

*United States v. Moalin*,
973 F.3d 977 (9th Cir. 2020) .....17

*United States v. Phibbs*,
999 F.2d 1053 (6th Cir. 1993) .....17

*United States v. Plunk*,
153 F.3d 1011 (9th Cir. 1998) .....17

*United States v. Sherwood*,
312 U.S. 584 (1941) .....5

*United States v. Sineneng-Smith*,
140 S. Ct. 1575 (2020) .....4, 5

*United States v. Taketa*,
923 F.2d 665 (9th Cir. 1991) .....17

*Vill. of Bensenville v. FAA*,
457 F.3d 52 (D.C. Cir. 2006) .....24, 25

*Warth v. Seldin*,
422 U.S. 490 (1975) .....20

***Constitutional Provisions***

U.S. Cont. art. I, § 6, cl. 1 ..... passim

U.S. Const. amend. I ..... passim

U.S. Const. amend. IV ..... passim

U.S. Const. amend. IX .....3

## TABLE OF AUTHORITIES (con't)

***Statutes***

18 U.S.C. § 2702(a)(1), (3) ....................20

18 U.S.C. § 2707(a) ....................20

***Federal Rules***

Fed. R. Civ. P. 19 ....................4, 5, 10, 12

Fed. R. Civ. P. 19(a)(1) ....................6, 7

Fed. R. Civ. P. 19(a)(1)(B) ....................6

Fed. R. Civ. P. 19(a)(1)(B)(i) ....................6, 7, 8

Fed. R. Civ. P. 19(b) ....................5, 8, 10, 11

Fed. R. Civ. P. 19(b)(1) ....................8

Fed. R. Civ. P. 19(b)(2) ....................10, 11

Fed. R. Civ. P. 19(b)(3) ....................11

Fed. R. Civ. P. 19(b)(4) ....................12

Fed. R. Civ. P. 65 ....................7

***Other Authorities***

Complaint, *Trump v. Mazars USA, LLP*,
No. 19-cv-01136-APM (D.D.C. Apr. 22, 2019) ....................2

Cong. Defs.' Suppl. Letter Br., *Trump v. Mazars USA, LLP*,
Nos. 19-715, 19-760 (U.S. May 8, 2020) ....................14

H.R. Res. 503, 117th Cong. (2021) ....................18, 19

Joint Stip., *Trump v. Mazars USA, LLP*,
No. 19-cv-01136-APM (D.D.C. Apr. 29, 2019) ....................2

Trump Letter Br., *Trump v. Mazars USA, LLP*,
Nos. 19-715, 19-760 (U.S. May 8, 2020) ....................14

## INTRODUCTION

Make no mistake, a holding that the RNC's claims against Salesforce must be dismissed would set a staggering precedent: Congress would be free to coerce political parties' vendors to produce those political parties' constitutionally protected materials without the ability for the political party, which is the true target of such an unconstitutional compelled disclosure, to challenge it in court. And once the materials are in Congress's hands, the Speech or Debate Clause would immunize Congress and congressional aides from challenge for any use they put the unconstitutionally seized materials to. This Court must not hold that the Speech or Debate Clause so permits Congress to coercively outsource its constitutional violations to vendors like Salesforce and then argue that Salesforce's status as an ostensibly private party means these constitutional violations are without remedy.

After an extensive hearing on the RNC's Motion for Preliminary Injunction, the RNC and the Congressional Defendants agreed on three things. *First*, it makes sense for the Court to consolidate its consideration of the RNC's Motion with an advanced determination on the full merits of the case. *Second*, if the Court determines that the Speech or Debate Clause immunizes the Congressional Defendants from the RNC's claims, the proper course is for the Court to dismiss the claims against the Congressional Defendants. *Third*, immunity under the Speech or Debate Clause is not available to Salesforce. Even though legislative immunity does not apply to Salesforce, the Court now poses a hypothetical: if the Court were to find such immunity requires the dismissal of the RNC's claims against the Congressional Defendants, whether the claims against Salesforce must nevertheless be dismissed because they cannot be litigated in the hypothetical absence of the Congressional Defendants. The answer is no.

## RESPONSES TO THE COURT'S QUESTIONS[1]

### I. [Question 1] The RNC's Claims Against Salesforce May Proceed.

The Court's first question asks whether the RNC's claims against Salesforce may proceed if the Court finds the Congressional Defendants are immune under the Speech or Debate Clause. Without question, the answer is yes. The U.S. Supreme Court's decision in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020), compels this answer. There, President Trump sued the chairman of a congressional committee, the committee's chief investigative counsel, and his personal accounting firm (Mazars) to enjoin the enforcement of a congressional subpoena issued to Mazars. *See* Complaint at 4, *Trump v. Mazars USA, LLP*, No. 19-cv-01136-APM (D.D.C. Apr. 22, 2019) (Dkt. 1). Critically, even though the district court dismissed the committee's chairman and chief investigative counsel (per party stipulation), President Trump's claim against Mazars continued. *See* Joint Stip. at 1, *Trump v. Mazars USA, LLP*, No. 19-cv-01136-APM (D.D.C. Apr. 29, 2019) (Dkt. 15). True, at the same time, the committee intervened in the case. *Id.* But no court—neither the district court, the D.C. Circuit, nor the Supreme Court—found that President Trump's direct claim against Mazars must yield to the Speech or Debate Clause. To state the obvious: if the Speech or Debate Clause operated to foreclose President Trump's lawsuit, including his claim against Mazars, Congress would have argued so. Instead, the committee intervened in the case to defend the subpoena. Even today, the committee has not argued that legislative immunity requires dismissal the case, which is ongoing. *See generally Trump v. Mazars USA LLP*, No. 19-cv-01136-APM, 2021 WL 3602683 (D.D.C. Aug. 11, 2021), *appeal docked*, No. 21-5176 (D.C. Cir. Aug. 16, 2021).

[1] The RNC's responses to the Court's four supplemental questions follow the order presented in the April 5, 2022 Order. In terms of analytical clarity, however, the answers to those four questions should be evaluated in the following order: (1) RNC's claims may proceed against Salesforce even if the Congressional Defendants are dismissed under the Speech or Debate Clause; (2) the RNC may allege all of its claims against Salesforce even though Salesforce is a private party and did not issue the Subpoena; (3) the RNC has standing to bring all of its claims against Salesforce; and (4) Rule 19 does not require dismissal of the entire case.

To their credit, the Congressional Defendants agree that legislative immunity does not bar the RNC's claims against Salesforce, and that legislative immunity does not prevent the Court from enjoining Salesforce if the RNC prevails on its claims against Salesforce.

> **The Court:** So if I were to dismiss the case against … the committee … I would still have claims pending against Salesforce … . [I]f I found for [the RNC] on the other claims, the claims against Salesforce, then the [C]ommittee would not get the documents that … it's requesting; isn't that fair?
>
> **[Counsel]:** Meaning if you – if you enjoined –
>
> **The Court:** If I enjoined Salesforce; correct.
>
> **[Counsel]:** Yes.
>
> **The Court:** Okay. But your position is … the Speech or Debate [C]lause does not foreclose that path for me?
>
> **[Counsel]:** Correct.
>
> **The Court:** I'm not trying to prejudge the issues.
>
> **[Counsel]:** Correct.
>
> **The Court:** I'm just trying to procedurally understand what you're … telling me as far as what you think the Speech or Debate immunity does in this case and how it affects it.
>
> **[Counsel]:** That's correct … . [T]he injunction could still run against Salesforce.
>
> **The Court:** Against Salesforce?
>
> **[Counsel]:** Yes.

(Apr. 1, 2022 Hr'g Tr. ("Apr. 1 Tr.") at 85:5–86:7 (attached here as **Exhibit 1**); *see also id.* at 95:22–96:4, 96:24–97:5, 109:20–22, 112:1–5 (confirming multiple times the Court must resolve the merits of the RNC's claims against Salesforce).)

This is the right answer. *See, e.g.*, *United States v. AT&T*, 567 F.2d 121, 129 (D.C. Cir. 1977) ("*AT&T II*"); *Bergman v. Senate Special Comm. on Aging*, 389 F. Supp. 1127, 1131 (S.D.N.Y. 1975) (in part enjoining bank from responding to congressional subpoena after plaintiffs claimed the subpoena violated their First, Fourth, and Ninth Amendment rights); *Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34, 45–48 (D.D.C. 2018) (reviewing First Amendment challenge to congressional subpoena issued to plaintiff's bank as part of a congressional investigation into Russian interference with the 2016 Presidential election). Legislative immunity

is personal to Members of Congress. It shields Members and their legislative aides, in some circumstances, "against prosecutions that … threaten the legislative process." *Gravel v. United States*, 408 U.S. 606, 616 (1972). It is not a defense for private parties like Salesforce.

Thus, even if the Congressional Defendants are immune under the Speech or Debate Clause (they are not), the RNC's claims against Salesforce to prevent production of its information can (and indeed must) proceed. If the law were otherwise, "meaningful review of constitutional objections" would be avoided "simply because the subpoena is served on a third party." *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 516 (1975) (Marshall, J., concurring); *AT&T II*, 567 F.2d at 129 (lack of possession of subpoenaed material does not bar constitutional challenge to subpoena); *Bergman*, 389 F. Supp. at 1130 (noting when subpoenaed material is with a third party "[n]o other alternative means of challenging the subpoenas" exists).

## II. [Question 2] Rule 19 Does Not Operate to Immunize Salesforce.

The Court's second question inquires as to whether, if the Speech or Debate Clause requires dismissal of the RNC's claims against the Congressional Defendants, it may also "operate to bar the RNC's claims against Salesforce in some way." (Apr. 5, 2022 Order at 2.) The Court goes on to ask whether Rule 19 may somehow factor into this analysis by operating to functionally extend a finding that legislative immunity protects the Congressional Defendants to require dismissal of the RNC's claims against Salesforce. It does not.

As noted by the Court, the parties have already unequivocally agreed that legislative immunity cannot apply to Salesforce. (*Id.*) No party has raised Rule 19, and for good reason: every party interested in this case has been named in the lawsuit and has been given a full opportunity to participate in the litigation. Given this, applying Rule 19 in this case would be contrary to the rule's purpose to ensure there are no absent parties that should, or must, be joined before the case can proceed. *See Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990) ("The purpose of [Rule 19] is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources."). It would also be a departure from the general principle of party presentation. *See United States v. Sineneng-*

*Smith*, 140 S. Ct. 1575, 1578–79 (2020) (holding lower court abused discretion in shaping case in a manner different from the case argued by the parties). Nevertheless, Rule 19 does not operate to require dismissal of Salesforce even if the Court were to determine the Speech or Debate Clause requires the dismissal of the Congressional Defendants.

**A. Legislative immunity does not present the concerns animating decisions on sovereign immunity.**

As an initial matter, the Court's question asks whether Rule 19 may "play a role" in analyzing whether a dismissal of the RNC's claims against the Congressional Defendants would require a dismissal of its claims against Salesforce "similar to the way [Rule 19] generally favors dismissing an entire lawsuit when a 'required party' has sovereign immunity and so 'can-not be joined' in the action?" (Apr. 5, 2022 Order at 2.) The Court then cites to two cases dealing with an absent sovereign that was determined to be an indispensable party under Rule 19(b): *Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995) and *Ali v. Carnegie Institution of Washington*, 306 F.R.D. 20 (D.D.C. 2014).

But Congress is not a sovereign—it is a legislative body. The Congressional Defendants do not (and cannot) claim sovereign immunity, only legislative immunity. This is an important distinction, because sovereign immunity generally robs a court of subject-matter jurisdiction over a claim involving the sovereign, *see, e.g.*, *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723, 733–35 (D.C. Cir. 2021) (Katsas, J., concurring), legislative immunity is a personal defense that does not affect the court's jurisdiction. *See, e.g.*, *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 (2d Cir. 2007) (finding that a district court improperly treated a motion to dismiss on legislative immunity grounds as a motion under Rule 12(b)(1) because "[i]t is well-settled that legislative immunity is not a jurisdictional bar, but is rather a personal defense that may be asserted to challenge the sufficiency of a complaint under Rule 12(b)(6)"); *Reynolds v. City of Mount Vernon*, No. 14-CV-1481 (JMF), 2015 WL 1514894, at *2 n.2 (S.D.N.Y. Apr. 1, 2015) (same). The RNC is unaware of any case applying the sort of skepticism articulated in *Kickapoo Tribe* and *Ali* regarding claims

proceeding in the absence of indispensable, immune sovereign parties to claims proceeding in the absence of parties found to be shielded by legislative immunity. As will be demonstrated below, any such skepticism would be particularly misplaced here.

### B. The Congressional Defendants are not required parties.

A party is "required" under Rule 19(a)(1) if one of two conditions is met:

> (A) in that party's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that party claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest;
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

At best, if the Congressional Defendants are converted to "absent" parties because the RNC's claims against them are dismissed under the Speech or Debate Clause, their interest in this case ***may*** fit Rule 19(a)(1)(B)'s general description. The Congressional Defendants claim an interest "relating to the subject of this action"—the enforceability of their Subpoena for the RNC's internal deliberative and strategic materials. (*See* Apr. 1 Tr. at 95:22–96:4.) The Congressional Defendants, however, are not "so situated that disposing of the action in [their] absence" may result in either particular risk identified in subclauses (B)(i) or (B)(ii).

Initially, disposing of the action in the Congressional Defendants' court-ordered absence—post-dismissal—will not, in any "practical matter," impede the Congressional Defendants' ability to protect their interest in the enforceability of the Subpoena. The Congressional Defendants have—of their own volition—briefed and argued the merits of all of the RNC's claims. At the April 1 hearing, the Congressional Defendants confirmed they engaged in this briefing precisely to ensure their legal arguments would be considered in the event the Court dismissed them from the lawsuit. (Apr. 1 Tr. at 96:2–4 ("Yes. That's why we briefed the merits, which apply equally to claims against us and to claims against Salesforce.").) The Court

may (and, of course, will) consider the Congressional Defendants' briefing and arguments in determining the merits of the RNC's claims against Salesforce, even if the Congressional Defendants are dismissed. Because there will be no further proceedings in this case—the Court has stated it will consolidate and advance its determination of the merits on this matter as permitted under Rule 65—as a practical matter, the Congressional Defendants have fully participated in the case and nothing more could have been done to protect their interests.

Neither will disposing of this action in the Congressional Defendants' absence leave the remaining party—Salesforce—subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. The only relief the RNC has sought against Salesforce is injunctive relief to foreclose its disclosure of the RNC's data and material in response to the Subpoena. The RNC has not asserted any claim for damages against Salesforce and has not alleged that Salesforce violated its contractual agreement with the RNC. An injunction here would impose almost no cost on Salesforce (indeed, an injunction might save Salesforce some costs related to production[2]) and would impose no inconsistent obligation on it. In fact, a ruling enjoining Salesforce from producing the RNC's records is Salesforce's preferred outcome: "I also want to be clear, [Salesforce] … do[es] not wish to comply with the subpoena. It is a subpoena." (Apr. 1 Tr. at 117:18–19.) Because neither of the risks articulated in subclauses (B)(i) and (B)(ii) of Rule 19(a)(1) are present in this case, the Congressional Defendants are not required parties to this action, and it may proceed in the Congressional Defendants' absence even if the Court finds they are entitled to dismissal under the Speech or Debate Clause.

**C. The Congressional Defendants are not indispensable parties.**

Even if the Court determines the Congressional Defendants are required parties, dismissal of the entire action is inappropriate unless the Court determines the RNC's case against Salesforce may not "in equity and good conscience" proceed in the Congressional Defendants'

[2] Admittedly, there may be some inconvenience to Salesforce in the form of the RNC's pre-production review of Salesforce's materials responsive to items three, four, and five.

post-dismissal absence. Fed. R. Civ. P. 19(b). This question is answered through consideration of Rule 19(b)'s four nonexclusive factors. The factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;
>
> (B) shaping the relief; or
>
> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* Application of these factors confirms that the Congressional Defendants, even if required parties, are not indispensable, so the RNC's suit may in equity and good conscience proceed in the Congressional Defendants' absence.

*1. The Congressional Defendants will not be prejudiced by judgment in their absence.*

"The inquiry as to prejudice under Rule 19(b)[(1)] is the same as the inquiry under Rule 19[(a)(1)(B)(i)] regarding whether continuing the action will impair the absent party's ability to protect its interest." *Kickapoo*, 43 F.3d at 1497 n.9. Hence, the Congressional Defendants are not prejudiced under Rule 19(b)(1) for the same reasons as argued above: they have already defended their interest in the enforceability of the Subpoena on the merits and fully participated in all aspects of this litigation. Because the Court will be issuing a final judgment on the merits of the claims without further briefing or proceedings, the Congressional Defendants' dismissal will in no way prejudice them.

In this way, the Congressional Defendants are nothing like the absent sovereigns held to be indispensable in *Kickapoo* and *Ali*—the two cases the Court cited in its Order asking for supplemental briefing. In those cases, the absent sovereign states never participated in the litigation and had no opportunity to brief or argue the merits of claims that could affect their interests. *See Kickapoo*, 43 F.3d at 1497–98; *Ali*, 306 F.R.D. at 26. Rather, the Congressional

Defendants are in a similar position to the Republic of Hungary in *de Csepel v. Republic of Hungary*, in which the D.C. Circuit recently affirmed the denial of dismissal under Rule 19. 27 F.4th 736 (D.C. Cir. 2022) ("*de Csepel III*").

That case concerned a lawsuit by the heirs of Hungarian Jewish art collectors to recover a collection that the World War II-era Hungarian government and its Nazi collaborators seized. *Id.* at 739. The D.C. Circuit had earlier found the Republic of Hungary was entitled to sovereign immunity and dismissal from the suit. *de Csepel v. Republic of Hungary*, 859 F.3d 1094, 1107 (D.C. Cir. 2017) ("*de Csepel II*"). On remand, the district court permitted plaintiffs to amend their complaint to add as a defendant—essentially in place of the dismissed Hungarian state—a Hungarian state-owned company which held title to the artwork at issue for the Hungarian government. *de Csepel III*, 27 F.4th at 742–43. After finding that the state-owned company was not entitled to sovereign immunity, the D.C. Circuit held that the suit against that company (and other defendants) could proceed in the absence of the immune sovereign. The court reached this conclusion in part because the state-owned company's participation in the case would prevent prejudice to Hungary's interests. *Id.* at 748–52. The court acknowledged that Hungary's sovereign interests must be accorded proper weight, but "in this case, those interests are not placed at risk ***due to Hungary's absence***." *Id.* at 752 (emphasis added).

So too here: at this stage in this case, all briefing and argument on the merits of the RNC's claims has been substantively completed and participated in by the Congressional Defendants; their potential late absence would not place their interests at risk. In fact, presumably the Congressional Defendants' "absence" would be recognized in the same order deciding the merits of the case. And that would be ***after*** they fully briefed and argued the case to the Court. In no world is that "prejudice." Simply put, there is no more advocacy to be done to protect the Congressional Defendants' interests here. In the event the Congressional Defendants are dismissed, they will have fully and completely argued the merits of every claim in the litigation. Indeed, they will have taken advantage of this forum to post-hoc narrow their Subpoena in response to the RNC's Complaint. (Cong. Defs.' Opp'n at 15–17; Apr. 1 Tr. at

80:6–24.) Even more, the Congressional Defendants will still have the right to appeal any ruling by this Court that they believe impairs their interest in the enforcement of the Subpoena. *See Camreta v. Greene*, 563 U.S. 692, 702–03 (2011).

And, while the RNC is aware of no case dealing with the personal defense of legislative immunity in this context, *see* subsection II.A, *supra*, cases dealing with federal sovereign immunity support proceeding against non-immune defendants even in the absence of the immune federal sovereign. *See, e.g.*, *Gardner v. V.I. Water & Power Auth.*, 145 F.3d 635, 640–43 (3d Cir. 1998) (even where United States could be said to be a required party it was not an indispensable party in a security company's action against a Virgin Islands public entity seeking to recover monies owed for protection of equipment after hurricane because, in part, security company would have no remedy if action were dismissed); *Staten Island Rapid Transit Ry. Co. v. S.T.G. Constr. Co.*, 421 F.2d 53, 59 n.6 (2d Cir. 1970) (even where federal government could have intervened to protect its interest in monies provided to railroad company suing its contactor for faulty construction, because complete relief was available without the government's participation, case could proceed under Rule 19); *Picuris Pueblo v. Oglebay Norton Co.*, 228 F.R.D. 665, 666–68 (D.N.M. 2005) (tribe's ejectment and trespass action against mine operators could proceed even though United States was arguably a necessary party because it reserved certain easements in the original mineral rights patent at issue). There is no reason to believe the RNC's claims against Salesforce cannot proceed even if the Court finds that the Congressional Defendants succeed in asserting their personal defense of legislative immunity.

Finally, Salesforce (the only remaining party in the event the Congressional Defendants are dismissed) will not be prejudiced in the Congressional Defendants' absence. As noted, the RNC is not seeking relief that could be said to harm Salesforce's interests in any meaningful way. For these reasons, the first Rule 19(b) factor heavily favors the RNC.

*2. Any prejudice to the Congressional Defendants can be minimized.*

Rule 19(b)(2) requires the Court to consider whether any prejudice to the Congressional Defendants may be lessened or avoided by protective measures in the judgment or otherwise.

Fed. R. Civ. P. 19(b)(2). For the reasons stated above, there is no prejudice because the Congressional Defendants have fully participated in the litigation. But, even without their participation, there is no prejudice because any injunction against Salesforce would not limit the Congressional Defendants' ability to issue a new subpoena.

To the extent slight prejudice does exist, the Court could lessen or avoid that prejudice. *First*, the Court may determine only the First Amendment constitutional question necessary to permit the issuance of an injunction against Salesforce. *Second*, the Court may include provisions in its judgment expressly limiting the judgment to the Subpoena and expressly noting the Congressional Defendants remain free to issue a new subpoena. *Third*, the Court could—as expressly requested by the RNC—shape the relief so it runs only against Salesforce and not against the Congressional Defendants. Because any prejudice can be lessened or avoided in this manner, the second Rule 19(b) factor also favors the RNC.

3. *Judgment rendered in the Congressional Defendants' absence would be adequate.*

Rule 19(b)(3) asks whether a judgment rendered in the absence of a required party would be adequate. This factor is concerned with the "public stake in settling disputes by wholes, whenever possible." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968). Here, there can be no serious question that a judgment against Salesforce alone would be adequate. The RNC's alleged injury is the unconstitutional disclosure of its constitutionally protected internal deliberative and strategic materials. An injunction preventing Salesforce from producing those materials would completely redress the RNC's injury. This would accomplish full resolution of the RNC's claims, even in the Congressional Defendants' absence, and would therefore promote "the efficient administration of justice and the avoidance of multiple litigation" with which Rule 19(b)(3) is concerned. *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 738 (1977). Hence, the third Rule 19(b) factor completely favors the RNC.

*4. The RNC will have no adequate remedy if the action is dismissed.*

Finally, Rule 19(b)(4) mandates the Court determine whether the RNC, as Plaintiff, would have an adequate remedy if this action were dismissed for nonjoinder. The answer is a resounding, no. As argued by the RNC—and confirmed by the Congressional Defendants—once the RNC data held by Salesforce is produced to the Congressional Defendants, the Speech or Debate Clause will absolutely foreclose any judicial relief in the event the documents are later determined to have been unconstitutionally disclosed. (Reply in Supp. of Pl.' Mot. for Prelim. Inj. ("Reply") at 1; Apr. 1 Tr. at 31:18–32:7.) It is precisely because the RNC is not the direct target of the Subpoena that it has no other avenues for relief: if it were the direct recipient, it could refuse to comply and force the Congressional Defendants to test the Subpoena in court. *See AT&T II*, 567 F.2d at 128–29; *Sen. Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017). Indeed, when the Court asked Congressional Defendants whether they would engage in negotiations with the RNC, the Congressional Defendants unequivocally stated they refused to do so. (Apr. 1 Tr. at 132:21–133:10.)

Because no other relief is available to the RNC, if this case is dismissed under Rule 19's "required joinder" requirement, the Court will effectively have held that, despite the fact that Speech or Debate Clause can only immunize Members of Congress (and sometimes their aides), that immunity nonetheless operates to immunize any third-party recipient of a congressional subpoena from a suit by the true target to prevent a constitutional injury threatened by the subpoena. This is not the law. (*See* Part I, *supra.*) The Congressional Defendants admitted (at least seven times) as much at the hearing. This Court should not be the first to so hold.

**D. The public-rights exception to Rule 19 applies to this case because it presents a matter of transcending public importance.**

Even if the Court concludes that the "absent" Congressional Defendants could be adversely affected by a decision favorable to the RNC, the Congressional Defendants are still not indispensable parties because the "public rights" exception applies. The public-rights exception "provides that when litigation seeks vindication of a public right, third persons who could be

adversely affected by a decision favorable to the plaintiff are not indispensable parties." *Kickapoo*, 43 F.3d at 1500 (citing *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940)). In cases concerning protection and enforcement of public rights, "there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights." *Nat'l Licorice*, 309 U.S. at 363. Thus, where the public right asserted "is a matter of transcending importance," "it extends [the] case far beyond the boundaries of private dispute," foreclosing the need to join otherwise necessary and interested parties. *Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp. 271, 279 (D.D.C. 1985). Relevant here, the public-rights exception is not limited to cases applying the exception where requiring joinder of all affected parties is impractical when doing so would "foreclose forever a legitimate cause of action against the government." *See id.* at 276. Indeed, the exception applies even where only one absent party claims to be indispensable. *Swomley v. Watt*, 526 F. Supp. 1271, 1273 (D.D.C. 1981) (concluding that a private religious organization was not an indispensable party where the plaintiff sought to vindicate public rights). Nor is the exception limited to cases where the absent party's interest is advanced; "the exception applies even where disposition could ***harm*** the absent parties." *Id.* at 276 (emphasis added); *see also Jeffries v. Ga. Residential Fin. Auth.*, 678 F.2d 919, 928–29 (11th Cir. 1982); *Swomley*, 526 F. Supp. at 1273.

The public-rights exception applies here, foreclosing any argument that the Congressional Defendants are indispensable parties. While the RNC's lawsuit seeks to enforce its private constitutional and statutory rights, this litigation vindicates significant public rights to challenge unlawful congressional subpoenas. Should the Congressional Defendants be allowed to leverage their legislative immunity to foreclose any challenge to third-party subpoenas through claiming indispensable-party status, the public would be left without ***any*** right to judicial redress of unlawful subpoenas issued to third-party custodians. Such a finding effectively turns Congress's legislative immunity shield into a spear to defeat lawsuits challenging third-party custodians' production under unlawful subpoenas. Indeed, the public-interest exception has been applied in similar circumstances where a private party advances a public right to challenge

federal action in order to make federal officials follow legal procedure. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 n.6 (9th Cir. 1990). Like here, the exception applies because such actions allowing private parties to hold the government accountable "potentially benefits all." *Id.* Thus, the public's right to challenge unlawful congressional subpoenas issued to third-party custodians "is a matter of transcending [public] importance," extending the implications of this action beyond the RNC's private dispute. *See Burford*, 676 F. Supp. at 279. As a result, the public-rights exception applies, and the Congressional Defendants cannot be held to be indispensable parties requiring dismissal of the RNC's claims against Salesforce.

## III. [Question 3] The RNC Has Standing to Assert Its Claims Against Salesforce.

The Court's third question asks whether the RNC has standing to assert its claims against Salesforce. It does, and no party, including Salesforce, has disputed the RNC's standing to pursue its claims—that is, until prompted by the Court (*see* Salesforce's Resp. to the Court's Apr. 5 Briefing Order at 5–6). Of course, this is not surprising. When pressed for supplemental briefing on the issue of justiciability in *Trump v. Mazars, USA, LLP*, 140 S. Ct. 2019 (2020), neither party disputed President Trump's standing to prevent a third-party custodian from producing under a congressional subpoena. *See generally* Cong. Defs.' Suppl. Letter Br., *Trump v. Mazars USA, LLP*, Nos. 19-715, 19-760 (U.S. May 8, 2020); Trump Letter Br. at 1–2, *Trump v. Mazars USA, LLP*, Nos. 19-715, 19-760 (U.S. May 8, 2020). More importantly, the Supreme Court declined to even take up the issue of standing in its decision. *See generally Mazars*, 140 S. Ct. at 2019; *AT&T II*, 567 F.2d at 121. The same conclusion follows here; the RNC has standing to pursue its constitutional and statutory claims against Salesforce.

"Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, a showing of standing 'is an essential and unchanging' predicate to any exercise of [federal court] jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citation omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The party invoking federal jurisdiction bears the burden of demonstrating Article III standing[,]" and "must demonstrate standing for each claim that is being pressed." *Jibril v. Mayorkas*, 20 F.4th

804, 813 (D.C. Cir. 2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 813–14 (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)).

**A. The RNC has standing to assert its First Amendment claim.**

The RNC's standing to pursue its First Amendment claim is the same, whether it be against the Congressional Defendants or Salesforce. The constitutional injury the RNC sued to redress is the compelled disclosure of its First Amendment protected information. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("*NAACP v. Alabama*") (concluding "revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility" constituted a violation of the First Amendment); *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. FEC*, 333 F.3d 168, 178 (D.C. Cir. 2003) (concluding Democratic National Committee and AFL-CIO have "substantial First Amendment interests in [preventing] the disclosure of their own internal materials" related to FEC investigation). Until Salesforce's April 8 filing, no one disputed that disclosure of such information is a cognizable injury sufficient to satisfy Article III standing, *see NAACP v. Alabama*, 357 U.S. at 459–62; that this injury is fairly traceable to Salesforce's challenged conduct—namely, the disclosure of the RNC's First Amendment protected information, *see Lujan*, 504 U.S. at 560; and that this injury is redressable through an injunction enjoining Salesforce's compliance with the subpoena, *id.* at 561; *see also Trump v. Comm. on Ways & Means*, 415 F. Supp. 3d 38, 50 (D.D.C. 2019) (finding causation and redressability satisfied in a lawsuit seeking to prevent disclosure of tax records to Congress).

The fact the RNC's First Amendment protected information is held by a private party does not change the analysis. A political organization's standing to prevent a private party from compelled disclosure of First Amendment protected information is not a novel concept. Indeed, "[t]he Supreme Court has acknowledged that an organization and its members have standing to protect the members from unwarranted governmental invasion of their First Amendment right of

association although the governmental action is directed at third parties." *In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115, 118 (10th Cir. 1983) (citing *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975)). Thus, even if the Congressional Defendants are dismissed from this lawsuit, the RNC has standing to sue Salesforce to vindicate its First Amendment rights by preventing the disclosure of protected information. *See, e.g.*, *Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*, 667 F.2d 267, 271 (2d Cir. 1981) (concluding political action fund could assert a First Amendment claim against private party that was subject to government-compelled disclosure); *Bergman v. Senate Special Comm. On Aging*, 389 F. Supp. 1127, 1130 (S.D.N.Y. 1975) ("The plaintiffs have standing to challenge the legality of the subpoenas on the ground that the forced disclosure of the materials requested would allegedly violate their federal constitutional rights under the First [Amendment]."); *Pollard v. Roberts*, 283 F. Supp. 248, 251 n.2, 259 (E.D. Ark. 1968) (concluding plaintiffs had standing to assert a First Amendment claim against a bank to prevent the disclosure of constitutionally protected information), *summarily aff'd*, 393 U.S. 14 (1968). This is blackletter law.

**B. The RNC has standing to assert its Fourth Amendment claim.**

The RNC also has standing to bring its Fourth Amendment claim against Salesforce. Salesforce's production under the Subpoena injures the RNC by effecting a warrantless search of the RNC's private donor records and internal deliberative strategy held on Salesforce's servers. *See Jibril*, 20 F.4th at 812–13 (concluding family's asserted injury of warrantless searches of their electronic cell phone data satisfied standing for a Fourth Amendment claim). This injury is also particularized to the RNC and imminent. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016). The injury is particularized in that it is individualized to the RNC—Salesforce's production under the subpoena would only effectuate a search of the RNC's records; it would not affect other third parties. *See id.* at 339. Further, the injury is imminent in that, barring injunctive relief, Salesforce will produce under the Subpoena issued by the Select Committee. *See id.* What's more, the RNC's Fourth Amendment injury is both fairly traceable to Salesforce's production under the Subpoena and redressable through injunctive relief. *See Lujan*, 504 U.S. at

560; *see also Bergman*, 389 F. Supp. at 1130 (holding that plaintiffs have standing to challenge the legality of subpoenas on the ground that the forced disclosure of the materials requested violates plaintiff's Fourth Amendment rights).

Further, courts have held that the Fourth Amendment confers standing wherever a person's reasonable expectations of privacy are potentially invaded. "Fourth [A]mendment standing is quite different … from 'case or controversy' determinations of [A]rticle III standing." *United States v. Moalin*, 973 F.3d 977, 993–94 (9th Cir. 2020) (quoting *United States v. Taketa*, 923 F.2d 665, 669 (9th Cir. 1991)). "Whereas Article III standing concerns [the court's] jurisdiction, Fourth Amendment standing 'is a matter of substantive [F]ourth [A]mendment law; to say that a party lacks [F]ourth [A]mendment standing is to say that [its] reasonable expectation of privacy has not been infringed.'" *Id.* (quoting *Taketa*, 923 F.2d at 669). In other words, a party has standing to challenge a subpoena under the Fourth Amendment if it has a reasonable expectation of privacy in the information subpoenaed. *See United States v. Plunk*, 153 F.3d 1011, 1020 (9th Cir. 1998); *United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993).

As argued extensively in RNC's preliminary injunction papers, the RNC has a reasonable expectation that information demanded by the Salesforce Subpoena—nonpublic information about its own donors, supporters, volunteers, and internal deliberative processes shared with Salesforce—will remain private. (*See* Memo at 14, 16–18; Reply at 13–15, 18–19.) Although housed by Salesforce, the information sought in the Subpoena is the RNC's property; property which the parties' contract requires Salesforce to keep confidential. (*See* Reply at 13.) And, given the nature of modern political exchange, the RNC's decision to employ one of the largest marketing and data services platforms in the world for its political operations does not make the RNC's expectation of privacy in this data any less reasonable. (*See id.* at 14–16.)

The fact that the information sought in the Subpoena is housed by a third party—who would only produce the material under compulsion by, and at the direction of, a government actor—does not leave the RNC without standing to challenge the Subpoena. *See Moalin*, 973 F.3d at 994. As clarified in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), there is no

categorical rule precluding investigatory targets from challenging third-party subpoenas. *Id.* at 2221. Instead, where the RNC has legal "possession, control and unrelinquished personal rights in the [records sought,] the question of unreasonable search and seizure [cannot] be escaped through the mere procedural device of compelling a third-party naked possessor to produce and deliver them." *Schwimmer v. United States*, 232 F.2d 855, 860–61 (8th Cir. 1956) (concluding attorney storing records at a storage company had standing to challenge the storage company's production of his records on Fourth Amendment grounds). In sum, the RNC has standing to challenge the legality of Salesforce's compelled disclosure under the Fourth Amendment.

### C. The Court may only apply legislative immunity to the claims against the Congressional Defendants if it has ruled against the RNC on the merits of the RNC's valid legislative purpose and H. Res. 503 claims, rendering the issue of the RNC's standing for its H. Res. 503 claims against Salesforce moot.

The Court's framing of question three renders a standing analysis on the RNC's invalid legislative purpose and H. Res. 503 claims against Salesforce immaterial. That is, in order to reach the conclusion that legislative immunity applies to "dismiss the claims against the [Congressional Defendants]" (*see* Apr. 5, 2022 Order at 2), the Court must ***first*** fully address the merits of (1) ***all*** of the RNC's H. Res. 503 claims, and (2) the RNC's valid legislative purpose claim. Crucially, a ruling on the merits of the RNC's H. Res. 503 claims is a necessary predicate to finding a valid legislative purpose in the Select Committee's formation and Subpoena which, in turn, triggers legislative immunity. Put differently, the Court cannot reach the merits of the valid legislative purpose claim to find legislative immunity without first addressing the merits of the RNC's H. Res. 503 claims. And, if the RNC's H. Res. 503 claims against the Congressional Defendants fail on the merits, the same claims against Salesforce also necessarily fail on the merits. In that case, whether the RNC has standing to pursue its H. Res. 503 claims against Salesforce would be irrelevant because the Court will have already ruled on the merits of these claims to find legislative immunity.

The RNC's H. Res. 503 claims require two separate inquires, both necessary predicates to the valid legislative purpose claims. *First*, the Court must consider the RNC's H. Res. 503 claims

challenging the validity of the Select Committee's formation. (*See* Memo at 18–20.) Simply put, an improperly constituted congressional committee cannot have a valid legislative purpose. Importantly, the D.C. Circuit's holding in *Trump v. Thompson*, 20 F.4th 10 (D.C. Cir. 2021), is irrelevant in this first inquiry because it did not consider whether the Select Committee was properly constituted under H. Res. 503. *See generally id.* If, and only if, the Court determines that the Select Committee was properly constituted under H. Res. 503, may the Court determine whether the Select Committee, in general, has a valid legislative purpose. In that case, for now *Thompson* provides the answer, and the Select Committee has a valid legislative purpose. *Thompson*'s applicability, however, does not end the inquiry.

*Second*, if *Thompson* applies, the Court must then consider the RNC's H. Res. 503 claims challenging the validity of the Salesforce Subpoena. (*See* Memo at 20–22.) In these claims, the RNC argues that the Salesforce Subpoena is invalid because it was not issued in accordance with H. Res. 503's rules governing the Select Committee's issuance of subpoenas. (*See id.*) If the Court concludes that the Salesforce Subpoena was validly issued under H. Res. 503, the Court must then consider whether the Salesforce Subpoena itself was issued in furtherance of the Select Committee's valid legislative purpose. (*Id.* at 18–20.) Even if the Select Committee was ***formed*** with a valid legislative purpose, the Salesforce Subpoena must nonetheless be ***issued*** in service of that valid legislative purpose.

If, and only if, the Court rules in favor of the Congressional Defendants on the merits of both inquiries above, are the Congressional Defendants immune under the Speech or Debate clause. In other words, the Court must conduct the above analysis on the merits—and conclude that the Congressional Defendants are immune—to consider whether the RNC has standing to pursue its H. Res. 503 claims directly against Salesforce. By that point in the analysis, however, the RNC's H. Res. 503 claims against Salesforce should be dismissed for other reasons.

**D. The RNC has standing to assert its Stored Communications Act claim.**

Consistent with the above, even absent the Congressional Defendants, the RNC has standing to pursue a Stored Communications Act ("SCA") claim against Salesforce directly. "It

is well established that '[t]he actual or threatened injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1122 (W.D. Wash. 2012) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). The SCA creates a private right of action, allowing "[any] … person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged with a knowing or intentional state of mind may, in a civil action, recover from the person or entity … which engaged in that violation." 18 U.S.C. § 2707(a). A violation of one's statutory rights under the SCA provides a concrete and specific injury to satisfy Article III standing. *See Cousineau*, 992 F. Supp. 2d at 1122–23; *Gaos v. Google, Inc.*, No. 5:10-CV-4809-EJD, 2012 WL 1094646, at *3–4 (N.D. Cal. Mar. 29, 2012).

Under the SCA, Salesforce may "not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service" and may not "knowingly divulge a record or other information pertaining to a subscriber to or customer of such service … to any governmental entity." 18 U.S.C. § 2702(a)(1), (3). Salesforce's production under the Subpoena violates the RNC's statutory rights under the SCA. The Salesforce Subpoena seeks (1) the content of the RNC's communications stored on the Salesforces' servers (Item 1 of the Salesforce Subpoena); (2) the private communications of RNC staff stored on Salesforce's servers (same); and (3) other Salesforce data likely to include RNC records (Items 3 and 4 of the Salesforce Subpoena) (*see* Memo at 22). By knowingly producing these items stored on its servers to Congress, Salesforce violates the RNC's statutory rights. As a result, the RNC has a concrete and particularized injury sufficient to pursue an SCA claim against Salesforce. *See Cousineau*, 992 F. Supp. 2d at 1122–23.

### IV. [Question 4] The Court May Enjoin Salesforce's Compelled Disclosure of the RNC's Constitutionally and Statutorily Protected Information.

That Salesforce is a ***private*** party who did not ***issue*** the Subpoena plays no role in deciding whether the Court may enjoin Salesforce from disclosing the RNC's constitutionally and statutorily protected information in response to the Subpoena. To begin, as against

Salesforce, the relevant injury is Salesforce's ***disclosure*** of otherwise protected information in response to the Subpoena. The disclosure of this constitutionally and statutorily protected information is an imminent and "tangible" injury traceable to the Subpoena, which would be redressed by an injunction against enforcement of the Subpoena. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–39 (2016). (*See also* Section III, *supra*.) Thus, whether Salesforce played a part in issuing the Subpoena is beside the point—because Salesforce's compelled disclosure of the RNC's information is the redressable injury. Salesforce's status as a third-party vendor that possesses the RNC's constitutionally and statutorily protected information does not restrict the Court's ability to enter judgment enjoining it from compelled disclosure.

Courts routinely allow lawsuits against third-party custodians or service providers even though they played no role in issuing the subpoena that occasioned the action. In *Bean LLC v. John Doe Bank*, the court allowed a research firm's claims against the firm's bank to enjoin the enforcement of a congressional subpoena even though the bank played no role in the subpoena's issuance. 291 F. Supp. 3d 34, 41 (D.D.C. 2018). In *AT&T II*, the court allowed the Justice Department's claims against AT&T to enjoin the enforcement of a congressional subpoena even though AT&T played no role in the subpoena's issuance. 567 F.2d at 125. In *Bergman v. Senate Special Committee on Aging*, the court in part enjoined the individual plaintiffs' bank from responding to a congressional subpoena even though the bank played no role in the subpoena's issuance. 389 F. Supp. 1127, 1131 (S.D.N.Y. 1975). And in *Pollard v. Roberts*, a three-judge district court (including then-Judge Blackmun) enjoined the Republican Party of Arkansas's bank from responding to a civil investigative subpoena even though the bank played no role in the subpoena's issuance and was unwilling "to divulge [the state political party's] records." 283 F. Supp. 248, 260 (E.D. Ark. 1968), *summarily aff'd*, 393 U.S. 14 (1968).

Nor is Salesforce's status as a private party relevant to the inquiry. At the hearing, the Congressional Defendants and Salesforce maintained that the RNC cannot protect its constitutional interests through claims against Salesforce. (*See* Apr. 1 Tr. at 99: 21–23 (Congressional Defendants: "[Y]ou and I both know that Salesforce cannot violate the Fourth

Amendment or the First Amendment."), 123:3–4 (Salesforce: "We're a private party. We can't violate the First or Fourth Amendment.").) This is incorrect. The RNC has standing to protect its constitutionally protected information held by Salesforce; and the RNC may vindicate its constitutional interests through claims for injunctive relief directly against Salesforce.

Take the First Amendment. Even though "the government-compelled disclosure is directed at a third party, [Salesforce], rather than directly at [the RNC]," "First Amendment rights are implicated." *See Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*, 667 F.2d 267, 271 (2d Cir. 1981) (collecting cases). That is, the RNC's constitutionally protected information in Salesforce's possession is "entitled to the same protection" as if it were possessed by the RNC. *Id.* The Supreme Court made this point in *Fisher v. United States*, 425 U.S. 391, 401 (1976), citing *NAACP v. Alabama*, *see id.* 401. "This is so because the constitutionally protected right, freedom to associate freely and anonymously, will be chilled equally whether the associational information is compelled from the organization itself ***or from third parties***." *In re First Nat. Bank, Englewood, Colo.*, 701 F.2d 115, 118 (10th Cir. 1983) (emphasis added). Organizations like the RNC may therefore protect themselves "from unwarranted governmental invasion of their First Amendment right of association although the governmental action is directed at third parties." *Id.*; *see also In re Grand Jury Proc.*, 842 F.2d 1229, 1234 (11th Cir. 1988) ("We must conclude … appellants can invoke the protection of the first amendment freedom of association to challenge the subpoena directed to [third-party] Roberts."); *Pollard*, 283 F. Supp. at 257 (same).

Thus, even though the government-compelled disclosure is directed at a third party like Salesforce, the RNC (which owns the constitutionally protected information) may sue to protect its First Amendment interests. And that constitutional claim enjoining the disclosure of protected information is proper against a nongovernmental third party. *See, e.g.*, *Bean*, 291 F. Supp. 3d at 45 (claim against plaintiff's bank to enjoin disclosure of information protected by the First Amendment); *Loc. 1814*, 67 F.2d at 271 (claim against association that provided payroll-deduction services to enjoin disclosure of information protected by the First Amendment);

*Bergman*, 389 F. Supp. at 1131 (claim against plaintiffs' bank to enjoin disclosure of information protected by the First Amendment); *cf. In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011) (recognizing a party may assert First Amendment privilege in litigation involving only private parties); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009) (same). It is not uncommon for parties, particularly associations that share their information with third-party vendors, to sue nongovernmental parties to enjoin them from disclosing information protected by the First Amendment. Any rule to the contrary would eviscerate First Amendment rights in protected information that is shared with third parties, an outcome the Supreme Court has rightfully foreclosed. *See Fisher*, 425 U.S. at 401; *United States v. Miller*, 425 U.S. 435, 444, n.6 (1976) (citing *Buckley v. Valeo*, 424 U.S. 1 (1976) and *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975)).

The RNC may also allege claims against Salesforce to protect its Fourth Amendment rights. The D.C. Circuit's decision in *Hearst v. Black*, 87 F.2d 68 (D.C. Cir. 1936), said as much. There, the news publisher sued then-Senator Hugo Black and the FCC over a congressional subpoena issued by a Senate committee to telegraph companies demanding the production and examination of private telegraphs sent by the publisher over a seven-month period. *Hearst*, 87 F.2d at 68. The complaint also alleged the FCC improperly assisted the committee in compelling such production. The committee defended by stating that examination of the "telegraph offices had been completed prior to" publisher's complaint, and that the court lacked jurisdiction to order the return of the telegraphs. *Id.* at 68. While the D.C. Circuit found the publisher of the telegraph communications had a "right of privacy" in the telegraphs and that their seizure violated the Fourth Amendment, *see id.* at 70–71, the court held it lacked authority to limit the use of information already in the Senate's possession because of the Speech or Debate Clause, *id.* at 71. But, the court was comfortable exercising jurisdiction over the FCC, and stated that had the publisher brought his complaint before the telegraph companies disclosed the telegraphs—like the RNC has done here—"it would have been the duty of the lower court by order on the commission ***or the telegraph companies*** … to enjoin the acts complained of." *Id.* (emphasis

added); *see also Bergman*, 389 F. Supp. at 1131 (enjoining bank from responding to congressional subpoena because disclosure violated plaintiff's Fourth Amendment rights).

That the RNC may bring a Fourth Amendment claim against Salesforce is further bolstered by state actor principles. The state action doctrine "assure[s] that constitutional standards are invoked 'when it can be said that the [government] is *responsible* for the specific conduct of which plaintiff complains.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (emphasis in original). The "state action requirement is met if 'there is such a close nexus between [the government] and the challenged action that seemingly private behavior may be fairly treated as that of the [government] itself." *NB ex rel. Peacock v. Dist. of Columbia*, 794 F.3d 31, 43 (D.C. Cir. 2015) (quoting *Brentwood Acad.*, 531 U.S. at 295). While the government's "[m]ere approval of or acquiescence in the initiatives of a private party" is not a sufficient nexus for state action, the nexus is met when the government has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice in law must be deemed to be that of [the government]." *Vill. of Bensenville v. FAA*, 457 F.3d 52, 64 (D.C. Cir. 2006).

Salesforce's compelled compliance with the Subpoena unequivocally establishes a "close nexus" between itself and the Congressional Defendants to satisfy state action. *First*, the Congressional Defendants' meeting with Salesforce the day after the RNC's initial complaint in this matter which occasioned Salesforce's about-face regarding its willingness to withhold production during the pendency of any legal challenge to the Subpoena constitutes an exercise of "coercive power" and significant overt encouragement "such that [Salesforce's] choice [to produce] must be deemed to be that of [the Congressional Defendants]." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (quoting *Blum*, 457 U.S. at 1004). On March 9, 2022, Salesforce agreed to withhold production during the pendency of the RNC's lawsuit challenging the Subpoena. (Murray Decl. ¶¶ 8–9.) Consistent with this, the RNC filed its Complaint on the same day. (*Id.* ¶ 9.) The next day, however, Select Committee staff informed Salesforce that the RNC's lawsuit was insufficient to relieve Salesforce of its production obligations. (*Id.* ¶ 10.) It

was only after the Select Committee threatened Salesforce in this manner that Salesforce changed its stance. (*See id.* ¶¶ 8–10.) The timing of these events, paired with Salesforce's hasty reversal, make clear that the Select Committee effectively forced Salesforce's hand in the decision to produce the RNC's information and data. *See Vill. of Bensenville*, 457 F.3d at 64.

*Second*, Salesforce's actions under state-action agency principles also establishes the requisite nexus. *See Peacock*, 794 F.3d at 43 ("The requisite nexus [for state action] generally exists when a private party acts as an agent of the government in relevant respects."). Whether a private party should be deemed an agent of the government for state action purposes "turns on the degree of government participation in the private party's activities." *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 614 (1989). Here, the Select Committee clearly "did more than adopt a passive position toward [Salesforce's] underlying private conduct." *Id.* at 615–16 (concluding that the government's "encouragement, endorsement, and participation" in a private railroad's actions was sufficient to implicate the Fourth Amendment). Rather than accept Salesforce's initial private decision to withhold production during the pendency of the RNC's lawsuit, the Select Committee pressured Salesforce to produce despite the lawsuit. (*See* Murray Decl. ¶ 10.) Thus, when Salesforce changed its position to produce under the Subpoena in conformity with the Select Committee's wishes, it was acting as an adjunct of the government for purposes of constitutional scrutiny. The Congressional Defendants cannot coercively outsource their constitutional violations to Salesforce and then argue that Salesforce's status as an ostensibly private party means these constitutional violations must be without remedy.

In the end, the RNC is free to seek redress against Salesforce for its compelled disclosure of the RNC's constitutionally protected information, including injunctive relief to protect its First and Fourth Amendment rights. This follows even though Salesforce is a private party and even though it played no role in issuing the unconstitutional Subpoena.

## CONCLUSION

Based on the foregoing, the RNC respectfully requests that the Court grant the RNC's motion for preliminary injunction and enter an order enjoining Defendant Salesforce from producing information, or sitting for a deposition, in response to the Salesforce Subpoena.

Respectfully submitted this 8th day of April, 2022.

STATECRAFT PLLC

By: *s/ Christopher O. Murray*
Christopher O. Murray
1263 Washington Street
Denver, CO 80203
Tel: 602.362.0034
Email: chris@statecraftlaw.com

*Attorney for Plaintiff Republican National Committee*

**CERTIFICATE OF SERVICE**

I certify that on April 8, 2022, I filed **Plaintiff's Supplemental Brief in Support of Its Motion for Preliminary Injunction** via the CM/ECF system for the U.S. District Court for the District of Columbia, which will cause a copy to be served on all registered parties.

*s/ Christopher O. Murray*
Christopher O. Murray