**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

REPUBLICAN NATIONAL COMMITTEE,

              *Plaintiff*,

   v.

NANCY PELOSI, *et al.*,

              *Defendants*.

Case No. 1:22-cv-00659-TJK

**CONGRESSIONAL DEFENDANTS' SUPPLEMENTAL REPLY BRIEF**

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004

ARNOLD & PORTER
601 Massachusetts Ave, NW
Washington, D.C. 20001

*Counsel for the Congressional Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ..................................................................................................................... 4

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)............................................................................................................3

*Barenblatt v. United States*,
    360 U.S. 109 (1959)..........................................................................................................10

*Camreta v. Greene*,
    563 U.S. 692 (2011)..........................................................................................................10

*Caribbean Telecommunications Ltd. v. Guyana Tel. & Tel. Co.*,
    594 F. Supp. 2d 522 (D.N.J. 2009)....................................................................................7

*Cherokee Nation of Oklahoma v. Babbitt*,
    117 F.3d 1489 (D.C. Cir. 1997).......................................................................................13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)............................................................................................................2

*Cofield v. United States*,
    64 F. Supp. 3d 206 (D.D.C. 2014).....................................................................................5

*Cyanotech Corp. v. U.S. Nutraceuticals, LLC*,
    No. CIV. 12-00352 JMS, 2013 WL 504862 (D. Haw. Feb. 7, 2013)................................7

*Dalehite v. United States*,
    346 U.S. 15 (1953)..............................................................................................................3

*de Csepel v. Republic of Hungary*,
    27 F.4th 736 (D.C. Cir. 2022).......................................................................................8, 9

*Doe v. McMillan*,
    412 U.S. 306 (1973)..........................................................................................................16

*Dombrowski v. Eastland*,
    387 U.S. 82 (1967)..............................................................................................................8

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975)................................................................................................2, 16, 17

*EEE Mins., LLC v. State*,
    318 F.R.D. 118 (D.N.D. 2016).........................................................................................12

*Fed. Bureau of Investigation v. Fazaga*,
 142 S. Ct. 1051 (2022) ...........................................................................................................2

*Feres v. United States*,
 340 U.S. 135 (1950) ...............................................................................................................3

*Fields v. Off. of Eddie Bernice Johnson*,
 459 F.3d 1 (D.C. Cir. 2006) ...................................................................................................5

*Fluent v. Salamanca Indian Lease Auth.*,
 928 F.2d 542 (2d Cir. 1991)....................................................................................................7

*Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*,
 720 F.3d 939 (D.C. Cir. 2013) ...............................................................................................5

*Jud. Watch, Inc. v. Schiff*,
 998 F.3d 989 (D.C. Cir. 2021) .............................................................................................16

*Keener v. Congress*,
 467 F.2d 952 (5th Cir. 1972) .................................................................................................5

*Kermanshah v. Kermanshah*,
 No. 08-CV-409, 2010 WL 1904135 (S.D.N.Y. May 11, 2010) ............................................8

*Kickapoo Tribe of Indians of Kickapoo Rsrv. in Kan. v. Babbitt*,
 43 F.3d 1491 (D.C. Cir. 1995) ...............................................................................7, 9, 12, 13

*LoCurto v. LoCurto*,
 No. 07 CIV. 8238, 2008 WL 4410091 (S.D.N.Y. Sept. 25, 2008)........................................8

*Makah Indian Tribe v. Verity*,
 910 F.2d 555 (9th Cir. 1990) ..........................................................................................14, 15

*McCarthy v. Pelosi*,
 5 F.4th 34 (D.C. Cir. 2021)................................................................................................2, 6

*McLean v. United States*,
 566 F.3d 391 (4th Cir. 2009) .................................................................................................5

*Mine Safety Appliances Co. v. Forrestal*,
 326 U.S. 371 (1945)..............................................................................................................11

*Mississippi v. Johnson*,
 71 U.S. (4 Wall.) 475 (1866) ..................................................................................................2

*Molerio v. FBI*,
 749 F.2d 815 (D.C. Cir. 1984) ...............................................................................................2

*Nat'l Wildlife Fed'n v. Burford*,
676 F. Supp. 271 (D.D.C. 1985) ................................................................12, 13, 14

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) ...............................................................................................2

*Nixon v. United States*,
506 U.S. 224 (1993) ...............................................................................................2

*Rangel v. Boehner*,
785 F.3d 19 (D.C. Cir. 2015) ........................................................................2, 6, 16

*Rockefeller v. Bingaman*,
234 F. App'x 852 (10th Cir. 2007) .........................................................................5

*Seneca Nation of Indians v. New York*,
383 F.3d 45 (2d Cir. 2004) ......................................................................................7

*State of Minnesota v. United States*,
305 U.S. 382 (1939) .............................................................................................11

*Swomley v. Watt*,
526 F. Supp. 1271 (D.D.C. 1981) .........................................................................14

*Trump v. Mazars USA LLP*,
140 S. Ct. 2019 (2020) ...........................................................................................4

*Trump v. Thompson*,
20 F.4th 10 (D.C. Cir. 2021) ...............................................................................3, 4
142 S. Ct. 680 (2022) .............................................................................................4

*Two Shields v. Wilkinson*,
790 F.3d 791 (8th Cir. 2015) ...............................................................................12

*United States v. Brewster*,
408 U.S. 501 (1972) .............................................................................................17

*United States v. Helstoski*,
442 U.S. 477 (1979) .............................................................................................17

*United States v. Johnson*,
383 U.S. 169 (1966) .........................................................................................5, 17

*United States v. Norris*,
753 F. Supp. 2d 492 (E.D. Pa. 2010) ...................................................................18

*United States v. Raheja*,
No. 1:19-CR-559, 2020 WL 7769725 (N.D. Ohio Dec. 30, 2020) ......................18

*White v. Univ. of California*,
  765 F.3d 1010 (9th Cir. 2014) ..................................................................................7

*Ye v. Zemin*,
  383 F.3d 620 (7th Cir. 2004) ....................................................................................3

**Constitutional Provisions**

U.S. Const., Art. I, § 6, cl. 1...........................................................................................1

**Rules**

Fed. R. Civ. P. 19.......................................................................1, 2, 6, 7, 8, 9, 12, 15

Fed. R. Civ. P. 19 advisory committee's note to 1966 Amendment.................................6

**Legislative Authorities**

H. Res. 503, 117th Cong. (2021) ..................................................................................15

## <u>INTRODUCTION</u>

The central theme of the Republican National Committee's ("RNC") Supplemental Brief is that, despite the "Required Party" principle embodied in Federal Rule of Civil Procedure 19, the Court should decline to dismiss the case against the Congressional Defendants and Salesforce because there must be some way for the RNC to challenge the validity of the Select Committee's subpoena in court.

This argument is fatally flawed because it is premised on the erroneous notion that Speech or Debate Clause immunity constitutes some kind of inferior immunity as compared to sovereign immunity (whether for the Federal Government, state governments, Native American tribes, or foreign nations).  Not so.  The Framers expressly included in the Constitution absolute immunity for Congress via the Speech or Debate Clause, *see* U.S. Const., Art. I, § 6, cl. 1, and it is without question on par with the doctrine of sovereign immunity.  As the courts apply Rule 19, these immunity doctrines must be treated with the same importance and impact.

Once this fundamental principle is recognized, it becomes clear that the RNC's true complaint is about Rule 19 itself, because the RNC is unhappy with the outcome that rule requires in this case.  But that is obviously not a valid ground for this Court to decline to apply the rule.

The Congressional Defendants do not argue that Speech or Debate immunity applies to Salesforce, but instead assert that, because of the absolute immunity afforded to the Congressional Defendants by the Constitution, Rule 19 requires dismissal of this entire case.  Otherwise, the RNC would be left free to pursue claims against Salesforce that could severely harm the Congressional Defendants, especially because Salesforce does not have any incentive to defend the validity of the Select Committee's subpoena.

Moreover, the RNC's primary theme is also deeply flawed because it rests on the false notion that Speech or Debate Clause immunity and Rule 19 must be applied in such a way that guarantees an affected party, such as the RNC, an option to litigate in court and attack the validity of a Congressional subpoena issued to a third party.  This is wrong.  Courts routinely dismiss, without addressing the merits, claims against federal actors that raise constitutional arguments.  This happens pursuant to a wide variety of legal doctrines, including (among others): immunity for official actions by sitting Presidents, federal judges, and federal prosecutors; the state secrets privilege; the political question doctrine; Article III standing restrictions; separation of powers principles; and, as is the case here, Speech or Debate Clause immunity.[1]

As the D.C. Circuit has explained, Speech or Debate Clause immunity is not overcome simply because a plaintiff raises constitutional claims:  "This 'familiar' argument—made in almost every Speech or Debate Clause case—has been rejected time and again.  An act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, or even the Constitution.  Such is the nature of absolute immunity, which is—in a word—absolute." *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) (citations omitted).

---

[1] *See, e.g.*, *Fed. Bureau of Investigation v. Fazaga*, 142 S. Ct. 1051, 1059 (2022) (reviewing dismissal of constitutional claims on state secrets grounds); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013) (dismissing on standing grounds constitutional challenges to information collection under the Foreign Intelligence Surveillance Act); *Nixon v. United States*, 506 U.S. 224, 238 (1993) (dismissing on political questions grounds constitutional challenges to Senate impeachment procedures); *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982) (granting former President "absolute immunity from damages liability predicated on his official acts"); *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 511 (1975) (dismissing constitutional challenges to legislative subpoena on Speech or Debate Clause grounds); *Mississippi v. Johnson* 71 U.S. (4 Wall.) 475, 499 (1866) (finding unreviewable actions by President Andrew Johnson taken in his discretionary capacity); *McCarthy v Pelosi*, 5 F.4th 34, 39-40 (D.C. Cir. 2021) (rejecting on Speech or Debate grounds constitutional claims against House rule allowing remote proxy voting); *Molerio v. FBI*, 749 F.2d 815, 825-26 (D.C. Cir. 1984) (Scalia, J.) (dismissing First Amendment claim for state secrets privilege reasons).

Additionally, suits attacking Federal Government officials for allegedly illegal actions are regularly dismissed under other legal principles, such as the *Feres* doctrine and the discretionary function exception to the Federal Tort Claims Act.[2]  Likewise, claims of wrongful conduct by foreign governments and foreign rulers are often dismissed under the Foreign Sovereign Immunities Act and head of state immunity.[3]

Thus, the notion that the relevant legal rules here must be contorted so that the RNC is able to raise its constitutional and other attacks against the Select Committee's subpoena before this Court is patently wrong.

The Congressional Defendants will address the various arguments raised by the RNC in its Supplemental Brief.  As stated in their opening Supplemental Brief, the Congressional Defendants also believe the RNC's claims fail on the merits.  The Congressional Defendants strongly urge this Court to rule here on both merits and jurisdictional grounds in the interest of judicial economy and the Select Committee's pressing need for the material requested from Salesforce.

The recent litigation over former President Trump's attempt to use executive privilege to block the National Archives from complying with a records request from the Select Committee exemplifies how alternative holdings can prevent undue delay.  *See Trump v. Thompson*, 20 F.4th 10, 16-17 (D.C. Cir. 2021), *cert. denied*, No. 21-932, 2022 WL 516395 (U.S. Feb. 22,

---

[2]  *Dalehite v. United States*, 346 U.S. 15, 37-38 (1953) (denying liability for personal injuries after nitrate fertilizer explosion under the discretionary function exception); *Feres v. United States*, 340 U.S. 135, 138, 146 (1950) (finding United States not liable under the Federal Tort Claims Act for any injuries to service members sustained while on active duty).

[3]  *See, e.g.*, *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) (rejecting claims against the Republic of Argentina for destroying a ship on the high seas because no jurisdiction existed under the Foreign Sovereign Immunities Act); *Ye v. Zemin*, 383 F.3d 620, 625-26 (7th Cir. 2004) (affirming dismissal of former President of China under head-of-state immunity theory).

2022); *Trump v. Thompson*, 142 S. Ct. 680 (2022).  In that case, the D.C. Circuit held that: (1) former President Trump's executive privilege claim could not prevail in light of President Biden's determination to waive the privilege; and (2) alternatively, given the Select Committee's "profound interest in disclosure" of the records, 20 F.4th at 33, former President Trump's privilege claim would have failed even if he were the incumbent President.  The Supreme Court relied on the second, alternative holding in denying former President Trump's stay and request for an injunction pending appeal, and thereby allowed the requested records to be transmitted to the Select Committee in a timely fashion.  142 S. Ct. at 680.

## ARGUMENT

**1.**  The RNC first contends (RNC Supp. Br., ECF No. 27 at 2-3) that, if this Court dismisses the Congressional Defendants because of Speech or Debate Clause immunity, the Supreme Court's decision in *Trump v. Mazars*, 140 S. Ct. 2019 (2020), compels the conclusion that the RNC can raise its claims against the Select Committee subpoena through an action against Salesforce.  This assertion is incorrect.

*Mazars* dealt with Congressional subpoenas for President Trump's personal financial information that was in the possession of his bankers and accountants.  Unlike this case, there was no question in *Mazars* about the absence of an indispensable party; the Congressional parties were fully and voluntarily present in the litigation, raised no Speech or Debate Clause defense, and were and still are willing to litigate the merits of President Trump's various Constitutional and separation of powers claims, which the Supreme Court found to be critical.  These factors are not present here at all—there are no Executive Branch-related separation of powers concerns in this case, and there will be a missing required party once this Court dismisses the Congressional Defendants on Speech or Debate Clause immunity grounds.  The choice in how,

whether, and when the House or Senate voluntarily participates in litigation is lodged exclusively with each respective Chamber.

**2.** The RNC next contends for several reasons (RNC Supp. Br. at 5-6) that Speech or Debate Clause immunity is somehow less important than other types of litigation immunity. This argument, too, is seriously mistaken.

The Framers embedded Speech or Debate Clause immunity directly in the Constitution because of their deep belief that our republic had to avoid the danger posed by the English monarchy's abuses against members of Parliament. *See United States v. Johnson*, 383 U.S. 169, 178-79 (1966). The RNC provides no explanation for why this Court should nevertheless treat Speech or Debate Clause immunity differently or with less import than other well-established immunity doctrines.

Furthermore, Congress is a central part of the tripartite sovereign entity of the United States. Like any other branch of the Federal Government, Congress is thus a sovereign and sovereign immunity has been held applicable to Congress and its Members. *See, e.g.*, *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009); *Rockefeller v. Bingaman*, 234 F. App'x 852, 855-56 (10th Cir. 2007); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972); *Cofield v. United States*, 64 F. Supp. 3d 206, 213-14 (D.D.C. 2014).

In addition, although the RNC argues (RNC Supp. Br. at 5) that Speech or Debate Clause immunity is not a jurisdictional defense, the D.C. Circuit has held (in at least several cases not mentioned by the RNC) that this immunity is indeed jurisdictional. *See, e.g.*, *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006) ("The Speech or Debate Clause operates as a jurisdictional bar when the actions upon which [a plaintiff] sought to predicate liability were 'legislative acts.'") (cleaned up); *Howard v. Off. of Chief Admin. Officer of U.S. House of*

5

*Representatives*, 720 F.3d 939, 949 (D.C. Cir. 2013) (same); *see also, e.g.*, *McCarthy*, 5 F.4th at

38 (recognizing Speech or Debate Clause immunity as a "jurisdictional objection"); *Rangel*, 785

F.3d at 22 (same).

**3.**  The RNC argues (RNC Supp. Br. at 6-7) that allowing this litigation challenging the

Select Committee's subpoena to proceed will not prejudice the Congressional Defendants

because they have already briefed the merits of that challenge.  But the Congressional

Defendants would indeed suffer prejudice if this Court were to find the Select Committee's

subpoena invalid in their absence.  The fact that the Congressional Defendants have briefed

certain merits arguments does not mitigate that prejudice under Rule 19.

*First*, a party's presence in a case involves far more than just the ability to advance

arguments on the merits of the claims presented.  Participation as a party involves an array of

strategic choices, such as when to present certain arguments, what arguments to emphasize, what

arguments to preserve, whether and how to concede certain points, and whether to appeal and on

what issues.

*Second*, and more fundamentally, the primary Rule 19 prejudice that the Congressional

Defendants would suffer is that this Court could rule, in their absence, that the Select

Committee's subpoena cannot be enforced.[4]  If the mere ability to present arguments were

---

[4]  Indeed, that is why Rule 19(b) focuses on whether the "judgment" or "relief" can be amended to mitigate the prejudice to the absent party, Fed. R. Civ. P. 19(b)(2), not whether the case can be structured to permit an airing of that party's arguments.  *See* Fed. R. Civ. P. 19 advisory committee's note to 1966 Amendment ("The first factor[, (19(b)(1)),] brings in a consideration of what a judgment in the action would mean to the absentee. Would the absentee be adversely affected in a practical sense, and if so, would the prejudice be immediate and serious, or remote and minor? . . . The second factor[, (19(b)(2)),] calls attention to the measures by which prejudice may be averted or lessened. The 'shaping of relief' is a familiar expedient to this end.  *See, e.g.*, the award of money damages in lieu of specific relief where the latter might affect an absentee adversely.").

sufficient to overcome any prejudice to the absent party, Rule 19 would never require dismissal because an indispensable party could always present merits arguments to the court either as an amicus or as an intervenor.  Accordingly, the D.C. Circuit's decision in *Kickapoo Tribe of Indians of Kickapoo Rsrv. in Kansas v. Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995), would have been decided differently because the absent State could have participated by filing an amicus brief, by voluntarily intervening in the case, or as here, by presenting its merits arguments prior to dismissal.  The Congressional Defendants' ability to present merits arguments in the alternative does nothing to mitigate the real and substantial prejudice inherent in *the relief* the RNC seeks; namely, invalidation of a Congressional subpoena.

Likewise, the fact that the RNC chose to name the Congressional Defendants as defendants is of no consequence to the Rule 19 analysis.  *See* RNC Supp. Br. at 4 (stating "every party interested in this case has been named in the lawsuit").  Courts regularly dismiss suits under Rule 19 when the required and indispensable party was originally named as a defendant.[5]

---

[5] *See, e.g.*, *White v. Univ. of California*, 765 F.3d 1010 (9th Cir. 2014) (affirming dismissal of complaint that named tribal repatriation committee as a defendant, but tribal repatriation committee was entitled to tribal sovereign immunity and was a necessary and indispensable party); *Seneca Nation of Indians v. New York*, 383 F.3d 45, 49 (2d Cir. 2004) (affirming dismissal of entire case on sovereign immunity grounds when sovereign State of New York was named as defendant and was an indispensable party); *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542 (2d Cir. 1991) (affirming dismissal of entire case reasoning that tribe defendant was entitled to sovereign immunity and tribe was indispensable party that was also immune from suit; Rule 19 required dismissal of other two claims against the remaining defendants); *Cyanotech Corp. v. U.S. Nutraceuticals, LLC*, No. CIV. 12-00352, 2013 WL 504862, at *8 (D. Haw. Feb. 7, 2013) (dismissing suit "[b]ecause the court has already dismissed the University under Eleventh Amendment principles, joinder of the University necessarily is not feasible.  The University has not consented to suit in this jurisdiction, and the court cannot order its joinder given its Eleventh Amendment immunity.").

Outside the immunity context, numerous Rule 19 cases also hold that federal courts lack subject matter jurisdiction where a non-diverse defendant is indispensable.  *See, e.g.*, *Caribbean Telecommunications Ltd. v. Guyana Tel. & Tel. Co.*, 594 F. Supp. 2d 522 (D.N.J. 2009) (dismissing complaint with prejudice for lack of subject matter jurisdiction when non-diverse

This is as it should be.  Immunity doctrines provide not only immunity from *judgment* but also immunity from *suit*.  *See Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (holding Speech or Debate Clause immunity protects Members of Congress "not only from the consequences of litigation's results but also from the burden of defending themselves.").  If a plaintiff could defeat the protections for immune defendants embedded in Rule 19 merely by suing them, then the protection would be meaningless.

The RNC relies heavily (RNC Supp. Br. at 9) on *de Csepel v. Republic of Hungary*, 27 F.4th 736, 742 (D.C. Cir. 2022), but that case is clearly distinguishable.  Unlike in *de Csepel*, no party here can adequately represent the Congressional Defendants' interests in their absence. Central to the D.C. Circuit's reasoning in *de Csepel* was the conclusion that the absent party's "interests [were] so aligned with those of the remaining defendants that their participation in the litigation protect[ed] [the absent party] against potential prejudice from the suit proceeding in its absence."  27 F.4th at 746.  Not so here.  Salesforce does not share the Congressional Defendants' interest in validity of the subpoena**.**  To the contrary, Salesforce describes itself as "essentially a third-party to this dispute" that "takes no position on the merits of the RNC's constitutional or statutory arguments or whether a preliminary injunction is warranted."  Salesforce's Resp. to RNC's Mot. for Prelim. Inj., ECF No. 15 at 1-2.  The RNC would go even further, suggesting (albeit overzealously, *see infra* at 10) that "a ruling enjoining Salesforce from producing the RNC's records is Salesforce's preferred outcome."  RNC Supp.

---

company defendant was an indispensable party); *Kermanshah v. Kermanshah*, No. 08-CV-409, 2010 WL 1904135, at *1 (S.D.N.Y. May 11, 2010) (dismissing suit for lack of subject jurisdiction because of necessary and indispensable non-diverse defendant who had previously been dismissed from the case); *LoCurto v. LoCurto*, No. 07 CIV. 8238, 2008 WL 4410091, at *1 (S.D.N.Y. Sept. 25, 2008) (lack of diversity could not be cured by severing non-diverse defendant because defendant was an indispensable party).

Br. at 14.  Either way, it is clear that Salesforce does not share Congressional Defendants' interests in this case.

And because of these differences, Salesforce may make different strategic choices that adversely impact the Congressional Defendants' ability to obtain the documents they seek.  For example, Salesforce may choose not to appeal an adverse ruling or elect not to seek a stay of any adverse order.  Salesforce could even choose to waive certain arguments or to settle the case entirely.  In short, the presence of the Congressional Defendants or (as in *de Csepel*) some party that shares the Congressional Defendants' interests has great importance—and that importance extends well beyond the ability to present merits arguments to the Court.

The D.C. Circuit emphasized this point in *Kickapoo Tribe*, 43 F.3d at 1496 ("While Rule 19(b) sets forth four non-exclusive factors for the court to consider, this court has observed that 'there is very little room for balancing of other factors' set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests 'compelling by themselves.'") (citation omitted).  *Kickapoo Tribe* relies in part on the principle that when an immune party is a required party, there is inherent prejudice in proceeding without that party and, as such, the action cannot proceed "in equity and good conscience" under Rule 19.  *Id.*  The court explained that "notwithstanding the discretion generally accorded to the district court to consider 'which factors to weigh and how heavily to emphasize certain considerations,' the district court was confronted with a more circumscribed inquiry when it assessed whether the . . . lawsuit could proceed 'in equity and good conscience' in the absence of [the necessary sovereign], which was both a necessary party and immune from the lawsuit."  *Id.* at 1497 (citation omitted).

Relying on *Camreta v. Greene*, 563 U.S. 692 (2011), the RNC nevertheless contends (RNC Supp. Br. at 10) that the Congressional Defendants could protect their interests by appealing any order from this Court invalidating or limiting the Select Committee's subpoena to Salesforce.  This contention is incorrect.

If dismissed from the case, the Congressional Defendants would not have a clear right to appeal.  *Camreta* is inapposite because it involved an entirely different issue:  whether a prevailing party can appeal when that party has won its case on the basis of qualified immunity because the law was not "clearly established," but lost on the merits of whether its conduct violated the law.  Contrary to the RNC's contention, *Camreta* does not address whether a party that has been dismissed from the case can appeal the action that proceeds between the remaining parties.

**4.**  The RNC also suggests (RNC Supp. Br. at 11) that the Court could issue orders to minimize the harm to the Congressional Defendants, leaving the Select Committee free to issue a new and different subpoena to Salesforce or others.  That argument fails because neither the RNC nor this Court have authority to limit the scope and course of Congressional investigations, which are within the Congress's power to define.  *See Barenblatt v. United States*, 360 U.S. 109, 132 (1959) ("So long as Congress acts in pursuance of its constitutional power, the Judiciary lacks authority to intervene . . . .") (citation omitted).  Any meaningful relief awarded to the RNC would inevitably undermine the Congressional Defendants' ability to obtain the information it seeks.

**5.**  Moreover, Salesforce too will suffer competing obligations if ordered by this Court not to produce (a judicial order and a competing Congressional subpoena).

The RNC also asserts (RNC Supp. Br. at 7) that "a ruling enjoining Salesforce from producing the RNC's records is Salesforce's preferred outcome." But this assertion is not supported by the RNC's narrow, out-of-context citation of the April 1 hearing transcript, and Salesforce's prior and subsequent filings contradict it.

In response to a potentially contrary suggestion, Salesforce's counsel clarified at the April 1 hearing that while it did not have an affirmative desire to produce records to the Select Committee, it would comply with its subpoena as legally required: "I also want to be clear, we do not *wish* to comply with the subpoena. It is a *subpoena*. We are *bound* to comply . . . with it, and we *will* comply with it . . . ." Tr. 117:18-20 (emphases added).

Salesforce's position thus appears to be that it does not independently want to either (1) produce records or (2) avoid producing them. In fact, Salesforce previously described itself as "essentially a third-party to this dispute [that] takes no position on the merits of the RNC's constitutional or statutory arguments or whether a preliminary injunction is warranted." Salesforce's Resp. to RNC's Mot. for Prelim. Inj., ECF No. 15 at 1-2. This is consistent with Salesforce's argument following the April 1 hearing. *See* Salesforce's Supp. Br., ECF No. 25 at 1-2.

**6.** The RNC insists (RNC Supp. Br. at 10) that "cases dealing with federal sovereign immunity support proceeding against non-immune defendants even in the absence of the immune federal sovereign." But the Supreme Court itself has affirmed dismissal of such suits. *See Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 373–75 (1945) (dismissing suit where Under Secretary of the Navy was sued in his official capacity, because United States was a required entity that could not be joined when it withheld consent to be sued); *State of Minnesota v. United States*, 305 U.S. 382, 386–88 (1939) (dismissing action for nonjoinder of required party where

United States owned land at issue in case but had not consented to suit).  And other federal courts have likewise dismissed entire cases when an immune federal sovereign was absent.  *See, e.g.*, *Two Shields v. Wilkinson*, 790 F.3d 791, 799 (8th Cir. 2015); *EEE Mins., LLC v. State*, 318 F.R.D. 118, 129 (D.N.D. 2016).

Even if the RNC's representation were true, however, there is no basis in the text of Rule 19 for distinguishing case law involving a "federal" entity protected by immunity from a non-federal entity protected by immunity.  Under the plain terms of Rule 19, its factors apply whether or not the case involves a "federal" entity.

Moreover, there is no particular unfairness with a holding in favor of the Congressional Defendants.  When a "target" receives a subpoena directly, it will find itself in the same situation as the RNC finds itself here: with an immune counterparty.  There is a good reason for this: The rules are meant to encourage parties to attempt to resolve their differences with Congress directly.   And while the "target" might not have the option to risk contempt in the third-party subpoena context, this case solely involves data that the target (the RNC) has provided to a third party (Salesforce), thereby necessarily reducing both any expectation of privacy in that data and the ability to control its release.

In addition, if the RNC wished to raise objections to the subpoena directly to the Select Committee, it had ample opportunity to do so directly.

**7.**  Despite its effort to do so, the RNC cannot properly invoke the "public rights exception" to evade the proper Rule 19 analysis. That exception applies where a matter of "transcending importance" is at stake and a large number of parties are required, but infeasible to join. *Kickapoo Tribe*, 43 F.3d at 1500 (quoting *Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp.

271, 276 (D.D.C. 1985)); *see also Cherokee Nation of Oklahoma v. Babbitt*, 117 F.3d 1489,

1497 (D.C. Cir. 1997). That standard is not met here.

In *Kickapoo Tribe*, the D.C. Circuit rejected application of the public rights exception

because the case neither "require[d] the joining of an infeasibly large number of parties" nor

"implicate[d] a matter of transcending importance of the type that has previously prompted

courts to apply the exception."  43 F.3d at 1500; *see also Cherokee Nation*, 117 F.3d 1489

(rejecting public rights exception where joinder of large number of infeasible parties was not

required and where dispute involved only "the relationship between two groups and their

respective relationships with the federal government").

Both factors require rejection of the public rights exception here.  *First*, this litigation

does not involve a large number of independent infeasible parties.  The Congressional

Defendants are, for all intents and purposes, the equivalent of a single party.  This is enough to

sink the RNC's public rights argument—as it was in *Kickapoo Tribe*, where there was only one

absent party, the State of Kansas, which was protected by immunity, as the Congressional

Defendants are here.

*Second,* this litigation does not involve a specific matter of "transcending importance."

*Kickapoo Tribe*, 43 F.3d at 1500.  While this suit, like every suit, is important to the parties, the

question before the Court is whether a private company shall be required to comply with a

subpoena issued by a Congressional committee investigating an unprecedented event.  *See Id.*

(contrasting the case before it with *Burford*, 676 F. Supp. at 276, in which the litigation affected

the ultimate fate of environmental restrictions on 170 million acres of public lands).

"Transcending" as contemplated by the "public rights" test has a literal meaning—whether the

interest sought to be vindicated "transcends" the dispute between the parties.  That is not the case

13

here.  As the RNC admits (RNC Supp. Br. 13), it seeks "to enforce its *private* constitutional and statutory rights" (emphasis added).  The RNC attempts to bootstrap this into a public rights argument by suggesting that "this litigation vindicates significant public rights to challenge unlawful congressional subpoenas."  *Id.*  But this litigation, even should the RNC prevail, would at most remove one obstacle from future challenges to the narrow class of Congressional subpoenas issued to third parties; it would not by itself resolve any such challenges or diminish Congress's ability to issue subpoenas.

This is nothing like the *Burford* litigation, where "[t]he public's interest in disposition of [170 million acres] of federal lands, and more concretely, in participating in the management of these lands is a matter of transcending importance" that "extends this case far beyond the boundaries of private dispute." 676 F. Supp. at 276.  In contrast to *Burford* and other cases applying the public rights exception, the RNC's case does not involve a public resource (such as federal land).  It involves private documents held by a private company.

The RNC relies on two cases that are easily distinguishable.  In *Swomley v. Watt*, 526 F. Supp. 1271 (D.D.C. 1981), the district court applied the public rights exception without analysis in a case where at most one party could not be joined and where the case involved the validity of a permit issued to a private organization to conduct activities at a specific location within a wildlife refuge.  526 F. Supp. at 1273.  This outcome would be plainly incorrect under both factors of the standard for the public rights exception subsequently set forth by the D.C. Circuit in *Kickapoo Tribe* and *Cherokee Nation*.

Equally unavailing is the RNC's reliance on dicta in *Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990).  In that case, the Makah Indian Tribe challenged: (1) the Secretary of the Interior's allocation among 24 tribes of the ocean harvest of migrating Columbia River

salmon; and (2) the procedures the Secretary followed in promulgating the governing regulations.  910 F.2d at 557.  The Ninth Circuit upheld the district court's Rule 19 dismissal of the Makah's reallocation claims, *see id.* at 560, but held that, "[t]o the extent that the Makah seek relief that would affect only the *future* conduct of the administrative process" allocating the ocean harvest of migrating Columbia River salmon, the 23 other tribes with treaty rights to a share in such harvest were not necessary parties, *id.* at 559 (emphasis added).  In a footnote, the Ninth Circuit noted that, even if the absent tribes were "necessary," they would not be "indispensable" to the procedural claim due to the private rights exception, because the prospective relief sought "potentially benefits all who participate in the ocean fishery."  *Id.* n.6.

*Makah Indian Tribe* is thus distinguishable for two reasons.  *First*, that case involved 23 unrelated parties who could not be joined, as opposed to effectively one party in the present case, and thus (unlike the present case) fit the standard for the public rights exception articulated by the D.C. Circuit in *Kickapoo Tribe.  Second*, as the Ninth Circuit noted, the case also involved the allocation of a public resource: an ocean fishery.  There is no similar public resource at stake in this case.

For all of these reasons, the RNC is not entitled to the public rights exception to Rule 19 under D.C. Circuit law.

**8.**  The RNC contends (RNC Supp. Br. at 18-19) that it has standing because before this Court can conclude that Speech or Debate immunity applies it must "*first* fully address the merits of (1) *all* of the RNC's H. Res. 503 claims and (2) the RNC's valid legislative purpose claim." (Emphases in original.)  This argument misapplies the case law on Speech or Debate Clause immunity; a searching inquiry into whether the Select Committee has complied with House

Rules or whether there is a valid legislative purpose is not a prerequisite to the application of Speech or Debate immunity.

Both the Supreme Court and the D.C. Circuit have rejected this exact argument.  In *Doe v. McMillan*, plaintiffs sought relief against a Congressional committee and its Chairman on the theory the publication of a House Report that included "materials describing particular conduct on the part of identified children was actionable because [it was] unnecessary and irrelevant to any legislative purpose."  412 U.S. 306, 312 (1973).  The Supreme Court rejected that argument, explaining that "[c]ases in this Court . . . from *Kilbourn* to *Gravel* pretermit the imposition of liability on any such theory."  *Id.*

Contrary to the RNC's suggestion, the issuance of a Congressional subpoena is a legislative act for which the Speech or Debate Clause "provides complete immunity."  *Eastland*, 421 U.S. at 507.  "Congressmen and their aides are immune from liability for their actions within the legislative sphere, even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes."  *Id.* at 510 (quotation marks and citations omitted); *see also Rangel*, 785 F.3d at 24 (explaining that Congressional action does not lose its legislative character because it is alleged to be "*illegal*"— an argument that "has been rejected time and again").  In *McMillan*, the Supreme Court emphasized that "[a]lthough we might disagree with the Committee . . . we have no authority to oversee the judgment of the Committee in this respect or to impose liability on its Members if we disagree with their legislative judgment."  412 U.S. at 313; *see also Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) (rejecting similar argument regarding congressional subpoenas as "[e]qually unavailing.").  This Court must likewise reject the RNC's invitation to

oversee or second guess the Select Committee's judgment in issuing the subpoena to Salesforce here.

Moreover, the immunity provided by the Speech or Debate Clause is not abrogated by allegations that the Select Committee acted unlawfully or with an unworthy purpose, which is precisely what the RNC contends.  The Speech or Debate Clause bars any "'inquiry into . . . the motivation for [legislative] acts.'"  *United States v. Helstoski*, 442 U.S. 477, 489 (1979) (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)); *see also Eastland*, 421 U.S. at 508 ("[I]n determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it.").  The Supreme Court has emphasized that allegations of improper motivation, such as those raised by the RNC, are "precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry."  *Johnson*, 383 U.S. at 180.

Accordingly, this Court need not resolve either the RNC's allegations related to House Resolution 503 or whether there was a legitimate legislative purpose before it can apply the absolute immunity to which the Congressional Defendants are entitled.

**9.**  The RNC argues at some length (RNC Supp. Br. at 20-25) that this Court can enjoin Salesforce from violating the RNC's asserted First and Fourth Amendment rights, even though Salesforce is a private company.  This argument is incorrect because there is a substantial difference between standing to bring a claim and whether a private actor is subject to the constitutional limits imposed on state and federal governments.

The RNC's claim that, in general, a party may bring suit to enjoin compelled disclosure directed at a third-party custodian or service provider, is not at issue here.  *See* RNC Supp. Br. at 20-23.  Here, the Court has asked the parties to assume that the Congressional Defendants are no longer a party in the litigation, leaving only private parties remaining.  None of the cases cited by

the RNC where only private parties were present involved subpoena compliance; they instead involved court-ordered discovery disclosures.  *See id*.  Those cases are therefore inapposite.

As for the RNC's arguments regarding the principles of state action, its compilation of caselaw only serves to bolster the point made in the Congressional Defendants' supplemental brief:  Mere compliance with a governmental subpoena cannot convert an otherwise private action into state action.  *See* Cong. Defs.' Supp. Br., ECF No. 26 at 10-13.  As noted in that brief, none of the cases cited by the RNC involved the issuance of a subpoena.

Furthermore, the RNC's effort to characterize the interactions between the Select Committee and Salesforce as sufficient to establish state action on the part of Salesforce finds no legal support.  When a private actor is "an independent actor with an agenda separate from . . . the administration of justice," the fact that "it must respond to the government's inquires and requests for information does not transform it into an agent of the government, acting on the government's behalf and with the government's interests in mind."  *United States v. Raheja*, No. 1:19-CR-559, 2020 WL 7769725, at *3 (N.D. Ohio Dec. 30, 2020); *see also United States v. Norris*, 753 F. Supp. 2d 492, 530 (E.D. Pa. 2010) ("While the companies entered into cooperation agreements with the Antitrust Division, they were not—by any means—agents of the Antitrust Division.").

Accordingly, there is no basis for this Court to conclude that Salesforce's mere compliance with the Select Committee's subpoena constitutes state action, or that there is otherwise a method by which the RNC can allege a potential future violation of its First or Fourth Amendment rights by Salesforce.

## CONCLUSION

For the reasons stated above, in their supplemental brief, and in their initial brief, the Congressional Defendants urge this Court to dismiss the Congressional Defendants pursuant to their immunity under the Speech or Debate Clause.  In addition, the Court should dismiss the remainder of this case because the Congressional Defendants are indispensable parties under Rule 19.  Finally, the Court should rule, in the alternative, that the RNC's claims against Salesforce fail on their merits.

Respectfully submitted,

/s/  *Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*
MICHELLE S. KALLEN
  *Special Litigation Counsel*
STACIE M. FAHSEL
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

-and-

SHER TREMONTE LLP
Justin M. Sher
Michael Tremonte[*]
Noam Biale
Maya Brodziak[*]
Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor

New York, New York 10004
(212) 202-2600
JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

-and-

ARNOLD & PORTER
John A. Freedman
Paul Fishman
Amy Jeffress
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com

[*] Appearing pursuant to 2 U.S.C. § 5571(a).

Dated:  April 12, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

/s/ Douglas N. Letter
Douglas N. Letter