**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) |
| NANCY PELOSI, et al., | ) ) ) |
| *Defendants.* | ) ) ) |

Case No. 1:22-cv-00659-TJK

**PLAINTIFF'S SUPPLEMENTAL RESPONSE BRIEF IN SUPPORT**
**OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Christopher O. Murray
STATECRAFT PLLC
1263 Washington Street
Denver, CO 80203
Tel:  602.362.0034
Email:  chris@statecraftlaw.com

*Attorney for Plaintiff Republican National Committee*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................iii

**INTRODUCTION**.............................................................................................................. 1

**SUPPLEMENTAL RESPONSE IN SUPPORT** ............................................................. 2

    I.    Rule 19 Does Not Require Dismissal. ............................................................... 2

          A.    A finding of legislative immunity does not impact the Court's subject-matter
               jurisdiction over the RNC's claims against Salesforce. ............................................. 3

          B.    The Congressional Defendants are already party defendants; joinder is
               therefore feasible. ................................................................................................ 5

          C.    The Congressional Defendants are not indispensable parties. ................................... 7

          D.    Dismissing the RNC's claims against Salesforce under Rule 19 would—for
               the first time—expand the scope of the Speech or Debate Clause to
               nonimmune parties and would cut off redress the Supreme Court and D.C.
               Circuit have recognized. .......................................................................................... 10

    II.    Congress Is Entitled No Deference in Determining the RNC's Constitutional Rights. .... 12

**CONCLUSION** ................................................................................................................ 13

**CERTIFICATE OF SERVICE** ........................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Askew v. Sheriff of Cook Cnty., Ill.*,
   568 F.3d 632 (7th Cir. 2009) ................................................................5

*Baker v. Carr*,
   369 U.S. 186 (1962) ...........................................................................12

*de Csepel v. Republic of Hungary*,
   27 F.4th 736 (D.C. Cir. 2022) .............................................................8

*Davis v. Passman*,
   442 U.S. 228 (1979) .............................................................................4

*Delgado-Caraballo v. Hosp. Pavia Hato Rey, Inc.*,
   889 F.3d 30 (1st Cir. 2018) ...............................................................5, 6

*Diodem, LLC v. Lumenis Inc.*,
   No. CV03-2142 GAF (RCX), 2005 WL 6219898, (C.D. Cal. Sept. 14, 2005) ........................6

*Dyke v. Gulf Oil Corp.*,
   601 F.2d 557 (Temp. Emer. Ct. App. 1979) .......................................6

*Eastland v. U.S. Servicemen's Fund*,
   421 U.S. 491 (1975) .........................................................................1, 11

*Fields v. Off. of Eddie Bernice Johnson*,
   459 F.3d 1 (D.C. Cir. 2006) ................................................................4

*Kilbourn v. Thompson*,
   103 U.S. 168 (1880) .............................................................................4

*Kimel v. Fla. Bd. of Regents*,
   528 U.S. 62 (2000) ...............................................................................6

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*,
   523 U.S. 751 (1998) .............................................................................6

*FDIC v. Meyer*,
   510 U.S. 471 (1994) .............................................................................3

*Mowrer v. U.S. Dep't of Transp.*,
   14 F.4th 723 (D.C. Cir. 2021) .............................................................3

*Nanko Shipping, USA v. Alcoa, Inc.*,
   850 F.3d 461 (D.C. Cir. 2017) ............................................................2

*United States v. Orleans*,
   425 U.S. 807 (1976) .............................................................................6

## TABLE OF AUTHORITIES (con't)

*EEOC v. Peabody W. Coal Co.*,
    400 F.3d 774 (9th Cir. 2005) ...................................................................5

*Powell v. McCormack*,
    395 U.S. 486 (1969)..................................................................3, 4, 12

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008).....................................................................8

*Shields v. Barrow*,
    58 U.S. 130 (1854)....................................................................10

*State Emps. Bargaining Agent Coal. v. Rowland*,
    494 F.3d 71 (2d Cir. 2007)............................................................4, 5

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).......................................................................3

*Taylor v. Duncan*,
    720 F. Supp. 2d 945 (E.D. Tenn. 2010)..............................................4, 5

*Trump v. Mazars USA, LLP*,
    140 S. Ct. 2019 (2020)................................................................11

*United States v. AT&T*,
    567 F.2d 121 (D.C. Cir. 1977)....................................................1, 4, 11

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983).....................................................................6

*Va. Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247 (2011).....................................................................6

*Walker v. Jones*,
    733 F.2d 923 (D.C. Cir. 1984).........................................................4

*Watkins v. United States*,
    354 U.S. 178 (1957)....................................................................12

### Constitutional Provisions

U.S. Cont. art. I, § 6, cl. 1 ...................................................... passim

U.S. Const. amend. I.....................................................................1, 2

U.S. Const. amend. IV.......................................................................2

### Federal Rules

Fed. R. Civ. P. 12(b)(1).....................................................................4

## TABLE OF AUTHORITIES (con't)

Fed. R. Civ. P. 12(b)(6)...................................................................................4, 5

Fed. R. Civ. P. 19 ..................................................................................... passim

Fed. R. Civ. P. 19(a) ...........................................................................2, 5, 6, 7

Fed. R. Civ. P. 19(a)(1)...................................................................................5

Fed. R. Civ. P. 19(b)........................................................................................7

Fed. R. Civ. P. 19(b)(1)...................................................................................8

Fed. R. Civ. P. 19(b)(2)...................................................................................9

Fed. R. Civ. P. 19(b)(3)...................................................................................9

Fed. R. Civ. P. 19(b)(4)...................................................................................9

Fed. R. Civ. P. 65............................................................................................7

***Other Authorities***

Cong. Defs.' Consent Mot. to Intervene, *Trump v. Mazars USA, LLP*,
    No. 1:19-cv-01136-APM (D.D.C. Apr. 26, 2019)....................................8

Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1610 (3d ed.) ........................5

## INTRODUCTION

For the first time, a congressional committee dominated by the political party in power has leveraged its subpoena authority to compel the disclosure of the minority party's First Amendment protected internal party deliberative materials. Now, after three rounds of briefing, the Congressional Defendants offer an unheard-of approach to Rule 19 that would foreclose judicial review of their grave constitutional violations. The Court should avoid this.    Indeed, accepting the Congressional Defendants' view of the case would mean the redressability of a subpoena target's constitutional rights necessarily turns on *who* possesses the target's protected information, a distinction courts have rightfully rejected.

On supplemental briefing, the Congressional Defendants ask this Court to find that Rule 19—which requires that absent parties be joined where joinder will not deprive the court of subject-matter jurisdiction—works to accomplish what the Speech or Debate Clause does not: the immunization of the target of a congressional subpoena from suit. To agree with the Congressional Defendants, this Court will have to find that these Defendants, who have been part of this action from the beginning, are rendered "absent" by virtue of their invocation of legislative immunity. Next, this Court will have to determine that the Congressional Defendants' absence somehow prejudices their interest in the enforcement of the Subpoena, despite their extensive briefing and argument of all issues in this case. Finally, the Court will have to ignore the fact that equity and good conscience require the RNC's claims against Salesforce (the first two of which seek to vindicate constitutional rights) to proceed under the circumstances of this case or leave the RNC with no remedy for its constitutional injuries—a remedy it would have if the Subpoena was issued to it directly. Justice Marshall opined that "[t]he Speech or Debate Clause cannot be used to avoid meaningful review of constitutional objections to a subpoena simply because the subpoena is served on a third party." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 516 (1975) (Marshall, J., concurring); *see also United States v. AT&T*, 567 F.2d 121, 130 (D.C. Cir. 1977) ("*AT&T II*") ("[T]he fortuity that documents sought by a congressional subpoena are not in the hands of a party claiming injury from the subpoena should not immunize

1

that subpoena from challenge by that party."). If the Court agrees with the Congressional Defendants, it will necessarily disagree with the late Justice and the D.C. Circuit.

The Court should decline such a watershed holding and, instead, rule on the merits of the RNC's claims against Salesforce, as belatedly invited by the Congressional Defendants. (*See* Cong. Defs.' Suppl. Br. 13–17.) On the merits, the RNC prevails. The Subpoena unquestionably demands the First Amendment protected internal party deliberative materials of the RNC. (*See* Apr. 1 Tr. at 74:12–74:18.) This compelled disclosure renders it subject to exacting scrutiny, which it fails. The Subpoena is unquestionably not narrowly tailored to the governmental interest the Congressional Defendants' claim to act in furtherance of, because it requests swaths of material wholly unrelated to the events of January 6th. (Pl.'s Memo at 9–14; Pl.'s Reply at 8–12.) The Subpoena also is clearly unreasonable under the Fourth Amendment and violates the Stored Communications Act. (Pl.'s Memo at 14–17, 22–23; Pl.'s Reply at 12–20, 22.) The Court should so hold, enjoin the enforcement of the Subpoena as requested by the RNC, and leave the Congressional Defendants free to try again with a more narrowly tailored subpoena.

## SUPPLEMENTAL RESPONSE IN SUPPORT

### I.    Rule 19 Does Not Require Dismissal.

The D.C. Circuit has "summed up the Rule 19 inquiry as posing three questions: Should the absentee be joined, i.e., is it necessary to the litigation? If so, can the absentee be joined? And finally, if the absentee should but cannot be joined, may the lawsuit nonetheless proceed 'in equity and good conscience'?" *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 464 (D.C. Cir. 2017). The Congressional Defendants lose at every step. They are not required parties under Rule 19(a) (*see* Pls.' Suppl. Br. at 6–7); joinder is feasible (indeed, the Congressional Defendants have been joined) and dismissal of the Congressional Defendants would not impact the Court's jurisdiction (*see* subsections I.A and B, *infra*); and the RNC's claims against Salesforce may proceed because the Congressional Defendants are not indispensable (*see* Pls.' Suppl. Br. 7–12; subsection I.C, *infra*). Any other conclusion would impermissibly expand the scope of the

2

Speech or Debate Clause to nonimmune parties and would destroy causes of action the Supreme Court and D.C. Circuit have said must exist to protect constitutional rights.

  A. **A finding of legislative immunity does not impact the Court's subject-matter jurisdiction over the RNC's claims against Salesforce.**

  Implicit in the Congressional Defendants' Rule 19 argument is that a finding of legislative immunity would destroy the Court's subject-matter jurisdiction. To make this point, the Congressional Defendants compare their purported immunity under the Speech or Debate Clause to immunities enjoyed by sovereigns. It is well-settled that sovereign immunity deprives federal courts of subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("[Because] [s]overeign immunity is jurisdictional in nature," "[the sovereign] may not be sued without its consent and … the existence of consent is a prerequisite for jurisdiction."). Simply put, without subject-matter jurisdiction, "the court cannot proceed at all in any cause." *Steel Co.*, 523 U.S. at 95. For that reason, absent the sovereign's waiver, invocation of sovereign immunity acts as a complete bar to federal court subject-matter jurisdiction over the action. *See Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723, 734 (D.C. Cir. 2021) (Katsas, J., concurring).

  Legislative immunity, on the other hand, is different; its invocation ***does not*** categorially bar federal court subject-matter jurisdiction. The Supreme Court held as much in *Powell v. McCormack*, 395 U.S. 486 (1969). There, Representative Adam Powell sued five other Members of Congress individually (the "individual Members"), as well as the Clerk of the House of Representatives, the House Sergeant at Arms, and the House Doorkeeper (the "House employees"), for adopting a resolution calling for Representative Powell's expulsion from Congress and excluding him from taking his seat in the next session of Congress. *Id.* at 493. After the district court granted defendants' motion to dismiss for lack of subject-matter jurisdiction, the D.C. Circuit affirmed, albeit on different grounds. *Id.* at 494. Notably, each judge on the panel wrote separately and concluded that the district court ***did*** have subject-matter jurisdiction to hear the case. *Id.* at 494, 512 n.33. On appeal to the Supreme Court, defendants

urged affirmance on a number of grounds, including: (1) that the Speech or Debate Clause insulated all defendants—including the non-Member House employees—from judicial review; and (2) that the Supreme Court lacked subject-matter jurisdiction over Powell's entire action. *Id.* at 494. The Court held that, although the Speech or Debate Clause immunized the individual Members from the lawsuit, Powell was nonetheless "entitled to maintain [his] action against [the] House employees and to judicial review of" the challenged conduct. *Id.* at 504–06 (citing *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)). Further, despite dismissing the individual Members under the Speech or Debate Clause, the Supreme Court unequivocally "agree[d] with the unanimous conclusion of the Court of Appeals that the District Court had jurisdiction over the subject matter of [the] case." *Id.* at 512. Thus, *Powell* instructs that, even where legislative immunity is successfully maintained as an individual defense on behalf of covered Members, that defense alone does not divest the court of subject-matter jurisdiction to hear claims asserted against ***other*** defendants who cannot invoke legislative immunity. *See id.*; *see also Davis v. Passman*, 442 U.S. 228, 236 n.11 (1979) (concluding that courts have subject-matter jurisdiction to evaluate constitutional claims against parties that are "not shielded by the [Speech or Debate] Clause," even if those claims are related to congressional action).

Given the ***personal*** nature of legislative immunity, *Powell*'s instruction makes sense. Unlike sovereign immunity, legislative immunity is personal to Members of Congress. *See AT&T II*, 567 F.2d at 130. Because legislative immunity can be asserted as a personal defense to "challenge the sufficiency of a complaint under Rule 12(b)(6)," legislative immunity is ***not*** a bar to subject-matter jurisdiction under Rule 12(b)(1). *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007); *see also Taylor v. Duncan*, 720 F. Supp. 2d 945, 949 (E.D. Tenn. 2010) (concluding that legislative immunity under the Speech or Debate Clause is "appropriately characterized as a defense to suit"). This is consistent with the spirit of the Speech or Debate Clause, which is "not to forestall judicial review of legislative action" altogether, but to individually "free legislators from distraction or hindrance" in the legislative process. *Walker v. Jones*, 733 F.2d 923, 929 (D.C. Cir. 1984) (quoting *Powell*, 395 U.S. at 505).

4

Here, the Congressional Defendants' personal invocation of legislative immunity cannot act as a bar to this Court's subject-matter jurisdiction to hear the RNC's claims against Salesforce. While the D.C. Circuit has broadly referred to legislative immunity as a "jurisdictional bar" to actions seeking liability for legislative acts, *see Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006), it is not a complete bar to subject-matter jurisdiction for claims beyond the reach of the Speech or Debate Clause. In other words, legislative immunity's "jurisdictional bar" does not otherwise divest federal courts of jurisdiction to hear additional claims that are not asserted against Members of Congress. *See Powell*, 395 U.S. 486 at 504, 12. In that way, the Congressional Defendants' claim of legislative immunity is more appropriately categorized as a personal defense under Rule 12(b)(6), rather than a blanket challenge to the Court's jurisdiction over the entire action, including the RNC's claims against Salesforce. *See Rowland*, 494 F.3d at 77 n.4; *Taylor*, 720 F. Supp. 2d at 949–50 ("Although absolute immunity under the Speech or Debate Clause has been referred to as a 'jurisdiction bar,' *see, e.g.*, *Fields v. Office of Johnson*, 459 F.3d, 1, 13, (D.C. Cir. 2006), it is more appropriately characterized as a defense to suit."). At bottom, unlike sovereign immunity, legislative immunity does not strip federal courts of subject-matter jurisdiction.

## B. The Congressional Defendants are already party defendants; joinder is therefore feasible.

"Rule 19(a) sets forth three circumstances in which joinder is not feasible: [1] when venue is improper, [2] when the absentee is not subject to personal jurisdiction, and [3] when joinder would destroy subject matter jurisdiction." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (citing Rule 19(a)); *see also Delgado-Caraballo v. Hosp. Pavia Hato Rey, Inc.*, 889 F.3d 30, 36 (1st Cir. 2018); *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 634–35 (7th Cir. 2009); Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1610 (3d ed.). While the RNC disputes the Congressional Defendants are "required" parties under Rule 19(a)(1) (Pls.' Suppl. Br. 6–7)—a predicate to examining the feasibility of joinder—joinder is undoubtably feasible in this case. In their Supplemental Brief, the Congressional Defendants do not explain ***why*** joinder

is infeasible under Rule 19. (*See* Cong. Defs.' Suppl. Br. at 4.) Because venue is proper in the District of Columbia and the Court has personal jurisdiction over the parties, the RNC takes the Congressional Defendants to argue that hypothetically "joining" them would destroy the Court's subject-matter jurisdiction. If so, the Congressional Defendants are mistaken.

The Congressional Defendants' argument is based on the belief that legislative immunity operates the same as sovereign immunity. As explained, this is incorrect. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). And, as discussed in subsection I.A, *supra*, sovereign immunity operates to deny the court subject-matter jurisdiction over a lawsuit because of the defendant's sovereign status. *See United States v. Orleans*, 425 U.S. 807, 814 (1976) (United States); *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489 (1983) (foreign sovereigns); *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998) (tribal sovereigns); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (state sovereigns). The same cannot be said for legislative immunity under the Speech or Debate Clause. It is a personal defense that Members of Congress and their aides enjoy—not a limitation on federal jurisdiction.

To this, an absent party's unique defenses unrelated to subject-matter jurisdiction or personal jurisdiction do not make joinder infeasible under Rule 19(a). *See, e.g.*, *Dyke v. Gulf Oil Corp.*, 601 F.2d 557, 566 (Temp. Emer. Ct. App. 1979) ("a claim need not be invulnerable" to dismissal "to sustain joinder" under Rule 19(a)); *Delgado-Caraballo*, 889 F.3d at 38 (reversing district court's finding that joinder was infeasible where party argued the absent parties had a unique statute-of-limitations defense); *Diodem, LLC v. Lumenis Inc.*, No. CV03-2142 GAF (RCX), 2005 WL 6219898, at *16 (C.D. Cal. Sept. 14, 2005) (finding defendants "offer[ed] no authority, nor [did] the Court discover[] any, for the proposition that the Court, in determining feasibility of joinder, may take into account factors—such as prejudice or joint defense agreements—that go beyond the three circumstances set forth in Rule 19(a)").

This case illustrates this point. To restate the rule: if an absent party is required under Rule 19(a), the next question is whether the absent party can be joined. Here, of course the

Congressional Defendants can be joined. Not only can they be joined—but the RNC in fact named them as defendants is its Complaint. So far, the Congressional Defendants have briefed (and argued at a hearing) in opposition to the RNC's Motion for Preliminary Injunction, including arguing the merits of the RNC's claims (*see generally* Cong. Defs.' Opp'n; Apr. 1 Tr.); requested the Court advance its determination of the entire case under Rule 65 (Cong. Defs.' Opp'n at 3); and filed a supplemental brief, in part, asking the Court to resolve the merits of the RNC's claims against all parties (Cong. Defs.' Suppl. Br. at 13–17). Make no mistake, the Congressional Defendants have been joined and have vigorously litigated this case.

Based on this, accepting the Congressional Defendants' argument that "[j]oinder of the Congressional Defendants is … not feasible under Rule 19" would be a strange finding. The Court would have to: *first* find it has jurisdiction over the case and the parties, including the Congressional Defendants; *second* find that the Congressional Defendants are entitled to legislative immunity under the Speech or Debate Clause, which would require a finding that the RNC's no-legitimate-legislative-purpose and H. Res. 503 claims fail; *third* find that dismissal of the Congressional Defendants makes them an "absent" party for purposes of Rule 19; *fourth* find that the now-absent Congressional Defendants are required parties; and *fifth* find that it is infeasible to join the Congressional Defendants to the case, even though the Congressional Defendants would have already litigated the case to a final resolution. This cannot be right.

Joinder of the Congressional Defendants *is* feasible and has already been accomplished. Further, even if the Congressional Defendants are subject to dismissal under the Speech or Debate Clause, their legislative immunity defense does not destroy the Court's jurisdiction over the RNC's claims against Salesforce. Thus, Rule 19 does not require dismissal of the case.

### C.    The Congressional Defendants are not indispensable parties.

Even if it could be argued that the—already joined—Congressional Defendants are parties that "must be joined" under Rule 19(a) and who are "required to be joined" under Rule 19(b), there can be no question that under the particular facts of this case, the litigation may proceed in their prospective absence in "equity and good conscience." This is because, as argued

7

in the RNC's Supplemental Brief, there has been no—and given the posture of this case there cannot be any—prejudice to the interests of the Congressional Defendants, and dismissal would leave the RNC without any remedy for its constitutional injuries.

To begin, it is simply impossible that the Congressional Defendants' interest in the enforcement of the Subpoena could be prejudiced in their absence—because they have not been absent. They have briefed and argued their interests since the inception of this matter.[1] Indeed, they now—without any hint of irony—have used their position in this case to argue in the alternative for (1) a judgment dismissing the action under Rule 19 to avoid prejudice to their interests and (2) a judgment on the merits of their defenses to the RNC's allegations of constitutional injury. (Cong. Defs.' Suppl. Br. at 13–17.) Because the Court has agreed to consolidate the merits of this action with its determination of the RNC's Motion for Preliminary Injunction, the Court's judgment will necessarily be rendered with the Congressional Defendants present. This makes the concern of judgment in the absence of a required defendant articulated in Rule 19(b)(1) inapplicable to the procedural facts of this case.[2]

---

[1] This is consistent with other cases involving congressional subpoenas issued to third parties. In those cases, the congressional defendants intervened "as a matter of right" for the purpose of protecting their interests. *See, e.g.*, Cong. Defs.' Consent Mot. to Intervene at 7, 8, *Trump v. Mazars USA, LLP*, No. 1:19-cv-01136-APM (D.D.C. Apr. 26, 2019) (congressional defendants describing themselves as "the real party in interest" and stating "[t]he Committee has a substantial, legally protected interest in ensuring a proper response to the subpoena it issued to Mazars in furtherance of the Committee's legislative and oversight authorities"). In a strategic about-face, now the Congressional Defendants want out; and, not only do they want out, but they contend that their departure is fatal to the RNC's claims against Salesforce.

[2] Even if the Court finds this factor weighs in favor of the Congressional Defendants, it is not "dispositive," as the Congressional Defendants argue. (*See* Cong. Defs.' Suppl. Br. at 5.) The D.C. Circuit recently rejected this notion, concluding that, even if the absent sovereign is prejudiced under Rule 19(b)(1), the court must nonetheless "proceed[] to weigh each of the Rule 19(b) equitable factors." *de Csepel v. Republic of Hungary*, 27 F.4th 736, 749 (D.C. Cir. 2022) (citing *Republic of Philippines v. Pimentel*, 553 U.S. 851, 865–72 (2008)) (rejecting appellant's argument that *Pimentel* rendered the absent sovereign's interest dispositive in the Rule 19(b) analysis). Instead, a "'case specific' analysis identifying 'substantial argument[s] for allowing the action to proceed'" is required. *Id.* (quoting *Pimentel*, 553 U.S. at 863).

Avoiding nonexistent prejudice on absent-in-name-only Congressional Defendants would not produce a result pleasing to "equity and good conscience." Here, the judgment's relief can be limited to the subpoena at issue (allowing the Congressional Defendants to issue a replacement) satisfying Rule 19(b)(2); an injunction against Salesforce would be adequate and dispose of the entire action in keeping with Rule 19(b)(3); and, critically, the RNC would be without any remedy—let alone an "adequate remedy"—in contravention of Rule 19(b)(4) if the action were dismissed. The absence of another remedy is emphasized by the Congressional Defendants' risible quip that, "The RNC did have another forum before which it could seek relief: Congress," and that the RNC could have raised "particularized concerns with certain aspects of the subpoena … with the Select Committee." (Cong. Defs' Suppl. Br. at 7.) At the April 1 hearing, the Court asked the Congressional Defendants whether they would engage in negotiations regarding the RNC's "particularized concerns." The Congressional Defendants were unambiguous:

> **The Court:** All right. Very well.
>
> Mr. Letter, do you want to respond to any of that? Very briefly. And I guess the thing – the question that came to my mind was simply – I don't mean to suggest you'd be obligated to do this. But I just ask, for my information, whether the committee has any plans to engage with the RNC in any way to preview the kind of information you anticipate you will receive in connection with this subpoena?
>
> **[Counsel]:** May I have one moment to consult? I'll be right back.
>
> **The Court:** Yes.
>
> **[Counsel]:** Sorry, Your Honor. I'll answer your question, and then if I may just make – I'll be super brief.
>
> **The Court:** Uh-huh.
>
> **[Counsel]:** Right. No – remember, we are not seeking the data of the RNC. We're seeking records from Salesforce. And – no. So we have no – we have no plans to [engage with the RNC on the Subpoena].

(Apr. 1 Tr. at 132:21–133:10.) The Congressional Defendants are not indispensable parties to this action and dismissal of this action in their judicially created absence would offend equity and good conscience. The Court should not go down this path.

9

> **D.  Dismissing the RNC's claims against Salesforce under Rule 19 would—for the first time—expand the scope of the Speech or Debate Clause to nonimmune parties and would cut off redress the Supreme Court and D.C. Circuit have recognized.**

The Congressional Defendants concede it would be "novel" to use Rule 19 to avoid the RNC's direct claims against Salesforce. (Cong. Defs.' Opp'n at 2.) That is undoubtably true. Rule 19 was adopted in 1938, Fed. R. Civ. P. 19 (1938), and can be traced back to *Shields v. Barrow*, 58 U.S. 130 (1854). A Boolean search on Westlaw for "Speech or Debate Clause" reveals 760 reported decisions by federal courts, with over one-third of those decisions coming from either the Supreme Court, the D.C. Circuit, or the D.C. District Court. And, as the RNC noted in its briefing on the Motion for Preliminary Injunction, dozens of that smaller subset were decided in the last 24 months. (*See* Reply Br. at 1 n.1.) Despite the rich history of litigation under the Speech or Debate Clause—which has accelerated during the 116th and 117th Congresses— no party has come forward with a case in which a court relied on Rule 19 to dismiss claims against defendants who did not otherwise enjoy legislative immunity.

So, to describe the Congressional Defendants' new attraction with Rule 19 as "novel," is muted at best. Rather, it is unheard-of and would radically change how legislative immunity cases are litigated, particularly in cases challenging congressional subpoenas issued to third-party custodians and vendors. In such a case, the true target of the subpoena (i.e., the party who, like the RNC, owns the information held by a third party) would be without a remedy to protect its constitutional interests. Instead, when the true target sues the third-party holder, congressional parties would intervene for the limited purpose of raising legislative immunity and Rule 19. Per the Congressional Defendants, that inquiry would turn solely on whether the congressional parties had a "legitimate legislative purpose." Based on this, the result would create two classes of congressional subpoena challenges: challenges to subpoenas issued to true targets, who can raise constitutional objections to the subpoena, prompting Congress to either recognize the objection or seek court intervention to enforce the subpoena (either through contempt or civil enforcement); and challenges to subpoenas issued to third parties who possess the true target's

10

information, in which case the true target may not raise constitutional objections. In this world, whether a violation of the target's constitutional rights is redressable turns on **who** possesses the target's information. The game then becomes one of targeting third parties.

There is a good reason no party has unearthed a Speech-or-Debate-Clause/Rule 19 case—because the resulting dichotomy from accepting the Congressional Defendants' newfound argument is untenable. Perhaps more importantly, this outcome is against precedent, *see, e.g.*, *AT&T II*, 567 F.2d at 129 ("[T]he fortuity that documents sought by a congressional subpoena are not in the hands of a party claiming injury from the subpoena should not immunize that subpoena from challenge by that party."); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 516 (1975) (Marshall, J., concurring) ("The Speech or Debate Clause cannot be used to avoid meaningful review of constitutional objections to a subpoena simply because the subpoena is served on a third party."); *cf. Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2035 (2020) (expressing concern with Congress "sidestep[ping] constitutional requirements any time … information is entrusted to a third party—as occurs with rapidly increasing frequency"), which the Congressional Defendants sheepishly acknowledge (*see* Cong. Defs.' Suppl. Br. at 9–10 (noting *Eastland* and *AT&T II* but arguing the courts there did not address Rule 19)).

Further, refusing the Congressional Defendants' preferred application of Rule 19 is in keeping with the aim of the Speech or Debate Clause: to "protect[] Congress against encroachment from the other branches." (*Id.* at 7.) If the Court determines the Congressional Defendants are immune from suit under the Speech or Debate Clause, they should be dismissed. At that point, the Congressional Defendants are free of potential inter-branch inference. That is, they "will [be] protect[ed] … against actions brought by private individuals as well as those initiated by the Executive Branch" in the courts. *See Eastland*, 421 U.S. at 502–03. The Speech or Debate Clause, however, does not provide the same measure of freedom to non-congressional parties. Rather, when properly raised, legislative immunity operates to give Congress a **choice**: to participate in an action in defense of a congressional subpoena (*see* note 1, *supra*), or not. This is no different than the choice Congress has when a subpoena recipient stands on his constitutional

11

objections. Congress may appeal to the courts to enforce the subpoena, or not. A forced application of Rule 19 would abruptly disrupt this constitutional balance.

For many reasons, Rule 19 does not provide a path for avoiding the merits of the RNC's claims against Salesforce. Finding otherwise would chart new ground by expanding legislative immunity and would do violence to constitutional rights along the way.

## II.    Congress Is Entitled No Deference in Determining the RNC's Constitutional Rights.

The Congressional Defendants exhaust pages in their Supplemental Brief urging the Court to defer to them in deciding the merits of the RNC's claims, including its constitutional claims. (*See* Cong. Defs.' Suppl. Br. at 13–17; *id.* at 14 ("Therefore, if this Court considers the merits of the RNC's claims … it should do so with appropriate deference to Congress … .").) To be sure, when supported by a valid legislative purpose, Congress is entitled to a measure of deference in conducting investigations. *See Watkins v. United States*, 354 U.S. 178, 187 (1957). But any deference afforded to Congress in pursuing legislative action has no place in the adjudication of the RNC's constitutional rights. *Id.* at 204 ("No doubt every reasonable indulgence of legality must be accorded to the actions of [Congress]. But such deference cannot yield to an unnecessary and unreasonable dissipation of precious constitutional freedoms.").

The Court's inquiry here falls squarely within the confines of its Article III authority. Indeed, the constitutional claims presented by the RNC "require no more than an interpretation of the Constitution." *Powell v. McCormack*, 395 U.S. 486, 548 (1969). "Such a determination falls within the traditional role accorded courts to interpret the law, and does not involve a 'lack of the respect due (a) coordinate (branch) of government,' nor does it involve an 'initial policy determination of a kind clearly for nonjudicial discretion.'" *Id.* at 548–49 (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). The mere fact that the RNC's claims involve a dispute over congressional action does not rid this Court of its constitutional mandate. "Our system of government [at times] requires that federal courts … interpret the Constitution in a manner at variance with the construction given by another branch"—such as Congress. *Id.* at 549. "The alleged conflict that such an adjudication may cause cannot justify the courts' avoiding their

12

constitutional responsibility." *Id.* The same is true here. Congressional deference does not demand that the Court avoid its constitutional responsibility.

## CONCLUSION

Based on the foregoing, the RNC respectfully requests that the Court grant the RNC's motion for preliminary injunction and enter an order enjoining Defendant Salesforce from producing information, or sitting for a deposition, in response to the Salesforce Subpoena.

Respectfully submitted this 12th day of April, 2022.

STATECRAFT PLLC

By:   *s/ Christopher O. Murray*
      Christopher O. Murray
      1263 Washington Street
      Denver, CO 80203
      Tel:  602.362.0034
      Email:  chris@statecraftlaw.com

*Attorney for Plaintiff Republican National Committee*

13

**CERTIFICATE OF SERVICE**

I certify that on April 12, 2022, I filed this **Plaintiff's Supplemental Response Brief in Support of Its Motion for Preliminary Injunction** via the CM/ECF system for the U.S. District Court for the District of Columbia, which will cause a copy to be served on all registered parties.

*s/ Christopher O. Murray*
Christopher O. Murray

14