**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

REPUBLICAN NATIONAL COMMITTEE,

*Plaintiff*,

v.

NANCY PELOSI, *et al.*,

*Defendants*.

Case No. 1:22-cv-00659 (TJK)

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR AN INJUNCTION PENDING APPEAL**

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004

ARNOLD & PORTER
601 Massachusetts Ave, NW
Washington, D.C. 20001

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

STANDARD ............................................................................................................................... 2

ARGUMENT .............................................................................................................................. 2

I.   The Standard Urged by the RNC Is Incorrect................................................................ 3

II.  The RNC Has Not Established a Sufficient Irreparable Injury................................. 5

III. An Injunction Pending Appeal Would Substantially Injure the Select Committee and
     Disserve the Public Interest ........................................................................................ 6

IV. The RNC Did Not Make a "Strong Showing" That This Court's Judgment Would Be
     Reversed on Appeal .................................................................................................... 7

CONCLUSION ......................................................................................................................... 13

## INTRODUCTION

The RNC falls far short of establishing entitlement to the "exceptional remedy" of an injunction pending appeal. *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017). The RNC has not shown that it is "likely that [this Court] abused its discretion in denying a preliminary injunction" and in dismissing this case. *Id.* (internal quotation marks and citation omitted). And the factors required for an injunction pending appeal weigh strongly against the injunction that the RNC now seeks. The request for an injunction pending appeal should therefore be denied.

The Select Committee is in the midst of an essential investigation into one of the most egregious attacks on the United States Capitol and on the American system of government in our country's history. That investigation is right now at a critical stage, with hearings scheduled for next month. The Select Committee is continuing to gather material central to these hearings, and the information sought from the RNC will be of considerable value in that effort. An injunction pending appeal would deprive the Select Committee of key information relevant to its investigation, its public hearings, and its consideration of legislation. Further delay in obtaining the materials sought by the subpoena could obscure key facts and affect Congress' efforts to prevent January 6th from recurring in our next election cycle or in the future.

Although the RNC attempts to recast the relevant question here as whether the RNC's case raises issues on which reasonable minds could differ, that is not the legal standard. An applicant's likelihood of success on the merits is a key ingredient to securing an injunction pending appeal. And, as this Court has already concluded, the RNC does not have a likelihood of success on the merits.

The RNC makes much of the irreparable injury element, but that is meaningless unless a plaintiff has a viable claim on the merits. If not, it suffers no legally cognizable injury at all. For these reasons alone, the Court should deny the motion.

Furthermore, Defendants have already consented to a brief administrative stay to allow the RNC to seek a stay pending appeal from the D.C. Circuit. As a result, this Court need not itself impose an injunction pending appeal in order for these issues to receive a fair airing in the court of appeals.

## STANDARD

An injunction pending appeal, like a stay, is not "a matter of right," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). "In determining whether to stay an order pending appeal, the Court considers the same four factors as it would in resolving a motion for a preliminary injunction: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re Special Proc.*, 840 F. Supp. 2d 370, 372 (D.D.C. 2012) (internal quotation marks and citation omitted). On a motion for a stay or injunction pending appeal, "it is the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Id.* (internal quotation marks and citation omitted).

## ARGUMENT

The RNC has not satisfied the stringent requirements for an injunction pending appeal. This Court has already correctly determined that the RNC failed to establish an entitlement to an injunction, and that it is not likely to succeed on the merits. The RNC "cannot show that 'three [non-merits] factors tip sharply in the movant's favor,' as required before a court can even

2

arguably relax the likelihood of success on the merits standard." *MediNatura, Inc. v. Food & Drug Admin.*, No. 20-2066, 2021 WL 1025835, at *7 (D.D.C. Mar. 16, 2021) (quoting *In re Special Proc.*, 840 F. Supp. 2d at 372).

## I.     The Standard Urged by the RNC Is Incorrect

As a preliminary matter, the RNC is incorrect in urging that the Court should apply a "more flexible" standard now that it moves for an injunction pending appeal.  Pl.'s Mem. of Pts. & Auth. ISO Mot. for Inj. Pending Appeal ("Mem.") at 3 (internal quotation marks omitted). The D.C. Circuit has never suggested that a less demanding standard applies when a movant seeks an injunction pending appeal.  To the contrary, the Supreme Court has been clear that "the applicant" seeking an injunction pending appeal "must meet a heavy burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal." *Williams v. Zbaraz*, 442 U.S. 1309, 1311 (1979) (Stevens, J., in chambers) (internal quotation marks and citation omitted).  That standard should in no sense be relaxed where the Court has determined that the Legislative Branch is entitled to the information it seeks in carrying out its Constitutional functions.  Any further delay imposed on the Select Committee would negatively affect the separation of powers concerns that this Court has already considered.  The same separation of powers considerations that underlay this Court's Opinion counsel against granting the RNC's motion for an injunction pending appeal.

For its part, the D.C. Circuit has described an injunction pending appeal as an "exceptional remedy," *John Doe Co.*, 849 F.3d at 1131, and has made clear that the movant must satisfy the same "stringent requirements" that apply to a preliminary injunction, *Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 877 F.3d 1066 (D.C. Cir. 2017) (per curiam).

Far from adopting a less stringent standard for injunctions pending appeal, the D.C. Circuit has suggested, following the Supreme Court's decision in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), that proving a likelihood of success on the merits is an independent, free-standing requirement, and that it is not enough to show a "serious legal question," even where the other factors strongly favor issuing an injunction.  *See Citizens for Resp. & Ethics in Washington v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (noting appellant's failure to show a likelihood of success on the merits was an "arguably fatal flaw" for a stay application pending appeal) (citing *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014)) which declined to decide whether "a plaintiff need only raise a 'serious legal question'" if "the other three factors strongly favor issuing an injunction"); *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction[.]'").

The primary case on which the RNC relies, *MediNatura*, does not support its position. There, the district court held that "in rare cases, the threat of irreparable harm may be so grave and the balance of equities may favor a plaintiff so decisively that an injunction pending appeal of a difficult or novel legal question may be proper."  2021 WL 1025835 at *6.  In that court's view, other courts in this district "have relied on the 'serious legal question' standard for likelihood of success on the merits 'only when the other three factors tip sharply in the movant's favor.'"  *Id.* (quoting *In re Special Proc.*, 840 F. Supp. 2d at 372).  But even if a less demanding standard for an injunction pending appeal is ever appropriate, under the reasoning of *MediNatura* an injunction is not warranted here.  As explained below, the RNC has failed to show irreparable harm, let alone "grave" irreparable harm, and the other three factors "tip sharply" in Defendants' favor.  2021 WL 1025835 at *6-7.

4

If anything, the RNC's burden here is even higher than in the typical case.  Where, as here, the defendants are members of a coordinate branch of government, "the well-established rule" is "that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs," and the Supreme Court has made clear that lower courts "routinely applying . . . the traditional standards governing more orthodox stays" are "quite wrong" to do so in cases involving government defendants.  *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974) (internal quotation marks omitted).

## II.     The RNC Has Not Established a Sufficient Irreparable Injury

The RNC's theory of injury fails because it remains contingent on the same flawed theory of harm that was fatal to the RNC's theory of the case.  The RNC does not identify any new injury beyond its prior assumption that, if Salesforce produces the requested material and if that material were to become public, the information "could" potentially be used to create a "mosaic" of its email-outreach strategy that its political rivals might then use to better compete with the RNC in the digital arena.  ECF No. 8-1 at 21; ECF No. 6 ¶ 88; ECF No. 8-2 ¶¶ 18, 24-25.  But, as this Court already explained, "whatever competitive harm may come to the RNC from disclosure of the actual material at issue is too 'logically attenuated' and 'speculative' to defeat the Select Committee's weighty interest."  Op. at 47 (quoting *United States v. Salvation Army S. Territory*, No. 13-mc-341, 2013 WL 2632639, at *3 (D.D.C. June 12, 2013)).

The RNC argues (Mem. at 7) that "[b]ecause the RNC is likely to succeed on its constitutional claims, irreparable harm necessarily follows."  But far from concluding that the RNC is likely to succeed on its constitutional claims, this Court has already held that the RNC's constitutional claims lack merit.  *See* Section IV, *infra*.  In any event, even if the RNC had established an irreparable injury, that alone would not be enough.  "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right,

even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks and citations omitted).

### III.  An Injunction Pending Appeal Would Substantially Injure the Select Committee and Disserve the Public Interest

The RNC advances (Mem. at 7-8) the same argument for the balance of hardship and public interest prongs: the complaint alleges violations of constitutional rights, and therefore these two prongs have been met.  Courts, however, do not accept this logic involving constitutional claims.

As to balance of hardship, as noted above, Defendants are at a critical juncture as the Select Committee approaches public hearings and is attempting to promptly complete its investigative efforts given the gravity of the attack on Congress as an institution, the people that sought to protect it, and the Constitutional functions occurring that day.  This threat has not dissipated, and the Select Committee has been charged with making recommendations for legislative and other changes that will prevent future, similar attacks.  If the Select Committee cannot promptly receive the requested materials that Salesforce is prepared to provide, the important Constitutional activities with which the Select Committee has been charged will be hampered by a coordinate branch's instruction to deny Congress the information to which it is entitled.  Congress would thus be less informed and less able to develop and propose effective remedial legislation and other measures necessary to prevent the erosion of our democratic institutions for their timely enactment by Congress.  And, as another judge in this district noted (in a case on which the RNC relies, *see* Mem. at 9), "the public interest also rests in carrying out Congress's will." *Confederated Tribes of Chehalis Rsrv. v. Mnuchin*, No. 20-01002, 2020 WL 3791874, at *2 (D.D.C. July 7, 2020).  Here, Congress's will is for the Select Committee to perform its investigation and make its recommendations.

Moreover, the D.C. Circuit has already recognized the vital and pressing nature of the Select Committee's work. *See Trump v. Thompson*, 20 F.4th 10, 35 (D.C. Cir. 2021) ("[T]here would seem to be few, if any, more imperative interests squarely within Congress's wheelhouse than ensuring the safe and uninterrupted conduct of its constitutionally assigned business."), *cert. denied*, 142 S. Ct. 1350 (2022); *see also id.* at 16 (citing the current Executive's determination that Congress had a "'compelling need' to investigate 'an unprecedented effort to obstruct the peaceful transfer of power' and 'the most serious attack on the operations of the Federal Government since the Civil War.'").

Defendants urge this Court to "give serious weight to the obviously disruptive effect which the grant of the temporary relief awarded here [is] likely to have" on the Select Committee's investigation. *Sampson*, 415 U.S. at 83. The continued denial of the requested information is not warranted given the great stakes of this investigation and the ongoing threat to our democracy. Thus "the balance of equities and public interest favor [Defendants], such that [the RNC] cannot show that "three factors tip sharply in the movant's favor," as required before a court can even arguably relax the likelihood of success on the merits standard. *MediNatura*, 2021 WL 1025835 at *7 (quoting *In re Special Proc.*. 840 F. Supp. 2d at 372).

## IV.   The RNC Did Not Make a "Strong Showing" That This Court's Judgment Would Be Reversed on Appeal

This Court gave full consideration to each of the RNC's claims and rejected them. And, contrary to the RNC's suggestion (Mem. at 1), this Court's Opinion does not indicate that "there were no less than a half-dozen 'close' calls on which the Court rightfully acknowledged that reasonable minds could disagree." Indeed, the quotation marks around "close" appear to be incorrect, as the Opinion never uses that word in the manner the RNC indicates. The RNC cites

(Mem. at 8-13) five merits issues on which it maintains it is likely to prevail on appeal.[1]  But Defendants are likely to prevail—and, indeed *have prevailed* before this Court—on all of these issues, and in no instance did the Court indicate that the issue was close, even though, as the RNC notes (Mem. at 6), it described a few of the RNC's arguments as "reasonable."  Nor did the Court "hypothesiz[e] that it might have decided the issues differently had the circumstances been different on the margins."  *Id.*[2]

The RNC mainly argues (Mem. at 9-11) that it is likely to prevail on its First Amendment claim.  But nothing in the Court's consideration of this claim supports that position.  As an initial matter, the RNC cannot argue on appeal (and does not argue here) that the Court applied the wrong standard.  The Court employed exacting scrutiny and narrow tailoring—the very standards the RNC itself proposed.  Op. at 41-43.

Applying these standards, the Court ruled against the RNC on its First Amendment Claims for three reasons.  First, the Court held that "the Select Committee has a strong—that is, a 'sufficiently important'—interest in the records demanded."  Op. at 44 (quoting *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2383 (2021)).  Second, "the strength of the Select Committee's interest here reflects the seriousness of the 'actual burden' the subpoena imposes on the RNC's First Amendment rights."  *Id.* at 45 (quoting *Bonta*, 141 S. Ct. at 2383).  Third, "the Select Committee's demand is narrowly tailored to its interest."  Op. at 47.

---

[1] The RNC does not mention that, before overturning this Court's decision on the merits on any of these five issues, an appellate court would first have to reach, and resolve in the RNC's favor, the question of whether Salesforce qualifies as a "state actor" for purposes of these claims. *See* Op. at 25 (assuming without deciding that Salesforce is a state actor in this context).

[2] In a few instances, the Court noted that "on this record" or "on the record before it" or "on the record here."  Op. at 33, 47.  But the record is closed, and the (speculative) possibility that the RNC would prevail on a different record or under different circumstances is irrelevant to its likelihood of success on appeal on *this* record and *these* circumstances.

The RNC contests only the second of these three.  This Court described the RNC's burden arguments as "not unreasonable"—but then concluded that, "upon closer inspection, less is at stake than the RNC represents."  Op. at 45.  As the Court has noted, some of the information that the RNC argued would cause harm upon release is already publicly available, and the RNC has provided no basis for the Court to conclude that its communications with Salesforce would include discussions about any proprietary data related to the performance of its email campaigns. *Id.* at 45-46.

As for the internal information that would be produced, the Court held that "this alleged burden does not outweigh the Select Committee's interest," *id.* at 46, carefully distinguishing *AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003), and concluding that "whatever competitive harm may come to the RNC from disclosure of the actual material at issue is too logically attenuated and speculative to defeat the Select Committee's weighty interest," Op. at 47 (internal quotation marks omitted).  The RNC appears to contest only the "logically attenuated and speculative" point, and does so on the ground (Mem. at 11) that the RNC's declarant stated that only three RNC employees had access to all of the relevant Salesforce platforms on which the data to be produced is stored.  This is insufficient to establish the necessary likelihood of success on appeal.  The fact that the RNC considers at least some of the relevant Salesforce platforms to be sensitive does not prove that the disclosure of the specific information at issue represents a non-speculative harm, let alone one sufficient to overcome the Select Committee's compelling need for these records.

The RNC cites four additional issues as warranting reversal on appeal.  None does.  First, the RNC argues (Mem. at 11-12) that it was improper to credit Defendants' representations to the Court and to Salesforce that the subpoena does not seek certain categories of records.  But as this

9

Court noted, and the RNC does not contest, "courts regularly credit discussion that narrows disputes over congressional subpoenas."  Op. at 17 (citing *Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34, 37 (D.D.C. 2018)).

Second, the RNC argues (Mem. at 13) that the Select Committee's composition violates its authorizing resolution because the Select Committee has only nine members even though its authorizing resolution provides that "The Speaker shall appoint 13 members," H. Res. 503, 117th Cong. § 2(a) (2021).  The RNC notes that the Court described this argument as "not an unreasonable position"—but the Court then provided multiple reasons for why that position is plainly incorrect, and why the judiciary should not intrude on the House's interpretation of its own rules.  Op. at 30-31 (noting that the House views the Select Committee as "duly constituted and empowered to act under its authorizing resolution" with nine members; and that, if the Court held otherwise, the Court itself "would effectively be making the Rules," in violation of the Rulemaking Clause (quoting *United States v. Rostenkowski*, 59 F.3d 1291, 1306-07 (D.C. Cir. 1995)).  The only two other courts to have considered this issue have also rejected this attack on the House's internal proceedings.  *Budowich v. Pelosi*, No. 21-cv-3366 (JEB) (D.D.C. Jan. 20, 2022 Oral Arg. Tr. 34:1–5, 8–10); *Eastman v. Thompson*, 8:22-cv-00099-DOC-DFM (C.D. Cal. Jan. 25, 2022), ECF No. 43 at 9 & n.12.

The RNC's argument that "what matters here is that reasonable minds could disagree with the Court on the use of *shall* in subsection 2(a)" (Mem. at 12) turns both the injunction standard and the underlying merits standard on their heads.  The injunction standard requires an applicant to show a *likelihood* of success on the merits, not a mere possibility because reasonable minds may disagree.  As to the merits, a court's jurisdiction to interpret internal rules of a House of Congress is limited to situations where such interpretation "requires no resolution of

ambiguities." *United States v. Durenberger*, 48 F.3d 1239, 1244 (D.C. Cir. 1995)—*i.e.*, where reasonable minds *could not* disagree. "Where, however, a court cannot be confident that its interpretation is correct, there is too great a chance that it will interpret the Rule differently than would the Congress itself; in that circumstance, the court would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone." *Rostenkowski*, 59 F.3d at 1306-07.

Third, the RNC argues (Mem. at 12-13) that the subpoena violates the Fourth Amendment. This Court correctly concluded that the RNC's Fourth Amendment challenge is squarely foreclosed by *McPhaul v. United States*, 364 U.S. 372 (1960). The RNC suggests (Mem. at 13) that the Court's Fourth Amendment analysis "appears influenced by the Court's determination of the nature of the potential harm to the RNC under the First Amendment." Even if so, the RNC's Fourth Amendment claim was properly dismissed as well.

Finally, the RNC argues (Mem. at 13) that the subpoena was not issued in service of a valid legislative purpose. The RNC asks for an "opportunity to test the Court's analysis before a higher court" because "the Court acknowledged that it is 'perhaps a reasonable conclusion to draw' that the 'subpoena is serving an additional illegitimate, quasi law-enforcement purpose.'" *Id.* (quoting Op. at 36). But the RNC ignores the fact that this Court dismissed this challenge in the very same sentence: "[E]ven assuming this evidence shows that the subpoena is serving an additional, illegitimate, quasi-law-enforcement purpose—perhaps a reasonable conclusion to draw—precedent dictates that this purpose 'takes nothing from the lawful object' the Select Committee is also pursuing." Op. at 36-37 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 180 (1927)).

\*     \*     \*

The "exceptional remedy of an injunction pending appeal," *John Doe Co.*, 849 F.3d at
1131, is not appropriate here.  This Court already denied the RNC's motion for a preliminary
injunction and dismissed the RNC's case.  An injunction pending appeal would allow the RNC
to delay and potentially undermine the Select Committee's critical work.  The RNC should not
be allowed—in the words of another judge on this Court in another case seeking to interfere with
the Select Committee's work—to "do an end run around the preliminary injunction factors
simply because [it] seeks appellate review.  Rather, the court maintains 'a considerable
reluctance in granting an injunction pending appeal when to do so, in effect, is to give the
appellant the ultimate relief being sought.'" *Trump v. Thompson*, No. 21-cv-2769, Order, ECF
43 at 5 (D.D.C. Nov. 10, 2021) (quoting 11 Wright & Miller, Fed. Prac. & Proc. Civ., § 2904 (3d
ed. 2021)).  As in *Trump v. Thompson*, "[w]ere the court to grant Plaintiff's motion, the effect
would be to give Plaintiff the fruits of victory whether or not the appeal has merit." *Id.* (internal
quotation marks and brackets omitted).  "Plaintiff is not entitled to injunctive relief simply
because the procedural posture of this case has shifted." *Id.*; *see also MediNatura*, 2021 WL
1025835 at \*7 ("[S]etting the bar for obtaining an injunction pending appeal too low would
undermine the demanding standard for a preliminary injunction, permitting movants to skirt that
standard simply by appealing any denial.").

**CONCLUSION**

Defendants respectfully request that the Court deny the RNC's motion for an injunction pending appeal.

Respectfully submitted,

Douglas N. Letter
  *General Counsel*
Todd B. Tatelman
  *Principal Deputy General Counsel*
Eric R. Columbus
  *Special Litigation Counsel*
Michelle S. Kallen
  *Special Litigation Counsel*
Stacie M. Fahsel
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

-and-

SHER TREMONTE LLP
Justin M. Sher
Michael Tremonte*
Noam Biale
Maya Brodziak*
Kathryn E. Ghotbi*
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

-and-

ARNOLD & PORTER
John A. Freedman

13

Paul Fishman
Amy Jeffress
601 Massachusetts Ave, NW
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com

May 6, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2022, I caused the foregoing document to be filed via the

CM/ECF system for the U.S. District Court for the District of Columbia, which I understand

caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter