**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| REPUBLICAN NATIONAL COMMITTEE, | ) ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | **Case No. 1:22-cv-00659-TJK** |
| NANCY PELOSI, et al., | ) ) ) | |
| *Defendants*. | ) ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR INJUNCTION PENDING APPEAL**

Christopher O. Murray
STATECRAFT PLLC
1263 Washington Street
Denver, CO 80203
Tel:  602.362.0034
Email:  chris@statecraftlaw.com

*Attorney for Plaintiff Republican National Committee*

# INTRODUCTION

The Congressional Defendants' Opposition to the RNC's Motion for Injunction Pending Appeal continues these Defendants' bespoke attempts to frustrate judicial inquiry into the RNC's constitutional claims. At the outset of this case, the Congressional Defendants hinted that the Speech or Debate Clause may foreclose the RNC's claims. Only when confronted directly as to whether this argument barred the RNC's claims against Salesforce did the Congressional Defendants—correctly—concede that the Speech or Debate Clause does not immunize Salesforce. Undeterred, the Congressional Defendants next argued that Rule 19 somehow operates to extend protections under the Speech or Debate Clause to prevent the RNC's claims against Salesforce. Indeed, the Congressional Defendants flatly refused this Court's invitation to intervene as defendants as they have done in similar cases challenging the subpoenas they issued to third-party custodians. Now, the Congressional Defendants ask this Court to adopt a blinkered standard under Rule 62 which, contrary to law, would make an injunction pending appeal impossible where a district court has denied an injunction on the merits. All this to prevent an injunction that is—by the Congressional Defendants' own argument—unquestionably necessary to maintain the status quo and to prevent the RNC's constitutional claims from being mooted by Salesforce's production of the documents demanded by the Subpoena. The Court should reject Congressional Defendants' latest overture to foreclose judicial review of the RNC's claims and grant an injunction pending appeal.

# REPLY IN SUPPORT

**I. The Congressional Defendants' Challenge to the RNC's Articulated Legal Standard Is Perplexing and at Best Equivocal.**

While unclear, the Congressional Defendants predictably urge a Rule 62 standard that mirrors the Court's earlier order denying the RNC's motion for preliminary injunction. (*See* Cong. Defs.' Opp'n to Pl.'s Mot. for Injunction Pending Appeal ("Opp'n") at 3–5.) Per the Congressional Defendants, once a district court finds a plaintiff has failed to show a likelihood of success on the merits under Rule 65—no matter how novel or difficult the merits questions may

1

be—by default the plaintiff cannot obtain a stay or injunction pending appeal under Rule 62, unless the plaintiff overcomes the near-impossible hurdle of convincing the court that just ruled against it that the court is likely to be reversed on appeal. The Congressional Defendants are wrong. Rule 62's text is against such a standard; decisions by scores of judges in this District confirm as much; and the Congressional Defendants' litigation position—like other positions taken in this case—is contrary to Congress's position in other cases.

*First*, Rule 62(d)'s text supports the RNC. The rule permits district courts to **grant** injunctions pending appeal "[w]hile an appeal is pending from an interlocutory order or final judgment that … refuses … an injunction." Fed. R. Civ. P. 62(d). Thus, "under the plain language of Rule 62(d)," the applicable "standard for granting an injunction pending appeal is, at least at times, more flexible than a rigid application of the traditional four-part standard applicable to granting a preliminary injunction." *MediNatura, Inc. v. Food & Drug Admin.*, No. CV 20-2066 (RDM), 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021). Not only is the Congressional Defendants' read contrary to the plain text of Rule 62(d), but their view of the standard would render the sequencing required by Fed. R. App. P. 8(a)(1) illogical. It makes no sense for the rules to *require* movants to first ask the district court for a stay or injunction pending appeal of an order denying a preliminary injunction if all that's required of the district court is to rubber-stamp its earlier order. In this were true, there is no difference between a request under Rule 62(d) and a motion for reconsideration.

*Second*, courts in this District have repeatedly rejected the Congressional Defendants' view of the governing standard. *See, e.g.*, *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, 539 F. Supp. 3d 211, 216 (D.D.C. 2021) (granting stay pending appeal and noting "in this Circuit a movant's failure to demonstrate a likelihood of success on the merits does not preclude a stay if they have raised a 'serious legal question on the merits'"); *Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 317 F. Supp. 3d 555, 563 (D.D.C. 2018) (finding "[b]ecause Plaintiffs' appeal presents 'serious legal questions' on the merits, and because the likelihood of irreparable harm, the balance of equities, and the public interest all strongly favor interim relief, the court

exercises its discretion to grant" an injunction pending appeal); *Ctr. for Int'l Env't L. v. Off. of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (granting stay pending appeal, even though the court did not agree with defendants on the merits, because "th[e] case present[ed] an issue of first impression" and because the court's "decision centered on a novel and 'admittedly difficult legal question'"); *Shapiro v. U.S. Dep't of Just.*, No. CV 13-555 (RDM), 2016 WL 3023980, at *8 (D.D.C. May 25, 2016) (granting partial stay and observing that applying traditional preliminary-injunction standard "would put the government to the insurmountable burden of demonstrating to the Court that it is 'likely' that the Court's decision would be reversed if subject to appeal. The Court doubts that the Supreme Court intended to put a putative appellant to such a burden in order to prevent the district court's order from mooting the opportunity for appellate review of that order, especially given that the Federal Rules of Appellate Procedure require an applicant to seek a stay from the district court in the first instance."); *Trump v. Comm. on Oversight & Reform of U.S. House of Representatives*, 380 F. Supp. 3d 76, 104 (D.D.C. 2019) (denying stay pending appeal but recognizing the correct standard is whether movants' showed "their challenge to the Mazars subpoena presents 'serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation and thus for more deliberative investigation'"), *aff'd sub nom. Trump v. Mazars USA, LLP*, 940 F.3d 710 (D.C. Cir. 2019), *vacated and remanded*, 140 S. Ct. 2019 (2020), *and vacated and remanded*, 832 F. App'x 6 (D.C. Cir. 2020).

*Third*, the Congressional Defendants' position on Rule 62 here is puzzling, considering other congressional committees have agreed to relief pending appeal when, absent such relief, the case would be moot. *See, e.g.*, *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of the Treasury*, No. 1:19-CV-01974 (TNM), 2021 WL 5906031, at *23 (D.D.C. Dec. 14, 2021). In *Committee on Ways and Means*, the district court granted the congressional committee's motion to dismiss former President Trump's claims seeking to prevent the Treasury from turning over his tax returns to the committee. *Id.* at *1. While the court agreed with the congressional committee and dismissed Mr. Trump's claims, the court granted a stay pending

appeal because "the absence of a stay could result in the mooting of the case." *Id.* at *23. Notably, the congressional committee did not oppose Mr. Trump's request for relief pending appeal, conditioned upon a joint proposal to the D.C. Circuit for expediated briefing. *See* Emergency Mot. to Continue Dec. 14 Order Pending Appeal at 1–2, *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of the Treasury*, No. 1:19-CV-01974 (D.D.C. Dec. 12, 2021) (Doc. 154); *see also* Joint Mot. to Expedite at 2, *Trump v. Mazars USA LLP*, No. 21-5176 (D.C. Cir. Aug. 16, 2021) (stating the congressional defendants "agree[d] to suspend the time for production set by the subpoena during the pendency of th[e] appeal"). Yet here, the Congressional Defendants stubbornly oppose the RNC's request for relief pending appeal and argue that Rule 62 forecloses an injunction pending appeal despite the obvious mootness issues. The Court should not credit this illogical about-face, but rather should apply the proper legal standard under Rule 62 as articulated by the RNC.

**II.    The Congressional Defendants Offer No Serious Argument on Irreparable Harm.**

The Congressional Defendants hand-wave at the RNC's irreparable-harm argument. (*See* Opp'n at 5–6.) In its motion, the RNC argued that "once the subpoenaed information is within the halls of Congress, its confidential and protected status are gone forever and cannot be rehabilitated. And, more detrimentally, once Congress has the RNC's information, the Speech or Debate Clause renders the RNC's case nonjusticiable and moot." (Pl.'s Memorandum of Points and Authorities in Support of Pl.'s Mot. for Injunction Pending Appeal ("Memo") at 5.) This argument is a direct product of positions the Congressional Defendants advanced in this case. Yet, the Congressional Defendants do not even acknowledge that, absent relief pending appeal, this case would be moot before the D.C. Circuit has a chance to read the briefs.

Without an injunction pending an appeal, Salesforce has said it will comply with the Subpoena; and, if Salesforce complies, the Congressional Defendants have argued no court can order relief. Unless the RNC's motion is granted, the RNC faces "perhaps the most compelling" form of irreparable injury: its appeal may be dismissed as "moot." *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers); *see also Garrison v. Hudson*, 468

U.S. 1301, 1302 (1984) (Burger, C.J., in chambers). Courts "routinely … stay the status quo when" events might "moot the losing party's right to appeal," *John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 206 (D.D.C. 2017); *see also MediNatura, Inc.*, 2021 WL 1025835, at *6 (stating injunctions pending appeal are "especially appropriate where, in the absence of such an injunction, the subject matter of the dispute will be destroyed or otherwise altered in a way that moots the pending appeal"); *Ctr. For Int'l Envtl. Law*, 240 F. Supp. 2d at 22–23 (explaining that movants make "a strong showing of irreparable harm" where disclosure would moot any appeal), and the Congressional Defendants provide no argument to the contrary.

### III. The Congressional Defendants' Claimed Hardship Pales in Comparison to the RNC's and Preserving the RNC's Constitutional Rights is Plainly in the Public Interest.

In one unsupported sentence, the Congressional Defendants dismiss the RNC's hardship and public-interest arguments, claiming that courts do not credit the deprivation of constitutional rights at this step. (*See* Opp'n at 6–7.) The Congressional Defendants' argument misses the mark. The balance-of-equities and public-interest factors "'merge when,' as here, 'the Government is the opposing party,'" *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). And, as the D.C. Circuit has noted, while the Select Committee may have "a legitimate interest" in furthering its legislative prerogative, that interest must yield to constitutional interests. *See id.*; *see also Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("Although the preliminary injunction might temporarily frustrate the federal government's interest in enforcing state and local tax laws, the district court permissibly gave greater weight to the possibility that Gordon could suffer an ongoing constitutional violation while this litigation proceeds.")

The Congressional Defendants' argument both skirts the RNC's significant constitutional hardship and—yet again—fails to articulate a particular hardship they would suffer should the Court grant the RNC's requested relief. Despite the Congressional Defendants' skewed balancing effort, the balance of hardships weighs heavily in favor of the RNC. *First*, the

5

Congressional Defendants gloss over the RNC's permanent deprivation of constitutional rights at issue, arguing that "Courts … do not accept" such arguments when balancing hardships. (*See id.* at 6.) But the Congressional Defendants' opposition does not (and cannot) lessen the RNC's claimed constitutional deprivation, *see Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 386 (D.D.C. 2020) (describing as "unavailing" the government's claimed superior interest in exercising control over an "important tool of foreign policy" because "'[t]he Constitution does not permit [the government] to prioritize any policy goal over' constitutional rights" (quoting *Gordon*, 721 F.3d at 653)), nor does it lessen the reality that without relief pending appeal the RNC will be denied the opportunity to redress its constitutional claims.

*Second*, the Congressional Defendants' claimed hardship is drastically outweighed by the RNC's. The Congressional Defendants assert that, if the Select Committee does not "promptly receive" the RNC materials demanded in the Salesforce Subpoena, the Committee's activities will be "hampered" by the Court. (Opp'n at 6.) Outside of the Congressional Defendants' generalized claim of hardship, the record before the Court is devoid of ***any*** evidence that the Select Committee will be precluded from carrying out its mandate in the absence of the information sought in the Subpoena. Without a doubt, the Committee's work is ongoing and can be completed regardless of the outcome here. True, an injunction pending appeal would temporarily delay resolution of the Subpoena dispute, which is far from the Committee's sole inquiry. But even so, any delay in this narrow aspect of the investigation is just that—temporary. Indeed, the RNC merely seeks an injunction pending appeal to allow the D.C. Circuit to consider the merits of its claims in an expedited appeal. And, while the RNC concedes that, even though resolution of an appeal will take additional time, the RNC has done everything in its power thus far to resolve this case as expeditiously as possible, including meeting tight briefing deadlines on a host of novel constitutional and procedural issues.

The Congressional Defendants' public-interest argument fares no better. Without addressing the wealth of authority affirming that protecting constitutional rights serves the public interest, the Congressional Defendants argue that, without qualification, the public interest "rests

6

in carrying out Congress's will." (*Id.* at 6.) But congressional will alone cannot decide the public-interest question, especially where constitutional rights are in play. Otherwise, the public interest could never favor plaintiffs challenging congressional action. That is not, and cannot be, the law. "[E]nforcement of an unconstitutional law" or subpoena, even when supported by Congress, is "***always*** contrary to the public interest." *See Gordon*, 721 F.3d at 653 (emphasis added). Here, where an injunction pending appeal preserves the RNC's only avenue to protect its constitutional rights, the public interest rests comfortably with the RNC.

At bottom, the Congressional Defendants' broad assertions that one narrow aspect of their investigation will be temporarily hampered feigns in comparison to real, immediate, and irreparable constitutional hardship the RNC will suffer absent relief.

## IV. The RNC is Likely to Prevail on the Merits Before the D.C. Circuit.

Finally, there is a substantial likelihood that the D.C. Circuit may rule in the RNC's favor on the merits of its claims. The Congressional Defendants' opposition essentially argues that, because this Court found against the RNC on the merits, there cannot be a substantial likelihood that the RNC will succeed on the merits. (Opp'n at 10.) This argument ignores the fact the RNC is not asking to re-litigate the merits before this Court but is seeking an injunction pending appeal to preserve its right to test this Court's resolution of several first-impression issues. The question for this Court is simple: is there a substantial likelihood that a higher court may resolve the issues raised by the RNC differently? The answer to this question is clearly yes. As such, the RNC has carried its burden to show a likelihood of success on the merits under Rule 62.

## CONCLUSION

Based on the foregoing, the RNC respectfully requests that the Court grant the RNC's motion for injunction pending appeal. In the alternative, the RNC asks the Court to extend the current administrative injunction until 48 hours after resolution of this motion to allow the RNC to seek relief from the D.C. Circuit. Such an extension is not opposed by the Congressional Defendants or Salesforce. Like the current administrative injunction, the RNC requests that the

extended administrative injunction remain in place until the D.C. Circuit resolves the RNC's motion for injunction pending appeal.

Respectfully submitted this 10th day of May, 2022.

        STATECRAFT PLLC

        By: *s/ Christopher O. Murray*
           Christopher O. Murray
           1263 Washington Street
           Denver, CO 80203
           Tel:  602.362.0034
           Email:  chris@statecraftlaw.com

        *Attorney for Plaintiff Republican National Committee*

**CERTIFICATE OF SERVICE**

I certify that on May 10, 2022, I filed **Reply Memorandum of Points and Authorities in Support of Plaintiff's Motion for Injunction Pending Appeal** via the CM/ECF system for the U.S. District Court for the District of Columbia, which will cause a copy to be served on all registered parties.

                                           *s/ Christopher O. Murray*
                                           Christopher O. Murray