UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE,<br><br>*Plaintiff*,<br><br>v.<br><br>NANCY PELOSI *et al.*,<br><br>*Defendants*. | Civil Action No. 22-659 (TJK) |

### MEMORANDUM OPINION

The Republican National Committee sued to challenge a subpoena issued to the RNC's third-party digital vendor by the Select Committee to Investigate the January 6th Attack on the United States Capitol. The Court entered judgment against the RNC but enjoined the defendants from acting on the subpoena until the Court resolved any motion for injunction pending appeal the RNC might file post-judgment. The RNC now moves for an injunction pending appeal or, in the alternative, for a brief administrative injunction during which it can petition the Circuit for an injunction pending appeal. Even assuming that the RNC has shown its appeal raises a "serious legal question," and acknowledging that it *has* shown that it will suffer irreparable harm absent an injunction pending appeal, it has not shown that the balance of the equities and the public interest tip sharply in its favor. Thus, the Court will deny the RNC's motion insofar as it requests an injunction pending appeal. But the Court will grant it insofar as it requests another brief administrative injunction so the RNC may request the same relief from the Circuit.

**I.  Background**

The Court assumes familiarity with the background of this case. *See Republican Nat'l Comm. (RNC) v. Pelosi*, No. 22-cv-659 (TJK), 2022 WL 1294509 (D.D.C. May 1, 2022) (*RNC*).

To summarize briefly, the U.S. House of Representatives' Select Committee to Investigate the January 6th Attack on the United States Capitol issued a subpoena to Salesforce.com, Inc.—a third-party digital vendor for the RNC—demanding that it produce to the Select Committee some of the RNC's confidential information relating to emails and other communications sent around the time of the November 2020 presidential election and January 2021 certification of the Electoral College vote. *Id.* at *1–5. The RNC then sued Speaker of the House Nancy Pelosi, the Select Committee, and each member of the Select Committee ("House Defendants"), to challenge the subpoena. *Id.* at *5. The RNC later amended its complaint to add Salesforce as a defendant. *Id.* The RNC challenged the subpoena on six grounds, arguing that (1) the subpoena violates the First Amendment; (2) it violates the Fourth Amendment; (3) it does not advance a valid legislative purpose; (4) the Select Committee lacks the necessary congressional authorization to issue the subpoena; (5) the subpoena is excessively broad and unduly burdensome; and (6) it violates the Stored Communications Act. *Id.* The RNC sought declaratory and injunctive relief. *Id.*

The Court dismissed the RNC's claims against House Defendants because of their immunity from suit under the Constitution's Speech or Debate Clause; found that the RNC had standing to press its claims against only Salesforce; dismissed as moot the RNC's Stored Communications Act claim against Salesforce; assumed in the RNC's favor two potential, non-jurisdictional hurdles to the merits of the RNC's other claims against Salesforce; and entered judgment against the RNC on those other claims. *RNC*, 2022 WL 1294509, at *7–26; ECF No. 32. The Court also temporarily enjoined all the defendants from acting on the subpoena until, as relevant here, the Court resolved a motion for injunction pending appeal filed by the RNC before May 5, 2022. *See RNC*, 2022 WL 1294509, at *25–26; ECF No. 32.

On May 4, 2022, the RNC filed a notice of appeal and moved for an injunction pending appeal or, in the alternative, a brief administrative injunction taking effect upon denial of the motion to permit the RNC time to obtain an injunction pending appeal from the Circuit. *See* ECF Nos. 35–36. Salesforce takes no position on the motion. *See* ECF No. 36 at 1. House Defendants oppose the motion for an injunction pending appeal but do not oppose entry of a brief administrative injunction upon denial of the motion to give the RNC time to move for an injunction pending appeal with the Circuit. *See* ECF No. 36 at 1; ECF No. 39 at 4.

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 62(d), the Court "may . . . grant an injunction" while "an appeal is pending" from a "final judgment that . . . refuses . . . an injunction."[1] An injunction pending appeal is an "extraordinary remedy." *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 324 (D.D.C. 2018); *see also John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (per curiam). Because it is "an intrusion into the ordinary process[es] of administration and judicial review," it is "not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nat'l Ass'n of Mfrs. v. NLRB*, No. 11-cv-1629 (ABJ), 2012 WL 1929889, at *1 (D.D.C. Mar. 7, 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)); *see also MediNatura, Inc. v. FDA*, No. 20-cv-2066 (RDM), 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021). Rather, the moving party bears the burden of showing that this remedy is warranted. *See McCammon v. United States*, 588 F. Supp. 2d 43, 47 (D.D.C. 2008).

---

[1] The Court has jurisdiction to consider the RNC's Rule 62(d) motion even though the RNC has already appealed the Court's final judgment. *See* Wright & Miller, 11 *Fed. Prac. & Proc. Civ.* § 2904, nn.33–35 & accompanying text (3d ed. Apr. 2022 update); *cf. Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over *those aspects of the case involved in the appeal*." (emphasis added)).

3

The standards for evaluating a motion for an injunction pending appeal are "substantially the same as those for issuing a preliminary injunction," meaning that the movant generally "must establish" that (1) "they are likely to succeed on the merits," (2) "they are likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in their favor," and (4) "an injunction is in the public interest." *Alcresta Therapeutics*, 318 F. Supp. 3d at 324 (cleaned up). These are "stringent requirements." *Archdiocese of Wash. v. WMATA*, 877 F.3d 1066, 1066 (D.C. Cir. 2017) (per curiam). The first two "prongs" typically are the "most critical." *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam) (internal quotation marks omitted). The last two prongs, however, are by no means an afterthought. *See, e.g.*, *Fed. Maritime Comm'n v. City of Los Angeles*, 607 F. Supp. 2d 192, 203 (D.D.C. 2009) (noting how, in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court reversed a preliminary injunction despite "assuming irreparable harm" and not "addressing the underlying merits"). Also, where, as here, a government entity such as a congressional committee is the opposing party, the last two factors merge. *See, e.g.*, *Trump v. Comm. on Oversight & Reform of U.S. House of Reps.*, 380 F. Supp. 3d 76, 105 (D.D.C. 2019), *vacated on other grounds by Trump v. Mazars USA, LLP*, 832 F. App'x 6 (D.C. Cir. 2020) (per curiam).

Of course, by its own terms Rule 62(d) envisions situations in which a district court that has just denied an injunction still grants an injunction pending appeal. *See MediNatura*, 2021 WL 1025835, at *6. Thus, in "at least some circumstances" an injunction pending appeal "may be appropriate" even if the court that just denied injunctive relief "believe[s] its analysis" in denying that relief "is correct" such that the movant cannot show a likelihood of success. *See id.* (internal quotation marks omitted); *see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559

F.2d 841, 844–45 (D.C. Cir. 1977). Accordingly, "in rare cases, the threat of irreparable harm may be so grave and the balance of equities may favor" the movant "so decisively that an injunction pending appeal . . . may be proper," even without a likelihood of success on the merits, so long as the movant establishes a "serious legal question" on the merits and shows that "the other three factors tip sharply" in its favor. *See MediNatura*, 2021 WL 1025835, at *6 (cleaned up); *see also Cigar Ass'n of Am. v. U.S. FDA*, 317 F. Supp. 3d 555, 560–61 & n.4 (D.D.C. 2018). That said, where the "relief sought is an injunction on the coordinate branches of government . . . it is even more important that the three remaining factors outweigh the lack of likelihood of success on the merits." *See Trump v. Thompson*, No. 21-cv-2769 (TSC) (D.D.C. Nov. 10, 2021), ECF No. 43 at 4–5. After all, "courts must take care not to unnecessarily 'halt the functions of a coordinate branch.'" *Trump v. Thompson*, 20 F.4th 10, 48 (D.C. Cir. 2021) (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975)).

### III.   Analysis

The Court assumes that the RNC has shown that its appeal presents a "serious legal question." And without doubt, the RNC has shown that it will suffer one sort of irreparable harm absent an injunction pending appeal. But it has not shown that the merged balance-of-equities and public-interest factors tip sharply in its favor. Thus, the Court will deny the RNC's motion insofar as it requests an injunction pending appeal. Even so, the Court will grant the RNC's request for another brief administrative injunction so that it may seek an injunction pending appeal from the Circuit.

#### A.   The Court Assumes the RNC Has Demonstrated a "Serious Legal Question"

In its motion, the RNC argues that there are five issues the Court resolved against it either on which it is likely to succeed on appeal or about which there is at least a "serious legal question," thus satisfying the first Rule 62(d) criterion. *See* ECF No. 37-1 at 10–14. The RNC points to its

5

arguments that (1) the subpoena violates its First Amendment associational rights, (2) it was "improper" for the Court to credit House Defendants' "narrowing" of the subpoena, (3) the Select Committee is not properly composed under its authorizing resolution because it contains only nine members, (4) the subpoena violates the RNC's Fourth Amendment rights, and (5) the subpoena was not issued in service of a valid legislative purpose. *See id.* Given that the Court just resolved the case against the RNC, the Court does not find that the RNC is likely to succeed on any of its claims. Whether the RNC's First Amendment claim presents a "serious legal question" is a close call, but the Court assumes that the RNC has made such a showing.[2]

A "serious legal question" in this context is one that is "so serious, substantial, difficult and doubtful" as to make it a "fair ground for litigation and thus for more deliberate investigation." *See Holiday Tours*, 559 F.2d at 844. Characteristics of a serious legal question include that the question is "complicated," *see Confederated Tribes of Chehalis Rsrv. v. Mnuchin*, No. 20-cv-01002 (APM), 2020 WL 3791874, at *1 (D.D.C. July 7, 2020); that it "presents an issue of first impression" involving the application of a recent Supreme Court decision "in the context of earlier pronouncements" that bear on the issue from the Circuit, *see Ctr. for Int'l Envtl. L. v. Off. of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003); *Cigar Ass'n of Am.*, 317 F. Supp. 3d at 561–62; and that the question is one for which "persuasive authority" supports the movant's position, *see John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (per curiam); *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Human Servs.*, 539 F. Supp. 3d 211, 216–17 (D.D.C. 2021); *Cigar Ass'n of Am.*, 317 F. Supp. 3d at 561–62. On the other hand, a serious legal question is

---

[2] The Court need not address whether any of the other issues raised by the RNC present "serious legal questions" because it assumes its First Amendment claim suffices to satisfy this prong of the analysis. But none of the RNC's arguments or cited authorities persuade the Court that any of the other issues it raises amount to serious legal questions.

absent when, for example, there is a "dearth of authority" supporting the movant's position and binding precedent undercuts it. *See, e.g.*, *Judicial Watch, Inc. v. Nat. Energy Policy Dev. Grp.*, 230 F. Supp. 2d 12, 14–15 (D.D.C. 2002).

The Court assumes here that the RNC's First Amendment claim presents a serious legal question.[3] In several respects, this claim represents an issue of first impression involving the application of *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), in the context of the D.C. Circuit's earlier pronouncement in *AFL-CIO v. FEC*, 333 F.3d 168, 176–78 (D.C. Cir. 2003), as well as other cases. *See RNC*, 2022 WL 1294509, at \*19–23. Further, the claim is a complicated one, having taken up a large portion of the Court's merits analysis and requiring extensive unpacking of the legal framework as well as application of that framework to the facts. *See RNC*, 2022 WL 1294509, at \*15–25. The Court thus assumes the claim presents a "fair ground for litigation" and warrants "more deliberate investigation." *See Holiday Tours*, 559 F.2d at 844.

The question, then, is whether "the other three factors tip sharply" in the RNC's favor. *See MediNatura*, 2021 WL 1025835, at \*6. One does, but the other two do not.

---

[3] As noted above, the Court does not find that the RNC is likely to succeed on this (or any) claim. The only aspect of the Court's prior analysis of this claim that the RNC objects to in its motion is the finding that the RNC's alleged associational harm ostensibly flowing from the subpoena was too "logically attenuated" and "speculative" to defeat the Select Committee's interest. *See* ECF No. 37-1 at 12 (quoting *RNC*, 2022 WL 1294509, at \*23). And on this point, the RNC simply poses a rhetorical "question" as to why it would "go to such lengths" to protect its information in Salesforce's databases if "the harm from the disclosure of this information is speculative." *Id.* Of course, as the Court has already explained, *see RNC*, 2022 WL 1294509, at \*23, the information at risk of disclosure is much narrower than "all the information" of the RNC's in Salesforce's databases that the RNC goes to "such lengths" to protect, ECF No. 37-1 at 12. Further, the Court agrees that the information at actual risk of disclosure "has some strategic value," explaining why the RNC would want to keep even that information confidential. *See RNC*, 2022 WL 1294509, at \*23. At bottom, the RNC's contention does not undermine the Court's conclusion on this point, never mind the Court's ultimate disposition of this claim. *See id.*

### B. The RNC Has Demonstrated That Without an Injunction It Will Suffer Irreparable Harm

The RNC argues that, absent an injunction pending appeal, it will suffer irreparable harm in that this case will become moot before the Circuit can decide it on the merits. The Court agrees.

To establish irreparable harm, the RNC must show that it will suffer an injury that is "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *See Trump v. Thompson*, --- F. Supp. 3d ----, 2021 WL 5218398, at *15 (D.D.C. Nov. 9, 2021) (quoting *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015)). When the movant will suffer the "*de facto* deprivation of the basic right to appeal" because the threatened, irremediable action the movant challenges will occur and thus moot the appeal, irreparable harm is shown. *Ctr. for Int'l Envtl. L.*, 240 F. Supp. 2d at 23; *see also Population Inst. v. McPherson*, 797 F.2d 1062, 1081 (D.C. Cir. 1986) (per curiam); *MediNatura*, 2021 WL 1025835, at *6; *Confederated Tribes*, 2020 WL 3791874, at *2.

The RNC has shown this form of irreparable harm because, absent an injunction pending appeal, Salesforce will comply with the subpoena. *See* ECF No. 24 at 117. And once Salesforce does, the Speech or Debate Clause prohibits this Court (or any other) from ordering the Select Committee to take any action with respect to the records that could provide any kind of "effectual relief" to the RNC. *See Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017).[4] This factor thus weighs in its favor.

---

[4] The RNC also argues that because it is "likely to succeed on its constitutional claims," its irreparable harm includes the loss of its constitutional rights. ECF No. 37-1 at 8. The Court disagrees. Generally, "the deprivation of constitutional rights constitutes irreparable injury only to the extent such deprivation is shown to be likely." *Archdiocese of Wash.*, 897 F.3d at 334. And the Court does not find that the RNC is likely to succeed on its First Amendment claim—or any other. True,

8

### C. The RNC Has Not Demonstrated That the Merged Balance-of-Equities and Public-Interest Factors "Tip Sharply" in Its Favor

Finally, the RNC argues that the merged balance-of-equities and public-interest prongs weigh in its favor. In considering these merged factors, the Court must "balance the competing claims of injury and the effect an injunction would have on each party" while paying "particular regard for the public consequences in employing the extraordinary remedy of injunction."[5] *Fed. Maritime Comm'n*, 607 F. Supp. 2d at 203 (cleaned up). The Court does not find that these prongs tip sharply in the RNC's favor.

On the RNC's side of the scale is the harm that, absent an injunction, it will suffer the "*de facto* deprivation of the basic right to appeal." *Ctr. for Int'l Envtl. L.*, 240 F. Supp. 2d at 23. And where a "serious legal question" is also present, which the Court assumes is the case here, this harm weighs heavily. *See id.* On House Defendants' side of the scale is that added delay will

---

there is some footing in D.C. Circuit precedent for the idea that the Court should "assume" a likelihood of success on the merits in the irreparable harm analysis, but it is "not at all clear" that this is so outside "the Establishment Clause context." *See English v. Trump*, 279 F. Supp. 3d 307, 333 (D.D.C. 2018). So for example, in *Brown v. FEC*, this Court did not apply such an assumption in considering First Amendment political speech claims, reasoning that the irreparable harm factor is "intertwined with the merits" and holding that plaintiffs who are "unlikely to succeed on the merits of their constitutional claims . . . cannot show irreparable injury through the loss of constitutional freedoms." *See* 386 F. Supp. 3d 16, 34 (D.D.C. 2019) (internal quotation marks omitted) (citing *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016), and *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)).

[5] As to these factors, the law is clear that the Court does not assume the merits in the RNC's favor and then consider them in the analysis. *See, e.g.*, *Archdiocese of Wash.*, 897 F.3d at 335; *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 304 (D.C. Cir. 2006); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998); *Pulphus v. Ayers*, 249 F. Supp. 3d 238, 254–55 (D.D.C. 2017); *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 92 (D.D.C. 2007). Thus, because the RNC has not shown a likelihood of success on the merits, the Court does not weigh that "without an injunction, [the RNC's] constitutional rights will be lost"; that "[p]rotecting [the RNC's] constitutional rights is in the public interest"; and that there is "no public interest in the perpetuation of unlawful government action." ECF No. 37-1 at 8–9 (cleaned up); *see also* ECF No. 40 at 6–8.

further interfere with the Select Committee's investigation, which is at a "critical juncture" as it "approaches public hearings and is attempting to promptly complete its investigative efforts." *See* ECF No. 39 at 8. The Court must weigh this heavily as well. "Even under ordinary circumstances, there is a strong public interest in Congress carrying out its lawful investigations," requiring courts to "take care not to unnecessarily halt the functions of a coordinate branch." *See Trump*, 20 F.4th at 48 (cleaned up); *see also Exxon Corp. v. FTC*, 589 F.2d 582, 594 (D.C. Cir. 1978); *Ansara v. Eastland*, 442 F.2d 751, 753 (D.C. Cir. 1971) (per curiam). That already-strong public interest is "heightened" for the Select Committee's "urgen[t]" and "weighty" investigation. *See Trump*, 20 F.4th at 48. Moreover, this Court is ill-equipped to weigh any potential reduction of House Defendants' harm that might come from expediting the resolution of the RNC's appeal, because the timing of that appeal is beyond the Court's control. The Circuit is better positioned to weigh any potential mitigation along these lines that might redound to the benefit of the RNC in the balancing of the equities and the public interest.[6]

Thus, with weighty considerations on both sides of the scale, the Court cannot say that the merged balance-of-equities and public-interest factors tip sharply in the RNC's favor. But to obtain an injunction pending appeal based on the presence of only a "serious legal question"—which, once again, the Court assumes here—the RNC had to make this showing.[7] *See, e.g.*, *MediNatura*, 2021 WL 1025835, at *7; *see also In re Special Proceedings*, 840 F. Supp. 2d 370, 372 (D.D.C.

---

[6] The Court notes that in a similar situation in *Trump v. Thompson*, the Circuit did expedite former President Trump's appeal and entered an administrative injunction to preserve his appellate rights. *See* No. 21-5254, 2021 WL 5239098, at *1 (D.C. Cir. Nov. 11, 2021); *Trump*, 20 F.4th at 49 n.20.

[7] Even if that were not so, where balancing the equities "results roughly in a draw," the "sound disposition" of a request for injunctive relief "depend[s] on a reflective and attentive appraisal as to the outcome on the merits." *Serono Labs.*, 158 F.3d at 1326 (cleaned up). Here, the RNC "is not likely to succeed on the merits" of its claims. *See id*. Accordingly, the "sound disposition" is to deny the motion. *See, e.g.*, *id.* at 1327 (vacating a preliminary injunction).

10

2012). For these reasons, the Court will deny the motion to the extent it requests an injunction pending appeal.

\* \* \*

The RNC also requests the entry of another brief administrative injunction to have time to seek an injunction pending appeal with the Circuit, and House Defendants consent to this request. *See* ECF No. 36 at 1; ECF No. 39 at 4. Thus, the Court will enter such an injunction. *See, e.g.*, *RNC*, 2022 WL 1294509, at \*25–26. The Court will order that injunction to dissolve automatically on May 25, 2022.

### IV.  Conclusion

For all these reasons, the Court will deny the RNC's motion insofar as it requests an injunction pending appeal but grant its motion insofar as it seeks a brief administrative injunction to allow the RNC to petition the Circuit for an injunction pending appeal. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 20, 2022